# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ERUM SHIRAZI** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **CITIBANK, N.A.,** <br> Serve: Any Officer <br> 388 Greenwich Street <br> New York, NY 10013 <br><br><br> **LVNV FUNDING, LLC,** <br> Serve: Corporation Service Company, Reg. Agent <br> 80 State Street <br> Albany, NY 12207 <br><br> **and** <br><br> **RESURGENT CAPITAL SERVICES, L.P.** <br> Serve: Corporation Service Company, Reg. Agent <br> 80 State Street <br> Albany, NY 12207 <br><br> **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **Civil Action No. _____** |

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

COMES NOW the Plaintiff, Erum Shirazi, by counsel, and for her Complaint against Defendants Citibank, N.A. ("Citi"), LVNV Funding ("LVNV"), and Resurgent Capital Services, L.P. ("Resurgent") she states as follows:

## PRELIMINARY STATEMENT

1.      This is an action for statutory, actual, and punitive damages, costs, and attorney fees brought to enforce Plaintiff's civil rights pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

2.     The Fair Credit Reporting Act provides federally codified protection of Plaintiff's civil rights with regard to Plaintiff's privacy, Plaintiff's reputation, and Plaintiff's due process rights against defamation. The Fair Credit Reporting Act is part of a larger category of consumer protection statutes designed to arm consumers against discrimination, intrusions upon privacy, and other types of unfair and inequitable treatment. Similar statutes falling under this same umbrella of protection include, for example, the Equal Credit Opportunity Act, the Fair Housing Act, and the Fair Debt Collection Practices Act.

3.     Claims under these federal protections are brought "in connection with any action involving a claim of 'unlawful discrimination'", as described in 26 U.S.C § 62(a)(20). For the purposes of 26 U.S.C § 62(a)(20), the term "unlawful discrimination" is broadly defined in 26 U.S.C § 62(e) to mean "an act that is unlawful under . . .[a]ny provision of Federal, State, or local law, or common law claims permitted under Federal, State, or local law . . . providing for the enforcement of civil rights".

4.     Plaintiff is the victim of what is now a common crime—identity theft. A fraudster used Plaintiff's personal information to open a credit card with Citi. Citi then sold the debt to Resurgent, who—along with Resurgent's agent LVNV—attempted to collect the fraudulent debt from Plaintiff and reported it on her credit.

5.     Plaintiff has asserted the factual truth—that the Citi account does not belong to her and she did not authorize it. Yet despite this truth, Citi, LVNV, and Resurgent continue to wrongfully attach Plaintiff, and Plaintiff's good name, to an account that was fraudulently opened by a criminal.

6.     Citi also reported the inaccurate account to the Big Three consumer reporting agencies (Equifax, Experian, and Trans Union, the "CRAs") and is continuing to report the account

2

to Trans Union and Experian. Plaintiff's disputes of the inaccurate information to the CRAs proved futile. When responding to the CRAs regarding Plaintiff's disputes, Citi "verified" its false credit reporting—even after Citi received Plaintiff's dispute letters detailing the police report she filed regarding identity theft.

7.      Similarly, collection agencies LVNV and Resurgent reported the fraudulent debt on Plaintiff's reports with the CRAs. Even though Plaintiff disputed the debt, LVNV & Resurgent wrongfully "verified" that Plaintiff owes the debt, and subsequently continued reporting to Trans Union that Plaintiff owed the debt.

8.      The FCRA demands that CRAs utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

9.      Also, when a consumer like Plaintiff disputes the accuracy of information with the CRAs, the CRAs must transmit that dispute to the entity who furnished the information. Here, those entities are Citi, LVNV, and Resurgent (the "Defendant Furnishers"). After receiving Plaintiff's disputes from the CRAs, Citi, LVNV, and Resurgent each became obligated to conduct their own independent investigations of that dispute. *Id.* § 1681s-2(b).

