**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERUM SHIRAZI, )<br><br>        Plaintiff, )<br><br>v. )<br><br>CITIBANK, N.A., )<br>Serve:  Any Officer )<br>        388 Greenwich Street )<br>        New York,  NY 10013 )<br><br>LVNV FUNDING, LLC, )<br>Serve:  Corporation Service Company, Reg. Agent )<br>        80 State Street )<br>        Albany, NY 12207 )<br><br>and )<br><br>RESURGENT CAPITAL SERVICES, L.P. )<br>Serve:  Corporation Service Company, Reg. Agent )<br>        80 State Street )<br>        Albany, NY 12207 )<br><br>        Defendants. ) | Case No.: 1:25-cv-02992-PAE |

**DEFENDANTS, LVNV FUNDING LLC, AND RESURGENT CAPITAL SERVICES, L.P**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR RENEWED MOTION TO**
**COMPEL ARBITRATION**

**J. ROBBIN LAW**
Jonathan M. Robbin
200 Business Park Drive, Suite 103
Armonk, New York 10504
914-685-5016
Jonathan.robbin@jrobbinlaw.com

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 1

A.    The Debt.................................................................................................................. 1

B.    Plaintiff's Use of the Account................................................................................. 3

C.    Agreement to Arbitrate ........................................................................................... 9

D.    Transfer and Assignment of the Account ............................................................... 11

E.    The Collection Action............................................................................................. 12

PROCEDURAL HISTORY................................................................................................. 12

ARGUMENT ....................................................................................................................... 14

I.    PLAINTIFF'S COMPLAINT MUST BE REFERRED TO ARBITRATION................. 14

A.    There is an Insurmountable Preference for Arbitration ......................................... 14

B.    A Valid Arbitration Agreement Exists .................................................................. 16

C.    Plaintiff's Claims are Encompassed by the Cardholder Agreement and Defendants are Entitled to Enforce it .................................................................................... 21

D.    The United States Supreme Court and New York Court Mandate that an Arbitrator Determine the Arbitration Agreement's Enforceability ...................... 25

CONCLUSION.................................................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

*14 Penn Plaza, LLC v. Pye*,
    556 U.S. 247 (2009) ..................................................................................................... 15

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ..................................................................................................... 15

*Amalgamated Transit Union, Local 880 v. N.J. Transit Bus Operations, Inc.*,
    975 A.2d 403 (2009) ..................................................................................................... 26

*Ammerman v. Goldman Sachs Bank USA*,
    2026 U.S. Dist. LEXIS 9963 (W.D. Okla. Jan. 20, 2026) ............................................ 17

*Anonymous v. JP Morgan Chase & Co.*,
    2005 U.S. Dist. LEXIS 26083 ...................................................................................... 18

*AT&T Mobility, LLC v. Concepcion*,
    563 U.S. 333 (2011) ........................................................................................ 14, 15, 20

*Banque v. Amoco Oil Co.*,
    573 F. Supp. 1464 (S.D.N.Y. 1983) .............................................................................. 23

*Borsack v. Chalk & Vermilion Fine Arts, Ltd.*,
    974 F. Supp. 293 (S.D.N.Y. 1977) ................................................................................ 22

*Cap Gemini Ernst & Young, U.S., LLC v. Nackel*,
    346 F.3d 360 (2d Cir. 2003) .......................................................................................... 16

*Clarke v. Alltran Fin., LP*,
    2018 U.S. Dist. LEXIS 29011, 2018 WL 1036951 (E.D.N.Y. Feb. 22, 2018) .... 23, 26, 27

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*,
    923 F.2d 245 (2d Cir. 1991) .......................................................................................... 15

*DuBois v. Macy's E. Inc.*,
    338 F. Appx.  32 (2d Cir. 2009) .................................................................................... 16

*Epic Sys.  Corp. v. Lewis*,
    584 U.S. 497 (2018) ................................................................................................ 15, 20

*Feder v. Fortunoff, Inc.*,
    114 A.D.2d 399 (2d Dep't 1985) .................................................................................. 17

*Flexi-Van Leasing, Inc. v. Through Transport Mut.  Ins. Assn.*,
    108 Fed. Appx.  35 (3d Cir. 2004) ................................................................................ 23

*Fuller v. Frontline Asset Strategies, LLC,*
   2018 U.S. Dist. LEXIS 61015, 2018 WL 1744674 (N.D. Ill. 2018) ............................... 24

*Funderburke v. Midland Funding, L.L.C.,*
   2013 U.S. Dist. LEXIS 13438, 2013 WL 394198 (D. Kan. Feb. 1, 2013) ...................... 23

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,*
   815 F.2d 840 (2d Cir. 1987)............................................................................................. 15

*Gilmer v. Interstate/Johnson Lane Corp.,*
   500 U.S. 20 (1991)........................................................................................................... 15

*Green Tree Fin. Corp.-Alabama v. Randolph,*
   531 U.S. 79 (2000)........................................................................................................... 20

*Henry Schein, Inc. v. Archis & White Sales, Inc.,*
   586 U.S. 63 (2019)........................................................................................................... 26

*Holland v. LVNV Funding, LLC,*
   2016 U.S. Dist. LEXIS 146112, 2016 WL 6156187 (W.D. Ky. Oct. 21, 2016) ............. 23

*Kai Peng v. Uber Techs., Inc.,*
   237 F. Supp. 3d 36 (E.D.N.Y. 2017) ............................................................................... 26

*Karamath v. United States Bank,*
   2012 U.S. Dist. LEXIS 135038, 2012 WL 4327613 (E.D.N.Y. Aug. 29, 2012)............. 24

*Khaliquzzaman v. Equifax Info.  Servs.  LLC,*
   2018 U.S. Dist. LEXIS 136690, 2018 WL 3825887 (E.D.N.Y. Aug. 10, 2018).............. 16

*Kuehn v. Citibank, N.A.,*
   2012 U.S. Dist. LEXIS 173346, 2012 WL 6057941 (S.D.N.Y. Dec. 6, 2012) ............... 26

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.,*
   252 F.3d 218 (2d Cir. 2001)............................................................................................. 23

*MBNA Am. Bank, N.A. v. Goodman,*
   140 P.3d 589 (U.T. 2006) ................................................................................................ 17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
   473 U.S. 614 (1985)......................................................................................................... 15

*Morgan v. Sanford Brown Inst.,*
   225 N.J. 289 (2016) .................................................................................................... 18, 26

*Ortiz v. Frontline Asset Strategies, LLC,*
   2022 U.S. Dist. LEXIS 57127, 2022 WL 939771 (E.D.N.Y. March 29, 2022).............. 21

iv

*Paracha v. MRS BPO, L.L.C.*,
    2019 U.S. Dist. LEXIS 167875, 2019 WL 4736939 (E.D.N.Y. Sept. 27, 2019) ............. 21

*Rajamin v. Deutsch Bank Nat'l Trust Co.*,
    757 F.3d 79 (2d Cir. 2014)................................................................................... 24, 25

*Ramos v. Hertz Corp.*,
    2018 U.S. Dist. LEXIS 165803, 2018 WL 4635972 (D. Col. Sept. 26 2018).................. 23

*Randle v. Conduent Inc.*,
    2020 U.S. Dist. LEXIS 68162, 2020 WL 1905241 (W.D.N.Y. April 17, 2020).............. 16

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010).................................................................................................. 26

*Rodriguez-Depena v. Parts Auth., Inc.*,
    2016 U.S. Dist. LEXIS 185724, 2016 WL 10932999 (E.D.N.Y. Sept. 30, 2016) ........... 16

*Rogers v. LVNV Funding*,
    2021 U.S. Dist. LEXIS 200502 (E.D.N.Y. Oct. 18, 2021)............................................ 21