10.     Plaintiff brings claims under Section 1681s-2(b) against Citi, LVNV, and Resurgent because they each received Plaintiff's disputes from the CRAs and thereafter failed to reasonably investigate those disputes. Instead, discovery will show all that all any of them did was consult their own respective records about the account and confirm to the CRAs the inaccurate information that they were already reporting.

11.    Additionally, Plaintiff brings claims under Section 1681b against Citi because Citi repeatedly accessed Plaintiff's private information without having a permissible purpose to do so, even after learning that the Citi account was opened by an identity thief.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

13.    Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Defendants are residents of this District and Division and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and Division.

## PARTIES

14.    Plaintiff is a natural person residing in the State of New York, and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. § 1681a(c).

15.    Defendant Citibank, N.A. ("Citi") is a national bank headquartered in New York City, New York.

16.    Citi is a "furnisher" of information as governed by 15 U.S.C. § 1681s-2.

17.    Defendant LVNV Funding, LLC ("LVNV") is a is a foreign limited liability corporation authorized to do business in the State of New York through its registered agent located in Albany, New York.

18.    LVNV is a "furnisher" of information as governed by 15 U.S.C. § 1681s-2.

19.    Defendant Resurgent Capital Services, L.P. ("Resurgent") is a is a foreign limited partnership authorized to do business in the State of New York through its registered agent located in Albany, New York.

20.    Resurgent is a "furnisher" of information as governed by 15 U.S.C. § 1681s-2.

## FACTUAL ALLEGATIONS

### *Plaintiff Discovers the Fraudulent Accounts on her Credit Reports and Disputes those Inaccuracies*

21.     Plaintiff is a victim of identity theft.

22.     An identity thief used Plaintiff's personal information, without Plaintiff's permission, to open fraudulent accounts in Plaintiff's name.

23.     In or around the spring of 2023, Plaintiff obtained copies of her credit files with the CRAs and discovered that all three were reporting inaccurate and derogatory information—resulting from fraud—including accounts with Citibank, and LVNV/Resurgent.

24.     Plaintiff did not open any of the fraudulent accounts, she did not authorize anyone to open any of the fraudulent accounts on her behalf, and she did not benefit from any of the fraudulent accounts.

25.     On or around April 5, 2023, Plaintiff mailed written dispute letters to the three Defendant CRAs via USPS first class certified mail, return receipt requested.

26.     In her April 2023 dispute letters to the CRAs, Plaintiff disputed the inaccurate information that the CRAs were reporting, including the fraudulent accounts with Citi and LVNV/Resurgent. She explained that the accounts were opened due to identity theft, and she gave information regarding the police report she filed. She included her full address, date of birth, and social security number.

27.     On or around May 5, 2025, Trans Union mailed "Investigation Results" to Plaintiff. The "Investigation Results" show that Trans Union continued to inaccurately report the fraudulent accounts with Citi and LVNV/Resurgent as belonging to Plaintiff. In the letter, Trans Union explained that Citi and LVNV/Resurgent had "verified" to Trans Union that the information they were reporting on Plaintiff's credit was accurate.

28.     Upon information and belief, Plaintiff did not receive a timely dispute response from Equifax following her April 2023 dispute.

29.     Upon information and belief, Plaintiff did not receive a timely dispute response (or any response) from Experian following her April 2023 dispute.

30.     In May and June of 2023, Plaintiff obtained updated copies of her files with the CRAs and saw that Citi and LVNV/Resurgent were still reporting fraudulent information on Plaintiff's Trans Union report.

31.     On or around September 12, 2023, Plaintiff mailed another dispute letter to Trans Union to dispute the fraudulent accounts with Citi and LVNV/Resurgent. As with her previous dispute letters, she included detailed information regarding the police report she had filed, as well as her name, her full address, her date of birth, and her full social security number.

32.     On or around September 27, 2023, Trans Union mailed "Investigation Results" to Plaintiff. The "Investigation Results" from Trans Union did not address the Citi account or the LVNV/Resurgent account.