*Salerno v. Credit One Bank, NA*,
    2015 U.S. Dist. LEXIS 146748, 2015 WL 6554977 (W.D.N.Y. Oct. 29, 2015) ....... 17, 19

*Shearson/Am. Express, Inc. v. McMahon,*
    482 U.S. 220 (1987)................................................................................................ 15

*Smith v. Resurgent Capital Servs., LP*,
    2020 U.S. Dist. LEXIS 153607 (D. Md. Aug. 24, 2020) ........................................ 24, 25

*Standard Motor Freight, Inc. v. Local Union No.560,*
    228 A.2d 329 (1967)............................................................................................... 26

*Stolt-Nielsen S.A. v. Animal Seeds Int'l. Corp.,*
    559 U.S. 662 (2010)................................................................................................ 14

*Tamir v. Bank of New York Mellon*,
    2013 U.S. Dist. LEXIS 122033, 2013 WL 4522926 (E.D.N.Y. 2013) ........................... 24

*Thomas v. Midland Credit Mgmt.,*
    2017 U.S. Dist. LEXIS 195182, 2017 WL 5714722 (E.D.N.Y. Nov. 27, 2017).............. 23

*Tran v. Bank of N.Y.*,
    610 Fed. Appx. 82 (2d Cir. 2015)............................................................................. 24

*Vaden v. Discover Bank,*
    556 U.S. 49 (2009)................................................................................................. 15

*Valentine v. LVNV Funding LLC, et al,*
    2020 U.S. Dist. LEXIS 185521, 2020 WL 5946975 (N.D. Ill. Oct. 7, 2020) ............ 24, 25

*Variblend Dual Dispensing Sys., LLC v. Seldel GmbH & Co., KG*,
    970 F. Supp. 2d 157 (S.D.N.Y. 2013)............................................................................. 22

*Volt Info.  Scis.  v. Bd. of Trustees*,
    489 U.S. 468 (1989)....................................................................................................... 14

*Weiss v. Am. Express Nat'l Bank*,
    2020 U.S. Dist. LEXIS 215950, 2020 WL 6807628 (S.D.N.Y. Nov. 19, 2020).............. 17

*Welch v. EZ Loan Auto Sales*,
    2019 U.S. Dist. LEXIS 101767, 2019 WL 2515182 (W.D.N.Y. June 18, 2019)............. 16

*Wexler v. LVNV Funding, LLC*
    2023 U.S. Dist. LEXIS 113629 (S.D.N.Y. Jun. 30, 2023) ............................................... 23

*Zutel v. Wells Fargo Bank, N.A.*,
    2014 U.S. Dist. LEXIS 132810, 2014 WL 4700022 (E.D.N.Y. 2014) ........................... 24

**Statutes**

9 U.S.C. § 1................................................................................................................................. 11

9 U.S.C. § 2................................................................................................................................. 17

N.J.S.A. 2A:23 ........................................................................................................................... 17

Defendants, LVNV Funding LLC ("LVNV") and Resurgent Capital Services, L.P. ("Resurgent") (together, "Defendants"), by and through their counsel, J. Robbin Law, submit this Brief in support of Defendants' Renewed Motion seeking an Order: (1) compelling arbitration under the terms of a valid, binding, and operative arbitration agreement; and (2) granting such other and further relief as this Court may deem just and proper ("Motion").

## INTRODUCTION

Defendants file this Motion, seeking the Court to order Plaintiff be compelled to arbitrate her claims in accordance with the valid, binding, and applicable arbitration agreement between the parties. The evidence establishes that Defendants are assignees of the binding agreement and are covered by the valid arbitration clause. Further, following the limited discovery, no question exists that the Account at issue was opened by and used by Plaintiff on multiple occasions. Further, Plaintiff admitted that the address in which the Account was opened and associated was her address and the statement evidencing both her use of the account and payments under the account were sent to her Address. For these reasons, and as is more fully set forth herein, the Court must refer the dispute set forth in Plaintiff's Complaint to arbitration under the binding and applicable arbitration agreement between the parties.

## STATEMENT OF FACTS

### A.    The Debt

On or about September 28, 2015, Citibank, N.A. ("Citibank") issued Plaintiff an open-end credit card between merchant, Best Buy, and Plaintiff bearing account number ending in 4794 (the "Account"). *See* Declaration executed by Jonathan Robbin, Esq. of J. Robbin Law PLLC in Support of Defendants' Motion ("Robbin Decl."), **Exhibit G** ("Citibank Decl."), ¶ 5; *see also*

1

Affidavit in Support of Defendants' Motion executed by Tonya Henderson, an employee of Resurgent, Master Servicing Agent for LVNV ("Resurgent Aff."), ¶ 10; **Exhibit A** (Collection Complaint), ¶¶ 4-5, to Robbin Decl.

At the same time, and in connection with the Account, Plaintiff entered into a Card Agreement (the "Agreement"), containing an arbitration agreement (the "Arbitration Agreement" and together with the Agreement, the "Cardholder Agreement"), setting forth the terms of, and the parties rights in connection with, the Account. *See* **Exhibit A and Exhibit G** (Citibank Decl.); Resurgent Aff., ¶ 10; **Exhibit 1** to Resurgent Aff.

Plaintiff received the Cardholder Agreement by mail at an address at which Plaintiff admits was associated with her, accepted same, and proceeded to use the Account. **Exhibit G** (Citibank Decl.), ¶ 10, to Robbin Decl.; *see also* Exhibit B to Citibank Decl.; Resurgent Aff., ¶ 10; **Exhibit 1** to Resurgent Aff. Plaintiff confirmed that she moved to 341 East 70th Street, Apartment 15 D, New York, New York 10021, in or about 2016. *See* Robbin Decl., **Exhibit M** (Shirazi Deposition) at 43-44, 165-66. Citibank sent the Cardholder Agreement and several account statements to that address. *See* Robbin Decl., **Exhibit L** (Sabo Deposition) at 100, 113-14, 122-23, 144; *see also* Robbin Decl., **Exhibit M** (Shirazi Deposition), Exhibit 6 at CITIBANK 000327-000340. Plaintiff later used this same address for her two other accounts with Citibank – a Macy's Card and a Citi Diamond Preferred Card. *See e.g.*, Robbin Decl., **Exhibit L** (Sabo Deposition) at 77, Exhibit 16 at CITIBANK 000004; *see also* Robbin Decl., **Exhibit L** (Sabo Deposition), Exhibit 17 at CITIBANK 000099. Claimant has, on multiple occasions, stated that she, herself, opened the Macy's Card using the same address as used to open the Best Buy Agreement.

**B.**      **Plaintiff's Use of the Account**

In addition to the mailing of Cardholder Agreements, Plaintiff also agreed to the Best Buy Cardholder Agreement's Terms and Conditions by her use of the Best Buy Card.  At her Deposition, Plaintiff testified that she previously worked as a Flight Attendant for Pakistan International Airlines.  *See* Robbin Decl., **Exhibit M** (Shirazi Deposition) at 76-77, 146.  She further explained that, as part of her job, she regularly traveled between New York and Pakistan, with a layover in Toronto, Canada.  *See* Robbin Decl., **Exhibit M** (Shirazi Deposition) at 153-157; *see also* Robbin Decl., **Exhibit M** (Shirazi Deposition), Exhibits 12 and 16. Plaintiff produced a travel log to show her time travelling during the relevant period.  SHIRAZI 000004 – 000008; *see also* Robbin Decl., **Exhibit M** (Shirazi Deposition) Exhibit 16.

Plaintiff used the Best Buy Credit Card when travelling and the charges shown on the various Best Buy Monthly Billing Statements line up perfectly with Plaintiff's travel.  *See* Robbin Decl., **Exhibit M** (Shirazi Deposition) at 104-113; *see also* Robbin Decl., **Exhibit M** (Shirazi Deposition), Exhibits 12 and 16; *see also* Robbin Decl., **Exhibit M** (Shirazi Deposition), Exhibit 6.