33.     On or around October 18, 2023, Plaintiff obtained an updated copy of her Trans Union report. The Trans Union report showed that Citi was still associating the fraudulent accounts with Plaintiff.

34.     Upon information and belief, Equifax, Experian, and Trans Union prepared and published to third parties multiple, inaccurate consumer reports about Plaintiff that reflected the inaccurate and derogatory reporting from Citi, LVNV, and Resurgent.

***The CRAs Forwarded Plaintiff's Disputes to Defendant Furnishers, Who Did Nothing***

35.     In each instance in which Plaintiff disputed the Defendant Furnisher accounts with the CRAs, the CRAs forwarded Plaintiff's disputes to the Defendant Furnishers using an electronic

system called "e-Oscar," which is an industry-wide process by which consumer disputes are electronically communicated to furnishers and dispute results are electronically communicated back to CRAs.

36.     On information and belief, e-Oscar is also the system by which all Defendant Furnishers have agreed to accept consumer disputes from the CRAs.

37.     In each instance in which Citi received one of Plaintiff's disputes from a CRA, Citi became obligated under the FCRA to investigate that dispute.

38.     In each instance in which LVNV received one of Plaintiff's disputes from a CRA, LVNV became obligated under the FCRA to investigate that dispute

39.     In each instance in which Resurgent received one of Plaintiff's disputes from a CRA, Resurgent became obligated under the FCRA to investigate that dispute

40.     Plaintiff's disputes to Defendant Furnishers to attempt to have them investigate her complaints went unanswered.

41.     The Defendant Furnishers failed to investigate Plaintiff's complaints.

42.     Despite Plaintiff providing the Defendant Furnishers with ample notice that she is a victim of identity theft and she does not owe the debt, the Defendant Furnishers continued (and Citi continues still) to report the fraudulent account as "accurate" to the CRAs. Discovery will show that all the Defendant Furnishers did when supposedly investigating Plaintiff's disputes from the CRAs was consult their own internal account records and simply report back to the CRAs the same inaccurate information Plaintiff was disputing.

43.     On dates better known to Equifax and Citi, Equifax furnished Plaintiff's disputes to Citi.

44.     On dates better known to Equifax and LVNV, Equifax furnished Plaintiff's disputes to LVNV.

45.    On dates better known to Equifax and Resurgent, Equifax furnished Plaintiff's disputes to Resurgent.

46.    On dates better known to Experian and Citi, Experian furnished Plaintiff's disputes to Citi.

47.    On dates better known to Experian and LVNV, Experian furnished Plaintiff's disputes to LVNV.

48.    On dates better known to Experian and Resurgent, Experian furnished Plaintiff's disputes to Resurgent.

49.    On dates better known to Trans Union and Citi, Trans Union furnished Plaintiff's disputes to Citi.

50.    On dates better known to Trans Union and LVNV, Trans Union furnished Plaintiff's disputes to LVNV.

51.    On dates better known to Trans Union and Resurgent, Trans Union furnished Plaintiff's disputes to Resurgent.

52.    Upon information and belief, the CRAs timely notified Citi of Plaintiff's disputes, via e-OSCAR or otherwise, and provided the supporting documents with Plaintiff's disputes.

53.    Upon information and belief, the CRAs timely notified LVNV of Plaintiff's disputes, via e-OSCAR or otherwise, and provided the supporting documents with Plaintiff's disputes.

54.    Upon information and belief, the CRAs timely notified Resurgent of Plaintiff's disputes, via e-OSCAR or otherwise, and provided the supporting documents with Plaintiff's disputes.

55.     At least one CRAs responded to Plaintiff's disputes, claiming the reported information was verified as accurate and the information was updated. This response confirms that the CRAs communicated Plaintiff's disputes to the Defendant Furnishers.

56.     Plaintiff did not open or use the Citi card.

57.     Plaintiff did not authorize anyone to open or use the Citi card on her behalf.

58.     Plaintiff did not benefit from any use of the Citi card.

59.     By their actions as described herein, Citi, LVNV, and Resurgent all furnished and communicated false credit information regarding Plaintiff.