By way of example, on May 11, 2018, Plaintiff arrived in New York, where she would stay for two days prior to her departure to Canada and then to Canada.  *See* Robbin Decl., **Exhibit M** (Shirazi Deposition), at 104; *see also* Robbin Decl., **Exhibit M** (Shirazi Deposition), Exhibit 12 at 3.  On the day of her departure from Toronto, Plaintiff made a purchase at Toronto Pearson Airport, spending $57.26 at Toronto Duty Free. S*ee* Robbin Decl., **Exhibit M** (Shirazi Deposition), Exhibit 6 at CITIBANK 000443.  Thereafter, upon her arrival in New York, Plaintiff charged an additional $20.00 at JFK Airport.  *Id.* Finally, during the two-day layover in New York, she made three additional purchases in New York, including at the Apple Store in New York, New York, on May 12, 2018.  *See* Robbin Decl., **Exhibit M** (Shirazi Deposition), Exhibit 6 at CITIBANK 000443.

3

Plaintiff did not deny making these purchases, stating only that she did not remember.  *See* Robbin Decl., **Exhibit M** (Shirazi Deposition) at 158.  These matching transactions and travel, along with other examples, are detailed below:

Herein, **Ex. 6** refers to Robbin Decl., **Exhibit M** (Shirazi Deposition) Exhibit 6.  Exhibit 6 is a copy of Plaintiff's Account Billing Statements, as produced by Citibank and introduced as evidence during Plaintiff's Deposition, as well as introduced as evidence during Mr. Sabo's Deposition.  *See* Robbin Decl., **Exhibit L** (Sabo Deposition), Exhibit 26.

In addition, **Ex.16** refers to Robbin Decl., **Exhibit M** (Shirazi Deposition) Exhibit 16.  Exhibit 16 was a true and correct copy of Plaintiff's Customs and Border Protection records, as produced by Plaintiff and verified by Plaintiff as accurate.

| Date | Plaintiff's Travel Activity | Plaintiff's Credit Card Charge | Location of Charge | Amount of Purchase |
|---|---|---|---|---|
| 5/11/2018 | Layover – YYZ (Toronto Pearson Airport) | TORONTO DUTY FREE CATH MISSISSAUGA CD<br><br>Ex. 6 at CITIBANK 000443. | Mississauga, Canada | $ 57.28 |
|  | Flight – YYZ to JFK<br><br>Ex. 16 at 5. | JFK TVM*JFK03-JAMAICA C NEW YORK NY<br><br>Ex. 6 at CITIBANK 000443. | Jamaica, New York | $ 20.00 |
| 5/12/2018 | Layover in New York<br><br>Ex. 16 at 5. | FEEL BEAUTY SUPPLY JAMAICA NY<br><br>Ex. 6 at CITIBANK 000443. | Valley Stream, New York | $ 15.23 |
|  |  | DUNKIN #306826 035 JAMAICA NY<br><br>Ex. 6 at CITIBANK 000443. | Jamaica, NY | $ 21.15 |
|  |  | APPLE STORE #R095 NEW YORK NY<br><br>Ex. 6 at CITIBANK 000443. | New York, NY | $1,087.66 |
| 5/13/2018 | Flight – JFK to YYZ<br><br>Ex. 16 at 5. | AMERICAN AIR0010284889720 FORT WORTH TX<br><br>Ex. 6 at CITIBANK 000443. |  | $ 25.00 |
|  | Layover in YYZ<br><br>Ex. 16 at 5. | AEROPORTT AXI LIMOUSIN MISSISSAUGA CD | Mississauga, Canada | $ 47.15 |

4

| | | Ex. 6 at CITIBANK 000443. | | |
|---|---|---|---|---|

| Date | Plaintiff's Travel Activity | Plaintiff's Credit Card Charge | Location of Charge | Amount of Purchase |
|---|---|---|---|---|
| 7/22/2018 | | SHOPPER'S DRUG MART #1402 TORONTO CD<br><br>Ex. 6 at CITIBANK 000423. | Toronto, Canada | $ 41.02 |
| 7/23/2018 | | FOREVER 21 #390 TORONTO CD<br><br>Ex. 6 at CITIBANK 000423. | Toronto, Canada | $ 12.82 |
| | | SEPHORA EATON CTR 500 TORONTO CD<br><br>Ex. 6 at CITIBANK 000423. | Toronto, Canada | $ 39.64 |
| 7/24/2018 | Arrival and Layover in YYZ<br><br>Ex. 16 at 5. | DOLLARAMA # 370 TORONTO CD<br><br>Ex. 6 at CITIBANK 000423. | Toronto, Canada | $ 5.16 |
| | | ARDEN # 371 TORONTO CD<br><br>Ex. 6 at CITIBANK 000423. | Toronto, Canada | $ 51.87 |
| | | ARDENE #501 TORONTO CD<br><br>Ex. 6 at CITIBANK 000423. | Toronto, Canada | $ 42.89 |
| | | SHOPPER'S DRUG MART #1402 TORONTO CD<br><br>Ex. 6 at CITIBANK 000423. | Toronto, Canada | $ 8.06 |

| Date | Plaintiff's Travel Activity | Plaintiff's Credit Card Charge | Location of Charge | Amount of Purchase |
|---|---|---|---|---|
| 8/17/2018 | | VICTORIA'S SECRET STORES TORONTO CD<br><br>Ex. 6 at CITIBANK 000423. | Toronto, Canada | $ 114.23 |
| | Layover in YYZ<br><br>Ex. 16 at 5. | SHOPPERSDRUGMART0943 TORONTO CD<br><br>Ex. 6 at CITIBANK 000423. | Toronto, Canada | $ 59.69 |
| 8/18/2018 | | DOLLARAMA # 370 TORONTO CD | Toronto, Canada | $ 24.24 |

5

| | | Ex. 6 at CITIBANK 000423. | | |
|---|---|---|---|---|
| | | VICTORIA'S SECRET STORES TORONTO CD<br><br>Ex. 6 at CITIBANK 000423. | Toronto, Canada | $ 65.77 |
| | | THAI ON YONGE INC. TORONTO CD<br><br>Ex. 6 at CITIBANK 000423. | Toronto, Canada | $ 11.21 |
| 8/19/2018 | Flight from YYZ to KHI (Pakistan)<br><br>Ex. 16 at 5. | TORONTO DUTY FREE CATI MISSISSAUGA CD<br><br>Ex. 6 at CITIBANK 000423. | Toronto, Canada | $ 62.41 |

| Date | Travel Activity | Credit Card Charge | Location of Charge | Amount of Purchase |
|---|---|---|---|---|
| 12/24/2018 | | DOLLARAMA # 370 TORONTO CD<br><br>Ex. 6 at CITIBANK 000387. | Toronto, Canada | $ 44.41 |
| | Layover – YYZ<br><br>Ex. 16 at 5. | DOLLARAMA # 370 TORONTO CD<br><br>Ex. 6 at CITIBANK 000387. | Toronto, Canada | $ 15.98 |
| | | SHOPPER'S DRUG MART #1402 TORONTO CD<br><br>Ex. 6 at CITIBANK 000387. | Toronto, Canada | $ 107.47 |
| | | MAC TORONTO EATON CENTRE TORONTO CD<br><br>Ex. 6 at CITIBANK 000387. | Toronto, Canada | $ 20.00 |

In addition, Plaintiff produced no evidence of other Credit Cards or bank statements that would call into question these clear charges.