### *Citi Repeatedly Obtained and Used Plaintiff's Consumer Report(s) Without a Permissible Purpose*

60.     Accessing consumer reports is presumptively illegal. To overcome this presumption, a party seeking to access consumer reports must have a permissible purpose for doing so and must certify to the agency from which it seeks reports the FCRA purpose for which it will use the reports and that it will use the reports for no other purpose. 15 U.S.C. § 1681(f).

61.     One such permissible purpose that arises in the credit realm is for reports to issue "[t]o a person which [the reporting agency] has reason to believe—A intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).

62.     Likewise, Courts have long held that reports issued to a user involving an extension of credit or for collection purposes as to credit fall within the coverage of § 1681b(a)(3)(A). *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011) ("the statute expressly permits distribution of a consumer report to an entity that 'intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and

involving the extension of credit to, or review or collection of an account of, the consumer.'"); *Korotki v. Thomas, Ronald & Cooper, P.A.*, 131 F.3d 135 (4th Cir. 1997) (Defendant "was seeking to collect an account owed by the consumer, § 1681(b)(3)(A), likewise a permissible purpose"); *Cooper v. Pressler & Pressler, LLP*, 912 F. Supp. 2d 178, 188 (D.N.J. 2012) ("Capital One could rightfully obtain a copy of Plaintiff's consumer report from a CRA in order to review, or collect upon, Plaintiff's MasterCard credit card account.").

63. Apart from 15 U.S.C. § 1681b(a)(3)(A), no other permissible purpose could conceivably allow Citi to access Plaintiff's consumer reports.

64. Citi first accessed Plaintiff's credit file in connection with its issuance of the fraudulent credit card account. The information Citi received purportedly authorizing it to access Plaintiff's consumer report(s) bore multiple hallmarks of identity theft. Even a cursory evaluation of the information submitted to Citi to purportedly authorize it to access Plaintiff's credit report to issue a credit card account would have revealed that the credit card application was fraudulent. Nonetheless, Citi illegally accessed Plaintiff's consumer report(s) and then issued a fraudulent credit card account based on those consumer report(s).

65. But for Citi's illegal access of Plaintiff's consumer reports, the fraudulent credit card account would not have been issued, and there wouldn't have been a fraudulent Citi debt for LVNV and Resurgent to report on Plaintiff's credit.

66. Citi illegally accessed Plaintiff's consumer report(s) at least five times in the past two years as set forth in the chart below:

| DATE | ISSUING CRA |
|------|-------------|
| April 16, 2023 | Equifax |
| May 2, 2023 | Equifax |
| May 5, 2023 | Equifax |
| May 30, 2023 | Experian |

| June 22, 2023 | Equifax |

67.     Citi continued to illegally access Plaintiff's consumer report(s) after Plaintiff notified Citi that the account was opened fraudulently.

68.     Citi used information from one or more illegally obtained consumer report(s) regarding Plaintiff to further its illegal efforts to issue credit card accounts.

### *Plaintiff Suffered Actual Harm*

69.     The Defendants Furnishers continued to report the derogatory account on Plaintiff's credit reports even after being notified that this information is false. Upon information and belief, Citi *still* reporting the fraudulent information on Plaintiff's credit file.

70.     Plaintiff attempted to resolve this matter with the Defendant Furnishers, yet the Defendant Furnishers chose to ignore their duties under the FCRA. The Defendant Furnishers' failures to correct their reporting contributed significantly to the destruction of Plaintiff's credit through the repeated publication of false and defamatory information.