Plaintiff made periodic payments on the balance incurred on the Account until February 14, 2021.  *See* **Exhibit G** (Citibank Decl.), ¶ 10, to Robbin Decl.; *see also* Exhibit 3 to Citibank Decl., *generally*; Resurgent Aff., ¶¶ 11-12; **Exhibit 2** to Resurgent Aff; *see also* Robbin Decl., **Exhibit K** (Sexton Deposition) at 65-67.  Plaintiff's last payment on the Account was made in

6

March 2021, but the payment was returned and not applied to the account.  *See* **Exhibit G** (Citibank Decl.), ¶ 10; *see also* Exhibit B to Citibank Decl.; Resurgent Aff., ¶ 12; **Exhibit 2** to Resurgent Aff.  Thereafter, Plaintiff made no further payments on the Account, despite continuing to make purchases and increasing the Account's outstanding balance.  *See* Resurgent Aff., ¶ 13; *see also* **Exhibit 2** to Resurgent Aff.  Ultimately, Plaintiff defaulted on March 17, 2021, and the Account was charged off on September 22, 2021.  *See* Resurgent Aff., ¶ 14.

Notably, the Cardholder Agreement, including its constituent Arbitration Agreement, remained substantially similar throughout the pendency of the Account as well, as detailed below—after the Account was charged off and transferred to and among the Defendants.  *See* Resurgent Aff., *generally.*

Although Plaintiff alleges that she was a victim of identity theft, Plaintiff has repeatedly made conflicting statements regarding her ownership and use of the Best Buy Card.  First, in her Declaration in Opposition to Defendant, Citibank's, Motion to Compel Arbitration, Plaintiff stated, "Citi claims that it issued me a Best Buy credit card account in 2015, **but that was so long ago I cannot recall with complete certainty that this is true**."  *See* **Exhibit H** (Plaintiff Decl.), ¶ 4 (emphasis added).  With regard to the Cardholder Agreement, Plaintiff did not dispute receipt of the Agreement, but, instead, stated, "I have no knowledge about whether the 'Cardholder Agreements' attached as Exhibit A and E to the Declaration of Steven Sabo accurately reflects the terms of the Best Buy Account and the Macy's at the time the Best Buy Account and Macy's Account were opened. **While I have no reason to believe that they are not the correct documents, I have no knowledge either way**".  *See Id.,* ¶ 3 (emphasis added).  Second, when confronted with account purchases that match perfectly with her travel records, Plaintiff did not deny making those purchases, instead stating only that she did not know if she made those

purchases because she did not remember.  S*ee* Robbin Decl., **Exhibit M** (Shirazi Deposition) at 158 ("I don't know because I don't remember I can do it.").  Third, at her deposition, Plaintiff testified that she recalled receiving a card from Best Buy.  *Id.* at 162.  She later said it was a "warranty" card.  However, Plaintiff has not produced the "warranty" card or introduced evidence to suggest that the "warranty" card was not, in fact, the Best Buy credit card at issue.

Further, despite Plaintiff's claim that she was a victim of identity theft, she has not produced any documents or testimony to prove this allegation.  She testified that she made a Police Report with the NYPD related to the identity theft, but when asked to share a copy of the Report, she claimed that she did not get a copy that she could produce.  S*ee* Robbin Decl., **Exhibit M** (Shirazi Deposition) at 132.  Likewise, during her deposition, Plaintiff stated that she had other credit cards at Victoria's Secret and New York & Company, and bank accounts at TD Bank and Bank of America.  *Id.* at 111-12, 136-37, 139.  Defendants requested these documents, both as part of discovery and again following the Plaintiff's deposition.  Specifically, Defendants demanded that Plaintiff produce statements from the credit cards and bank account at TD Bank.  S*ee* Robbin Decl., **Exhibit M** (Shirazi Deposition) at 163.  Plaintiff failed to produce any of these documents. Thereafter, despite Plaintiff's alleged knowledge of the alleged identity theft, Plaintiff retained none of her documents, and counsel informed Defendants that there was no way of retrieving the statements.   In addition, Citibank sought information relating to any other lawsuits Plaintiff brought against other potential creditors.  *Id.* at 142-43.  Once again, Plaintiff did not produce any documents.  In short, Plaintiff has produced no evidence to the contrary and instead solely relies on her self-serving and conclusory statements, which are insufficient to defeat the motion.

Perplexingly, if Plaintiff cannot *recall* whether she obtained or made purchases on the credit card and cannot produce documents or testimony to support her identity theft allegations, as

opposed to being absolutely certain that someone fraudulently obtained a credit card under her name and Social Security Number, then the determination of whether to arbitrate cannot be based on a question of identity theft.

### C.    Agreement to Arbitrate

Regardless, as relevant here, the Arbitration Agreement: (1) apply to claims against Citibank and its successors or assignees; (2) regarding collections disputes and any other matters relating to the Account; (3) expressly waive class action claims; and (4) designate American Arbitration Association ("AAA") as arbitration administrators for any covered disputes. *See* Exhibit A to **Exhibit G** (Citibank Decl.), *generally,* to Robbin Decl., *see also* **Exhibit 1** and **Exhibit 2** to Resurgent Aff., *generally*.

In particular, the 2015 Arbitration Agreement, which was in effect at the time Plaintiff opened her Account states:

> *Agreement to Arbitrate:* Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").
>
> *Claims Covered*
>
> **What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual

(non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

*See* RCS Aff. ¶ 10, **Exhibit 1** at 6-7.

Likewise, the 2021 and 2022 Arbitration Agreements, which were amendments thereafter, adopting much of the 2015 Agreement, state:

> *You or we may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").
>
> **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**
>
> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third0-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims.  This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

*See* Exhibit A to **Exhibit G** (Citibank Decl.), *generally,* to Robbin Decl.*; see also* Resurgent Aff., ¶ 26; **Exhibit 5** and **Exhibit 6** to Resurgent Aff., *generally.*  The 2015 Arbitration Agreement further states "[t]his also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company."  *See* Exhibit A to **Exhibit G** (Citibank Decl.), *generally,* to Robbin Decl.*; see also*

Resurgent Aff., ¶ 27; **Exhibits 5** and **Exhibit 6** to Resurgent Aff., *generally.* The Agreement also

provides:

> **PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.**
>
> **THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION.  ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION.  IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY.  ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT.  THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**

*See* Exhibit A to **Exhibit G** (Citibank Decl.) to Robbin Decl.; *see also* Resurgent Aff., ¶ 29;

**Exhibit 1**, **Exhibit 5**, and **Exhibit 6** to Resurgent Aff.

Further, Plaintiff also agreed that the Arbitration Agreement is to be conducted by the AAA

and subject to the Federal Arbitration Act, 9 U.S.C. § 1 ("FAA").  *See* Exhibit A to **Exhibit G**

(Citibank Decl.); *see also* Resurgent Aff., ¶¶ 29-30; **Exhibit 2** to Resurgent Aff.  Again, Plaintiff

does not dispute receipt of the Arbitration Agreement, but, rather, affirms that she cannot recall

whether she received it.  *See* **Exhibit H** (Plaintiff's Decl.), ¶ 3.  In addition, under the terms of the

Cardholder Agreement, Citibank had the right to assign "any or all of [its] rights and obligations

under this Agreement."

### D.    Transfer and Assignment of the Account

On November 23, 2021, after the Account had been charged off, Citibank sold, assigned,

and conveyed all rights and obligations to several consumer credit accounts, including the

Account, to Resurgent Acquisitions LLC ("RALLC").  *See* Resurgent Aff., ¶ 16; *see also* **Exhibit**

**3** to Resurgent Aff.; **Exhibit A** (Collection Complaint), ¶ 5, to Robbin Decl.

11

Thereafter, on November 23, 2021, the Account was sold, assigned, and conveyed, first from RALLC to LVNV.  *See* Resurgent Aff., ¶ 17; *see also* **Exhibit 3** to Resurgent Aff.; **Exhibit A** (Collection Complaint), ¶ 5, to Robbin Decl.[1]

On November 24, 2021, Citibank informed Shirazi via letter dated November 24, 2021, that the Account was no longer owned by Citibank.  *See* Resurgent Aff., ¶ 18; *see also* **Exhibit 3.**

Plaintiff never opted out of the terms of the Arbitration Agreement and does not dispute receipt of the Agreement.  *See* Resurgent Aff., ¶ 21; *see also* **Exhibit H** (Plaintiff's Decl.), ¶ 3.