71.     As a result of the inaccurate and derogatory credit reporting, and the illegal access to Plaintiff's credit information, Plaintiff has suffered damages—including, but not limited to:

    a.   Harm to Plaintiff's credit opportunities;

    b.   Harm to Plaintiff's privacy;

    c.   Harm to Plaintiff's reputation;

    d.   Stress associated with multiple denials for personal loans, credit cards, and delays in applying for future lines of credit;

    e.   Monies lost by attempting to fix her credit, e.g., communication costs, postage for disputes;

    f.   Loss of time attempting to correct the inaccuracies;

g.  Stress associated with spending hundreds of hours attempting to resolve this matter;

h.  Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life.

### *Defendant's Conduct was Willful*

72.  The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

73.  Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

74.  Just in federal court alone, during the last decade, Citi has had to defend over 1,092 consumer credit lawsuits.

75.  LVNV has had to defend over 1,679 federal consumer credit lawsuits during the last decade, and Resurgent has had to defend over 761.

76.  The Defendant Furnishers are also aware of substantive and detailed criticism by public interest groups about their automated dispute system. For example, in 2009, the National Consumer Law Center ("NCLC"), the organization that publishes the leading legal treatise in this field, also published a scathing research paper detailing the actual process followed by the CRAs and furnishers (like Citi and LVNV) when a consumer makes a dispute. That report was updated in 2019. AUTOMATED INJUSTICE REDUX *Ten Years after a Key Report, Consumers Are Still*

*Frustrated Trying to Fix Credit Reporting Errors*, National Consumer Law Center, February 2019.

("NCLC Report").[1]

77.    The NCLC Report summarized its context:

Ten years ago, the National Consumer Law Center (NCLC) issued Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports, the landmark report on the serious dysfunctions in the American credit reporting system. Since then, the Consumer Financial Protection Bureau (CFPB) began exercising supervision authority over the Big Three credit bureaus (Equifax, Experian and Trans Union), and started the difficult task of compelling them to reform their procedures and practices. A coalition of more than 30 state Attorneys General reached a breakthrough settlement with the credit bureaus in 2015, requiring an array of reforms. Despite these very laudable achievements, the credit bureaus and the companies that supply them with information still have serious problems in ensuring the accuracy of credit reports, affecting millions of American consumers. The dispute process required by the Fair Credit Reporting Act (FCRA) that was intended to fix these problems remains ineffective and biased.

NCLC Report at 2.

78.    Citi had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008).

79.    LVNV had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008).

80.    Resurgent had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008).

81.    Citi had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir.

---

[1] *Available at* https://www.nclc.org/images/pdf/credit_reports/automated-injustice-redux.pdf.

2016).

82.     LVNV had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016).

83.     Resurgent had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016).

84.     Citi had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Johnson v. MBNA,* 357 F.3d 426 (4th Cir. 2004).

85.     LVNV had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Johnson v. MBNA,* 357 F.3d 426 (4th Cir. 2004).

86.     Resurgent had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Johnson v. MBNA,* 357 F.3d 426 (4th Cir. 2004).

87.     Citi had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246 (4th Cir. 2017).

88.     LVNV had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246 (4th Cir. 2017).

89.     Resurgent had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246 (4th Cir. 2017).

90.     Citi had notice of and its lawyers or other management employees responsible for

FCRA compliance had reviewed *Bach v. First Union Nat. Bank*, 149 F. App'x 354 (6th Cir. 2005).

91.    LVNV had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Bach v. First Union Nat. Bank*, 149 F. App'x 354 (6th Cir. 2005).

92.    Resurgent had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Bach v. First Union Nat. Bank*, 149 F. App'x 354 (6th Cir. 2005).

93.    Despite the notice and judicial, regulatory, and public interest criticism, Citi has refused to change its dispute investigation process because it believes it would cost too much money to do so.

94.    Despite the notice and judicial, regulatory, and public interest criticism, LVNV has refused to change its dispute investigation process because it believes it would cost too much money to do so.

95.    Despite the notice and judicial, regulatory, and public interest criticism, Resurgent has refused to change its dispute investigation process because it believes it would cost too much money to do so.