### E.        The Collection Action

On or about January 16, 2024, LVNV filed a Complaint (the "Collection Complaint") in the Civil Court of the City of New York, Bronx County ("Collection Court"), styled as *LVNV Funding LLC v. Erum Shirazi*, Docket Number CV511-24/BX, to collect on Plaintiff's debt in connection with the Account ("Collection Action").  *See* Robbin Decl., ¶ 2; *see also* **Exhibit A** (Collection Complaint) to Robbin Decl.

On January 18, 2024, Plaintiff was served with the Collection Action.  *See* Robbin Decl., ¶ 3; *see also* **Exhibit B** to Robbin Decl.

On or about May 14, 2025, LVNV filed a Notice of Discontinuance of the Collection Action.  *See* Robbin Decl., ¶ 4; *see also* **Exhibit C** to Robbin Decl.

### PROCEDURAL HISTORY

On April 10, 2025, Plaintiff filed the instant Complaint against Defendants and Citibank ("Complaint").  [ECF Doc. No. 1].  *See* Robbin Decl., ¶ 6; *see also* **Exhibit E** to Robbin Decl**.**

---

[1] Thus, each of the Defendants is an assignee of the Account and can enforce all rights and remedies set forth in the Cardholder Agreement, which remained the same throughout the pendency of the Account and thereafter, including during the transfers to and among Defendants.  *See* Resurgent Aff., ¶ 20; *see also* **Exhibit 1** and **Exhibit 3** to Resurgent Aff.

On May 27, 2025, Defendants filed an Answer to the Complaint.  [ECF Doc. No. 13].  *See* Robbin Decl., ¶ 7; *see also* **Exhibit F** to Robbin Decl**.**  On May 29, 2025, Citibank filed an Answer to the Complaint.  [ECF Doc. No. 16].  *See* Robbin Decl., ¶ 8.

On July 1, 2025, the parties appeared for the initial pretrial conference.  [ECF Doc. No. 23].  *See* Robbin Decl., ¶ 9.

On September 10, 2025, Citibank filed a Motion to Compel Arbitration.  [ECF Doc. No. 25].  *See* Robbin Decl., ¶ 10.  In support of Citibank's Motion to Compel Arbitration, Citibank filed a Declaration of Steven Sabo, employee of Citibank, N.A. ("Citibank Decl.").  [ECF Doc. No. 25].  *See* Robbin Decl., ¶ 10; *see also* **Exhibit G** to Robbin Decl**.**

On October 1, 2025, Plaintiff opposed Citibank's Motion.  [ECF Doc. No. 30].  *See* Robbin Decl., ¶ 11.  In opposition to Citibank's Motion, Plaintiff filed a Declaration ("Plaintiff's Decl."). [ECF Doc. No. 30-1].  *See* Robbin Decl., ¶ 11; *see also* **Exhibit H** to Robbin Decl**.**

On October 20, 2025, Defendants filed a Motion to Compel Arbitration.  [ECF Doc. No. 32].  *See* Robbin Decl., ¶ 13.  On February 18, 2026, the Court issued an order, directing the parties to conduct limited discovery on the issue of whether the Plaintiff is bound by the Arbitration Agreements contained in the Cardholder Agreements for the accounts at issue.  [ECF Doc. No. 49].  *See* Robbin Decl., ¶ 14.  On March 13, 2026, the Court issued an additional order, providing deadlines for depositions and supplemental motions to compel arbitration.  [ECF Doc. No. 54]. *See* Robbin Decl., ¶ 15.  On April 22, 2026, Plaintiff's counsel deposed Patricia Sexton, Paralegal 2 at Defendant Resurgent.  *See* Robbin Decl., ¶ 16; *see also* Robbin Decl., Ex. K.  On April 23, 2026, Plaintiff's counsel deposed Steven Sabo, a Recovery Manager at Defendant Citibank.  *See* Robbin Decl., ¶ 17; *see also* Robbin Decl., Ex. L.  On April 29, 2026, Defendants' counsels

13

conducted a Deposition of Plaintiff, Ms. Shirazi.  *See* Robbin Decl., ¶ 18; *see also* Robbin Decl., Ex. M.

On May 14, 2026, Plaintiff's counsel informed the Court that Plaintiff and Defendant Citibank reached a settlement.  *See* Robbin Decl., ¶ 19 [ECF Doc. 65].  On May 15, 2026, the Court acknowledged the filing and terminated Citibank from this case.  *See* Robbin Decl., ¶ 20 [ECF Doc. 66].

Currently, Defendants LVNV and Resurgent are the only remaining Defendants in this case.  Defendants now file their Renewed Motion to Compel Arbitration.

## ARGUMENT

## I.    PLAINTIFF'S COMPLAINT MUST BE REFERRED TO ARBITRATION

The Action must be referred to arbitration because: (a) there is an insurmountable preference for arbitration; (b) the United States Supreme Court and New York Courts mandate that an arbitrator determine the Arbitration Agreement's enforceability; and (c) there is a valid, binding, and enforceable arbitration agreement between the parties and to which Plaintiff is bound.

### A.    There is an Insurmountable Preference for Arbitration

The United States Supreme Court has repeatedly held that the "principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms."  *See, e.g., AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citing *Volt Info. Scis. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989)); *Stolt-Nielsen S.A. v. Animal Seeds Int'l. Corp.,* 559 U.S. 662, 682 (2010); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 121, (2d Cir. 1991) (holding any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

The FAA was enacted by Congress to "reverse the longstanding judicial hostility to Arbitration Agreements." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991); *Vaden*

14

*v. Discover Bank,* 556 U.S. 49 (2009); *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220,

225-26 (1987).  Throughout the nation but especially in this circuit, "federal policy unequivocally

encourages arbitration as an alternative means of dispute resolution."  *David L. Threlkeld & Co.*

*v. Metallgesellschaft Ltd*., 923 F.2d 245, 248 (2d Cir. 1991).

       As the Supreme Court stated:

> [T]he recognition that arbitration procedures are more streamlined
> than federal litigation is not a basis for finding the forum somehow
> inadequate; the relative informality of arbitration is one of the chief
> reasons that parties select arbitration.  Parties trad[e] the procedures
> and opportunity for review of the courtroom for the simplicity,
> informality and expedition of arbitration.

*14 Penn Plaza, LLC v. Pye*, 556 U.S. 247, 269 (2009) (citations omitted); *accord AT&T Mobility*,

131 S. Ct. at 1748-49; *see also Epic Sys.  Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (reiterating the

benefits of arbitrating favor a presumption that arbitration should apply because of "the promise

of quicker, more informal, and often cheaper resolutions for everyone involved").  The Supreme

Court's preference for arbitration extends to consumer disputes as well.  *See Allied-Bruce Terminix*

*Cos. v. Dobson*, 513 U.S. 265, 280 (1995).

       Under the FAA, a court must compel arbitration if it finds: (1) that a valid arbitration

agreement exists between the parties, and (2) the dispute falls within the scope of the agreement.

*See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985); *see*

*also Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 844 (2d Cir. 1987) ("[b]y its terms,

the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates

that district courts shall direct the parties to proceed to arbitration on issues as to which

an arbitration agreement has been signed"). Because of the favored status afforded to arbitration,

"[a]n agreement to arbitrate should be read liberally in favor of arbitration."  *Id.; see also Randle*

*v. Conduent Inc*., 2020 U.S. Dist. LEXIS 68162, *12, 2020 WL 1905241 (W.D.N.Y. April 17,

15

2020) (holding any doubts concerning the scope of arbitrable issues should be decided in favor of arbitration).