96.    The Defendant Furnishers' procedures imposed unjustifiable and unreasonable risks of harm on Plaintiff that could have been mitigated or avoided with just modest imposition.

### CLAIMS FOR RELIEF

### COUNT I
### VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)(A) & (B)
### *against all Defendants*

97.    Plaintiff realleges and incorporates all factual allegations set forth in the Complaint.

98.    The duties on furnishers were enacted almost thirty years ago, in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

99.    Furnishers' independent duties under the FCRA include independently investigating consumer disputes by reviewing all relevant information provided by the CRAs. Further, the furnisher must report the results of this investigation to the CRAs and accurately correct, update, or delete incorrect information previously reported to the CRAs.

100.    Defendant Citi violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully conduct a reasonable investigation of Plaintiff's disputes after her disputes were furnished directly to it by the CRAs.

101.    Defendant LVNV violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully conduct a reasonable investigation of Plaintiff's disputes after her disputes were furnished directly to it by the CRAs.

102.    Defendant Resurgent violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully conduct a reasonable investigation of Plaintiff's disputes after her disputes were furnished directly to it by the CRAs.

103.    "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted). As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

> 357 F.3d 426, 430 (4th Cir. 2004).

104.    Defendant Citi violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided when the CRAs forwarded Plaintiff's disputes to Citi.

105.    Defendant LVNV violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided when the CRAs forwarded Plaintiff's disputes to LVNV.

106.    Defendant Resurgent violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided when the CRAs forwarded Plaintiff's disputes to Resurgent.

107.    As a result of the Defendant Furnishers' conduct, action, and inaction, Plaintiff suffered damage as alleged above, including by example only and without limitation: costs associated with disputing the inaccurate information, loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, mental and emotional pain and anguish, and the humiliation and embarrassment of having to borrow money and offer explanations for why she lost the ability to benefit from credit.

108.    The violations by Citi were willful, rendering Citi liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Citi was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

109.    The violations by LVNV were willful, rendering LVNV liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, LVNV was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

110.    The violations by Resurgent were willful, rendering Resurgent liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Resurgent was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

111.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from each of the Defendant Furnishers in amounts to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT II
## VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)(C) & (D)
### *against Citi*

112.    Plaintiff realleges and incorporates all factual allegations set forth in the Complaint.

113.    Citi has long been aware that a furnisher must fully and accurately report to the CRAs the results of its investigation, including whether or not the consumer disputes such reporting. *Saunders v. Branch Banking and Tr. Co. Of VA*, 526 F.3d 142 (4th Cir. 2008) (Creditor's failure to report disputed nature of debt to all credit reporting agencies (CRAs), after receiving notice of dispute from one CRA, and conducting investigation and verification, was cognizable as violation of Fair Credit Reporting Act's (FCRA) duty to review and update reports for inaccuracies and omissions.)

114.    On one or more occasions within the past two years, by example only and without limitation, Citi violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the false information within Plaintiff's credit files with the CRAs in response to her disputes without also including an accurate notation that the debt was disputed and by failing to correctly report results of an accurate investigation to the CRAs.

115.    On information and belief, Plaintiff alleges that Citi frequently fails to add the correct notation indicating that the account is disputed when it responds to the e-Oscar ACDVs.

116.    On information and belief, Plaintiff alleges that, after Citi responds to an e-Oscar ACDV from one consumer reporting agency, Citi rarely (if ever) reports the disputed nature of that debt to <u>all</u> consumer reporting agencies reporting that tradeline.

117.    Plaintiff's disputes were, at minimum, bona fide.

118.    As a result of these violations of 15 U.S.C. § 1681s-2(b)(C) and (D), Plaintiff suffered actual damages including but not limited to: costs associated with disputing the inaccurate information, loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, mental and emotional pain and anguish, and the humiliation and embarrassment of having to borrow money and offer explanations for why she lost the ability to benefit from credit.

119.    Citi was aware of the *Saunders v. Branch Banking & Trust* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding Plaintiff's disputes.