In evaluating a motion to compel arbitration, any extrinsic evidence submitted by the parties, as well as the allegations in the complaint, may properly be considered. *See Welch v. EZ Loan Auto Sales*, 2019 U.S. Dist. LEXIS 101767, at *10, 2019 WL 2515182 (W.D.N.Y. June 18, 2019) (holding materials outside the pleadings may be considered); *Khaliquzzaman v. Equifax Info. Servs. LLC*, 2018 U.S. Dist. LEXIS 136690, at *4, 2018 WL 3825887 (E.D.N.Y. Aug. 10, 2018) (allowing the entry of extrinsic evidence to establish arbitration agreement). A party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration. *Rodriguez-Depena v. Parts Auth., Inc.,* 2016 U.S. Dist. LEXIS 185724, 2016 WL 10932999, at *1 (E.D.N.Y. Sept. 30, 2016).

### B.    A Valid Arbitration Agreement Exists

This Court should evaluate the enforceability of the Arbitration Agreement using state contract law. C*ap Gemini Ernst & Young, U.S., LLC v. Nackel,* 346 F.3d 360, 365 (2d Cir. 2003); (the determination of whether parties have contractually bound themselves to arbitrate a dispute—a determination involving interpretation of state law—is a legal conclusion."); *DuBois v. Macy's E. Inc.*, 338 F. Appx. 32, 33 (2d Cir. 2009) ("Arbitration clauses are a matter of contract law and, if valid, should be enforced.").[2]

The Cardholder Agreement is enforceable under federal law and New York law. Under federal law, a written agreement to arbitrate is presumed valid and enforceable. *See* 9 U.S.C. § 2 ("A written provision in . . . a contract . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable. . ."); *N.J.S.A.* 2A:23B-6(a) ("An agreement contained in a record to

---

[2] According to the arbitration agreement in the Card Agreement, FAA law applies but to the extent state law applies, Utah law should be applied.

submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract."). Thus, the Agreement is presumptively valid under federal law.

A party that uses a credit card after receiving the Credit Card Agreement, agrees to the terms including the agreement to arbitrate. *See, e.g., Salerno v. Credit One Bank, NA*, 2015 U.S. Dist. LEXIS 146748, 2015 WL 6554977, at *4 (W.D.N.Y. Oct. 29, 2015) (collecting cases to support the court's statement that "it is clear under New York law that regular use of a credit card constitutes sufficient evidence of the card user's consent to the terms of the agreement governing the account"); *see also Weiss v. Am. Express Nat'l Bank*, 2020 U.S. Dist. LEXIS 215950, 2020 WL 6807628 at *4-5 (S.D.N.Y. Nov. 19, 2020)(" "it is clear under New York law that regular use of a credit card constitutes sufficient evidence of the card user's consent to the terms of the agreement governing  the account."); *see also Feder v. Fortunoff, Inc.*, 114 A.D.2d 399 (2d Dep't 1985) ("The issuance of a credit card constitutes an offer of credit which may be withdrawn by the offeror at any time prior to acceptance of the offer through use of the card by the holder."); *see also*, *Ammerman v. Goldman Sachs Bank USA*, 20206 U.SZ.Dist. LEXIS 9963 at *11 (W.D. Okla. Jan. 20, 2026), *quoting MBNA Am. Bank, N.A. v. Goodman*, 140 P.3d 589, 592 (U.T. 2006) ("Utah appellate authorities have invoked § 25-5-4(2)(e) for the proposition that use of a credit card following receipt of the agreement can constitute acceptance.").

Here, Plaintiff assented to the Terms and Conditions of the Cardholder Agreement, including the Arbitration Agreement by her clear use of the Card after receiving the Cardholder Agreement. *See* Chart *supra* at 4-6; *see also* Robbin Decl., **Exhibit M** (Shirazi Deposition) at 158. The Cardholder Agreement was mailed by Citibank to Plaintiff at the same address that matched the address provided by Plaintiff when she admittedly applied for the Macy's account. *See* Robbin

Decl., **Exhibit M** (Shirazi Deposition) at 43-44, 165-66.  Further, Plaintiff admitted to going to Best Buy and obtaining an actual Card.  *See* Robbin Decl., **Exhibit M** (Shirazi Deposition) at 160, 162.

Following receipt, Plaintiff used the Credit Card numerous times, as can be seen in the charts above.  *See* Chart *supra* at 4-6.  Plaintiff's presence in these exact locations demonstrates that these purchases directly trace back to Plaintiff and Plaintiff was clearly associated with the purchases reflected in the periodic Monthly Billing Statements.  It is incredulous for Plaintiff to argue that, for example, while Plaintiff was in Toronto airport on May 11, 2018, the Identity Thief was also in the same location and used her Credit Card in Toronto airport on that same date. Likewise, it cannot be a coincidence that, on the same day, when Plaintiff arrived at JFK International Airport, the Identity Thief also arrived and used her Credit Card in at JFK.  The next day, while Plaintiff was on a layover in New York, she claims that the Identity Thief was there too, using her Credit Card at a beauty supply store, Dunkin' Donuts, and the Apple Store.  It obviously is not a coincidence as there are at least fifteen similar location matched charges on the account.  Plaintiff has produced zero evidence to call these location matched purchases into question.  *See Anonymous v. JP Morgan Chase & Co.*, 2005 U.S. Dist. LEXIS 26083 at *10 ("Here, there is uncontested evidence that the plaintiff used the Chase card and made payments to Chase for that use for several months.  [. . .] In doing so, the plaintiff agreed to the terms of the Arbitration Agreement."); *see also Salerno v. Credit One Bank, NA*, 2015 US Dist. LEXIS 146748 (W.D.N.Y. 2015).

Following Plaintiff's use of the Credit Card, Citibank mailed Monthly Billing Statements and other account documents to Plaintiff's admitted address.  *See* Robbin Decl., **Exhibit L** (Sabo Deposition) at 100, 113-14, 122-23, 144; **Exhibit L** (Sabo Deposition) at 77, Exhibit 16 at

18

CITIBANK 000004; *see also* Robbin Decl., **Exhibit L** (Sabo Deposition), Exhibit 17 at CITIBANK 000099. Plaintiff did not dispute the charges at the time she received the Billing Statements. *See* Robbin Decl., **Exhibit L** (Sabo Deposition) at 145 ("Prior to the sale, Citibank would not sell any unresolved dispute . . . ."). Thus, there is no question that Plaintiff is bound by the Account Agreements containing the arbitration provision. There is simply no evidence that these Agreements were entered into by another party, as Plaintiff would seek to have the Court believe.

Also, the Arbitration Agreement conforms with New York law by "clearly and unambiguously agree[ing] to a waiver of the right to sue" by indicating in bold, capital letters:

> ***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.***
>
> **THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**

*See* **Exhibit 1** to Resurgent Aff. and Exhibit A to **Exhibit G** (Citibank Decl.) to Robbin Cert.; *see also* Resurgent Aff., ¶ 27.[3]

---

[3] It is also well-settled that the class action waiver is enforceable under federal law. *See AT&T Mobility,* 563 U.S. 333; *Epic Sys. Corp.*, 584 U.S. 497. Thus, there can be no dispute to the Arbitration Agreement's enforceability under the FAA.

Once a defendant establishes the validity of the arbitration agreement, the burden shifts to plaintiff to rebut the presumption of arbitration. *See Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 92 (2000) (opposing party has the burden of rebutting the presumption of arbitration).