120.    On information and belief, Plaintiff alleges that the procedures followed regarding Plaintiff's FCRA disputes through e-Oscar were the procedures that Citi intended its employees or agents to follow.

121.    On information and belief, Plaintiff alleges that Citi's employees or agents did not make a mistake in the way they followed Citi's procedures when they received, processed and responded to the CRAs' ACDVs and did not include a proper notation regarding the account being in dispute.

122.    On information and belief, the Plaintiff alleges that Citi has not materially changed its FCRA investigation procedures regarding the notation of a dispute in ACDVs after learning of its failures in this case.

123.    The violations by Citi were willful, rendering Citi liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Citi was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

124.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Citi in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT III**
**VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)(E)**
*against all Defendants*

125.    Plaintiff realleges and incorporates all factual allegations set forth in the Complaint.

126.    All Defendant Furnishers violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete information from Plaintiff's file after receiving Plaintiff's disputes from the CRAs and prior to the commencement of this action. These failures to correct Plaintiff's information resulted from the Defendant Furnisher's failure to investigate as articulated in this Complaint, after the Defendant Furnishers received notice of Plaintiff's disputes from the CRAs.

127.    As a result of this conduct (the action and inaction of Defendant Furnishers), Plaintiff suffered actual damages, including but not limited to: costs associated with disputing the inaccurate information, loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, mental and emotional pain and anguish, and the humiliation and embarrassment of having to borrow money and offer explanations for why she lost the ability to benefit from credit.

128.    The violations by Citi were willful, rendering Citi liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Citi was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

129.    The violations by LVNV were willful, rendering LVNV liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, LVNV was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

130.    The violations by Resurgent were willful, rendering Resurgent liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Resurgent was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

131.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Defendant Furnishers in amounts to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT IV
## VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681b(f)
### *against Citi*

132.    Plaintiff realleges and incorporates all factual allegations in the Complaint as it fully set out herein.

133.    Citi repeatedly violated 15 U.S.C. § 1681b(f) by unlawfully obtaining Plaintiff's consumer reports without Plaintiff's written authorization or a permissible purpose.

134.    Citi continued accessing Plaintiff's consumer reports even after Plaintiff gave Citi notice that Plaintiff is a victim of identity theft.

135.    Citi also violated 15 U.S.C. § 1681b(f) by failing to accurately and lawfully certify a permissible purpose when accessing Plaintiff's consumer report(s).

136.    Plaintiff's consumer report(s) contained a wealth of private information which Citi had no right to access absent a specific Congressional license to do so.

137.    Due to Citi's conduct, action, and inaction, Plaintiff suffered actual damages, including but not limited to: invasion of her statutory right to confidentiality of his personal information, issuance of a fraudulent credit card account in her name, loss of credit, damage to reputation, time and money spent attempting to correct inaccurate reporting, embarrassment, humiliation, and other mental and emotional distress.

138.    The violations by Citi were willful, rendering Citi liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Citi was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

139.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Citi in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## DEMAND FOR RELIEF

Plaintiff therefore respectfully requests that this Court:

(1)    Award Plaintiff actual and punitive damages for violations of the FCRA by Citi, LVNV, and Resurgent;

(2)    Award Plaintiff attorney's fees and costs under the FCRA;

(3)    Award Plaintiff pre-judgment and post-judgment interest at the legal rate; and

(4)    Award other relief as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED.**

**ERUM SHIRAZI**

By:

/s/ Craig C. Marchiando
Craig C. Marchiando, NY Bar no: 1024495
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Fax
Email: craig@clalegal.com

Abel L. Pierre, Attorney I.D.#AP-5508
**Law Office of Abel L. Pierre, Attorney-at-Law, P.C.**
140 Broadway, 46th Floor
New York, New York 10005
Telephone: (212) 766-3323
Facsimile: (212) 766-3322
Email: abel@apierrelaw.com

*Counsel for Plaintiff*