Here, after limited discovery on the issue of arbitrability, Plaintiff fails to rebut that presumption. Instead, Defendants expect that Plaintiff's Opposition will do nothing more than utilize the same distractions and red herrings asserted all along, that simply reiterate that Plaintiff simply cannot "recall." *See* **Exhibit H** (Plaintiff's Decl.) ¶ 4 ("Citi claims that it issued me a Best Buy credit card account in 2015, but that was so long ago I cannot recall with complete certainty that this is true."); *see also* Robbin Decl., **Exhibit M** (Shirazi Deposition) at 158. But this vague denial is simply insufficient to sustain Plaintiff's burden rebutting presumption and to avoid complying with the Cardholder Agreement.

There is no dispute that the Card Agreement specifically stated, "If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim." *See* Exhibit A to **Exhibit G** (Citibank Decl.); *see also* **Exhibit 2** to Resurgent Aff.; Resurgent Aff., ¶ 25. The Arbitration Agreement also provided Plaintiff with a clear method of opting out of the Arbitration provision of the contract, advising Plaintiff of the "[r]ules for rejecting this arbitration provision." *See* Exhibit A to **Exhibit G** (Citibank Decl.); *see also* **Exhibit 1** to Resurgent Aff.

Plaintiff will likely focus on her purported self-serving claims for identity theft, suggesting that the accounts were not hers, so she cannot be bound by the Agreements. *See, e.g.,* Plaintiff's Opposition to Citibank's Motion to Compel. Here, Plaintiff produced no evidence of actual identity theft as to the account and conceded that, as to this Account with LVNV, that she is not necessarily a victim of identity theft, but, instead, that she cannot *recall* whether she obtained the

20

credit card as it was taken out ten (10) years ago, nor can she remember uses the card for purchases. See Robbin Decl., Exhibit M (Shirazi Deposition) at 158;*See* **Exhibit H** (Plaintiff's Decl.) ¶ 4 ("Citi claims that it issued me a Best Buy credit card account in 2015, but that was so long ago I cannot recall with complete certainty that this is true."); *see also Ortiz v. Frontline Asset Strategies, LLC*, 2022 U.S. Dist. LEXIS 57127, 2022 WL 939771 (E.D.N.Y. March 29, 2022) (holding conclusory  assertion that plaintiff "does not owe a debt to LVNV does not by itself surmount her burden of pleading facts to support her FDCPA claims because it is a legal conclusion, or at least a mixed allegation of law and fact, rather than a  factual allegation"); *Rogers v. LVNV Funding*, 2021 U.S. Dist. LEXIS 200502 (E.D.N.Y. Oct. 18, 2021) (holding allegations of "plaintiff's lack of knowledge" are simply insufficient to plead a claim); *Paracha v. MRS BPO, L.L.C.*, 2019 U.S. Dist. LEXIS 167875, 2019 WL 4736939, at *6 (E.D.N.Y. Sept. 27, 2019) (the allegation in the complaint that plaintiff "does not owe the debt" is merely a "restated claim[] distinguished as [a] factual allegation[]" and is not entitled to "any weight.").

Thus, Plaintiff entered into the Cardholder Agreement and by using and benefitting from the credit card, making payments on the Account, and incurring the Debt that is the subject of the Complaint without objection or opt-out.

### C.    Plaintiff's Claims are Encompassed by the Cardholder Agreement and Defendants are Entitled to Enforce it

The LVNV Affidavit and Deposition Testimony demonstrate proof of the assignment of Plaintiff's Account and that LVNV is an assignee of Citibank and entitled to enforce the terms of the Cardholder Agreement.  *See* Resurgent Aff., ¶¶ 16-21; *see also* **Exhibit 3** to Resurgent Aff; *see also* Robbin Decl., **Exhibit L** (Sabo Deposition) at 131-32**.**

Under the Cardholder Agreement, either party has the authority to mandate arbitration.  *See* **Exhibit 1** to Resurgent Aff.; *see also* Exhibit A to **Exhibit G** (Citibank Decl.); Resurgent Aff., ¶

21

25 ("*You or we may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called 'Claims').  If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim."  LVNV, as assignee of the Agreement, and Resurgent as its Agent, is covered by the Agreement.  *See* Resurgent Aff., ¶¶ 27-28.

Courts in this circuit, and throughout the Country consistently hold assignees and non-signatories[4] like LVNV can enforce an arbitration agreement.[5]  *Borsack v. Chalk & Vermilion Fine Arts, Ltd.,* 974 F. Supp. 293 (S.D.N.Y. 1977) ("Our Court of Appeals has rejected the proposition that only signatories to an Arbitration Agreement can be bound by its terms"); *Variblend Dual Dispensing Sys., LLC v. Seldel GmbH & Co., KG*, 970 F. Supp. 2d 157, 166 (S.D.N.Y. 2013) ( ("the rights of an assignee are subject to . . . all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom.  This principle applies to arbitration provisions, which would be of no value if a party could escape the effect of such a clause by assigning a claim subject to arbitration between the original parties to a  third party"); *Banque v. Amoco Oil Co.*, 573 F. Supp. 1464, 1466 (S.D.N.Y. 1983); *see also Funderburke v. Midland Funding, L.L.C.*, 2013 U.S. Dist. LEXIS 13438, 2013 WL 394198, at *5 (D. Kan. Feb. 1, 2013) (holding non-signatory to an arbitration agreement containing an assignment clause could enforce the arbitration agreement because the non-signatory was an assignee, and thus "it steps into the shoes of" the assignor who signed the arbitration agreement"); *Ramos v. Hertz Corp.*, 2018 U.S. Dist. LEXIS 165803, at *6, 2018 WL 4635972 (D. Col. Sept. 26 2018) (holding assignee

---

[4] The Second Circuit has long recognized that a non-signatory may either be bound by, or may compel a signatory to arbitrate pursuant to, an arbitration agreement based on common law principles of contract, including estoppel. *See, e.g., Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 358-60 (2d Cir. 2008) (surveying caselaw in which non-signatory has compelled signatory to arbitrate)

[5] Courts routinely rely on affidavits with supporting exhibits including bill of sale, affidavits of sale and assignment copies to establish assignment of Plaintiff's account. *See Marcario v. Midland Credit Mgmt.,* 2017 U.S. Dist. LEXIS 175129, at *7, 2017 WL 4792238 (E.D.N.Y Oct 23, 2017).

stands in shoes for purposes of arbitration); *Flexi-Van Leasing, Inc. v. Through Transport Mut. Ins. Assn.,* 108 Fed. Appx. 35, 40 (3d Cir. 2004) (holding "traditional principles of contract and agency law," including third-party beneficiary principles, applied to arbitration agreements); *Holland v. LVNV Funding, LLC*, 2016 U.S. Dist. LEXIS 146112, 2016 WL 6156187, at *1 (W.D. Ky. Oct. 21, 2016) (holding LVNV Funding possessed the right to compel arbitration of an assigned Credit One credit card agreement). LVNV as assignee of the Agreement, and Resurgent as its Agent, is covered by the Agreement. *See* **Exhibit 1** to Resurgent Aff; *See Wexler v. LVNV Funding, LLC*_2023 U.S. Dist. LEXIS 113629, at * 23(S.D.N.Y. Jun. 30, 2023)(holding Resurgent as agent can enforced arbitration agreement)*; Clarke v. Alltran Fin., LP,* 2018 U.S. Dist. LEXIS 29011, 2018 WL 1036951 (E.D.N.Y. Feb. 22, 2018) (holding agent can compel arbitration).

Further, a broad arbitration clause, such as the one in the Cardholder Agreement "[creates] a presumption of arbitrability and arbitration [that] even a collateral mater will be ordered if the claim alleged implicates issues of contract construction or the parties rights and obligations under it." *See Thomas v. Midland Credit Mgmt.,* 2017 U.S. Dist. LEXIS 195182, at *28-29, 2017 WL 5714722 (E.D.N.Y. Nov. 27, 2017) (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.,* 252 F.3d 218, 224 (2d Cir. 2001)). Thus, Plaintiff's claims clearly fall within the scope of the Credit Agreement's arbitration provision.

Under similar circumstances and based on affidavits almost identical to those before this Court, the Northern District of Illinois held that LVNV established chain of title and was able to enforce the arbitration agreement. *See Valentine v. LVNV Funding LLC, et al,* 2020 U.S. Dist. LEXIS 185521, 2020 WL 5946975 (N.D. Ill. Oct. 7, 2020) (citing *Fuller v. Frontline Asset Strategies, LLC,* 2018 U.S. Dist. LEXIS 61015, 2018 WL 1744674, at *3 (N.D. Ill. 2018)) *see also Smith v. Resurgent Capital Servs., LP*, 2020 U.S. Dist. LEXIS 153607, at fn. 4 (D. Md. Aug. 24,

23

2020) (holding based on virtually identical affidavits to those here, even though Defendants are not parties to the underlying card agreement, they may nevertheless invoke its arbitration provisions).

Finally, Plaintiff lacks standing to challenge the validity of the assignment between two separate parties or any actions taken by Citibank. *See Rajamin v. Deutsch Bank Nat'l Trust Co.*, 757 F.3d 79 (2d Cir. 2014) (holding plaintiff lacked standing to challenge assignment between two other parties); *see also Tran v. Bank of N.Y.*, 610 Fed. Appx. 82 (2d Cir. 2015) (same); *Karamath v. United States Bank*, 2012 U.S. Dist. LEXIS 135038, at *24, 2012 WL 4327613 (E.D.N.Y. Aug. 29, 2012) (holding because plaintiff is not a party to the PSA or the Assignment, and is not a third-party beneficiary of either, plaintiff has no standing to challenge the validity of that agreement or the assignment."); *Zutel v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 132810, 2014 WL 4700022, at *5 (E.D.N.Y. 2014) ("Plaintiffs lack prudential standing here because they are not parties to, nor third party beneficiaries of, the Assignment or the PSA."); *Tamir v. Bank of New York Mellon*, 2013 U.S. Dist. LEXIS 122033, 2013 WL 4522926, at *3 (E.D.N.Y. 2013) (plaintiff lacked standing where "not a party to the mortgage assignment, nor is there language in the governing loan documents or other allegations suggesting that Plaintiff is a third-party beneficiary of that agreement."). Any transfer is voidable not void and only the beneficiaries, of which Plaintiff is not one, can call into question the issues of an assignment. *See Rajamin,* 757 F.3d at 90.

Thus, as Plaintiff was neither a party nor third party beneficiary of the assignment, Plaintiff lacks standing to challenge the validity of the assignments. *See* **Exhibit 3** to Resurgent Aff. Any argument as to the validity of the assignment from Citibank to LVNV would be between Citibank and LVNV. *See Rajamin,* 757 F.3d at 90. Just as in *Rajamin,* to the extent that Plaintiff's Account was part of a securitization, Plaintiff, here, is not a beneficiary of the securitization trusts; the

24

beneficiaries are the certificate holders.  And as a result, Plaintiff lacks standing to contest any transfer from Citibank on the grounds that the transfer is in contravention to the terms of the trust or the alleged trustees lack of authority.  *Id.*

Regardless, here, the Cardholder Agreement specifically allows Citibank to "assign any or all of our rights and obligations under this Agreement to a third party."  *See* Exhibit A to **Exhibit G** (Citibank Aff.); *see also* Resurgent Aff.  ¶ 27-28.  Further, the 2021 and 2022 Arbitration Agreements that eligible claims include, "Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company." S*ee also* Resurgent Aff.  ¶ 27, **Exhibit 5** and **Exhibit 6**. Finally, under the Bill of Sale, Citibank assigned all "rights title and interest."  *See* **Exhibit 3** to Resurgent Aff.  No different than *Valentine or Smith,* here the chain of title demonstrates that LVNV acquired all rights, title, and interest in the Account from RALLC, who received the same from Citibank.

As a result, there is no dispute that Defendants are covered by the Arbitration Agreement and as such this case should be dismissed and referred to arbitration.

**D.    The United States Supreme Court and New York Court Mandate that an Arbitrator Determine the Arbitration Agreement's Enforceability**

The United States Supreme Court definitively stated, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."  *Henry Schein, Inc. v. Archis & White Sales, Inc.,* 586 U.S. 63, 71 (2019). In *Henry Schein*, the Court reversed the lower court's improper review of an arbitration agreement and reemphasized the Court's longstanding precedent: when parties agree to arbitration, an arbitrator (not the court) decides the merits of a dispute and "gateway" questions of arbitrability, "such as whether the parties have agreed to arbitrate and whether their agreement covers a

25

particular controversy. *Id.* at *3 (citations omitted) (emphasis added); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (when an agreement contains a delegation clause, challenges to its enforceability must be referred to the arbitrator); *Morgan v. Sanford Brown Inst.*, 225 N.J. 289, 303 (2016) ("a delegation clause in an arbitration agreement can provide that an arbitrator, rather than a judge, will decide such 'threshold issues' as whether the parties agreed to arbitrate a legal claim brought by a plaintiff."); *Amalgamated Transit Union, Local 880 v. N.J. Transit Bus Operations, Inc.,* 975 A.2d 403, 409-410 (2009) (holding courts ought not intrude on the merits of an issue the parties have agreed would be determined through arbitration, and should only determine whether the issue is facially subject to arbitration); *Standard Motor Freight, Inc. v. Local Union No.560,* 228 A.2d 329 (1967); *Clarke,* 2018 U.S. Dist. LEXIS 29011 (holding arbitration provision subjects arbitration to any "[c]laims regarding the application, enforceability or interpretation" to the arbitrator).[6]

Here, the Cardholder Agreement mandates that the matter be referred to arbitration.  *See* Robbin Aff., Exhibit A to **Exhibit G** (Citibank Decl.); *see also* **Exhibit 1**, **Exhibit 5**, and **Exhibit 6** to Resurgent Aff.

These circumstances necessarily include the claims raised here.

---

[6] Courts in this Circuit have consistently concluded that language similar to *Clarke* constitutes a 'clear and unmistakable' delegation.  *See, e.g., Kai Peng v. Uber Techs., Inc.,* 237 F. Supp. 3d 36, 53 (E.D.N.Y. 2017) ("The delegation clause's language that an arbitrator will decide disputes 'arising out of or relating to interpretation or application of this Arbitration Provision, including [its] enforceability, revocability or validity,' clearly and unmistakably delegates the gateway issues to the arbitrator." (alteration in original) (collecting cases)); *Kuehn v. Citibank, N.A.,* 2012 U.S. Dist. LEXIS 173346, 2012 WL 6057941, at *4 (S.D.N.Y. Dec. 6, 2012) ("The arbitration agreement between the parties in this case provides that '[c]laims relating ... to application, enforceability or interpretation of my Account, including this arbitration provision' are subject to arbitration. This provision plainly delegates resolution of questions about the arbitration agreement's enforceability to an arbitrator.").  Thus, the arbitration provision here clearly and unmistakably delegates issues concerning the class action waiver's enforceability to the arbitrator." *Clarke v. Alltran Fin., LP,* 2018 U.S. Dist. LEXIS 29011 at *18-19.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion in its entirety, together with any such further relief that the Court deems proper.

Dated: Armonk, New York
      May 26, 2026                    Respectfully submitted,

                                       */s/ Jonathan M. Robbin*

                                       Jonathan M. Robbin
                                       **J. ROBBIN LAW**
                                       200 Business Park Drive, Suite 103
                                       Armonk, New York 10504
                                       (914) 685-5017
                                       *Attorneys for Defendants, LVNV Funding, LLC &*
                                       *Resurgent Capital Services, L.P.*