**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ERUM SHIRAZI,

      Plaintiff,

                                   Case No. 1:25-cv-02992-PAE

v.

CITIBANK, N.A., *et al.*,

      Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS**
**LVNV FUNDING LLC AND RESURGENT CAPITAL SERVICES, L.P.'S**
**<u>RENEWED MOTION TO COMPEL ARBITRATION</u>**

Craig C. Marchiando, NY Bar No. 1024495
**Consumer Litigation Associates, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: craig@clalegal.com

Abel L. Pierre, Attorney I.D. #AP-5508
**Law Office of Abel L. Pierre, P.C.**
165 Broadway, 23rd Floor
New York, New York 10006
(212) 766-3323 – Telephone
(212) 766-3322 – Facsimile
Email: abel@apierrelaw.com

TABLE OF CONTENTS

OVERVIEW .................................................................................................................. 1

EVIDENTIARY OBJECTIONS ...................................................................................... 2

FACTUAL BACKGROUND ............................................................................................ 2

I.  Plaintiff Is A Victim Of Identity Theft Who Never Opened Or Used The Best Buy Account. ....................................................................................................... 2

II.  Defendants' Rule 30(b)(6) Witness Conceded That Everything In Her Affidavit Comes From Citibank And That Defendants Have No Personal Knowledge Of Anything That Occurred Between Plaintiff And Citi. ...................................................................... 3

A.  There Is No Provable Connection Between Plaintiff And The Best Buy Account. ....... 3

B.  Citibank's Witness Admitted Citibank Has No Record That The Cardholder Agreement Actually Went To Plaintiff, And The Original Application Is Gone. .................. 5

C.  Some Statements Defendants Cite As Proof Of "Use" Were Addressed To 1 Domino Way, Centereach—An Address Plaintiff Has Never Lived At Or Visited. ........................... 5

D.  LVNV First Sued Plaintiff In State Court Over This Same Account, Never Electing Arbitration. ...................................................................................................... 6

LEGAL STANDARDS .................................................................................................... 6

ARGUMENT AND AUTHORITIES ................................................................................. 8

I.  Defendants Have Not Proven, As A Matter Of Law, That Plaintiff Ever Formed An Arbitration Agreement With Citi. .................................................................................. 8

A.  Defendants' Affidavits Cannot Fill The Gaps Because Their Witnesses Lack Personal Knowledge Of Every Fact Essential To Contract Formation. ............................... 8

B.  Defendants Cannot Connect Any Cardholder Agreement To Plaintiff. ....................... 10

C.  Account Use Does Not Establish Acceptance Of Account Terms Where The Consumer's Use Of That Account Is Itself The Disputed Fact. ......................................... 12

D.  Defendants' Assignee Status Makes Their Proof Problems Worse. ............................. 14

E.  Plaintiff's Testimony Of Identity Theft—Corroborated By A Police Report And CBP Records—Precludes Formation As A Matter Of Law. ...................................... 15

II.    Defendants' Own Election To Sue Plaintiff In Court On This Very Account Undermines Their Motion. ................................................................................................................ 16

III.    At A Minimum, The Court Should Deny The Motion And Set The Formation Issue For Trial. ............................................................................................................................... 16

CONCLUSION ................................................................................................................................ 17

TABLE OF AUTHORITIES

**Cases**

*Alta P'ners, LLC v. Suncar Tech. Grp., Inc.*, No. 1:23-cv-7974-GHW, 2026 WL 1552652, at *1,
 n.1 (S.D.N.Y. June 2, 2026)................................................................................................ 8

*Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ...................................... 6, 14, 15, 16

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) ...................................... 7

*Haynes v. TransUnion, LLC*, No. 19-cv-7157 (JS)(ARL), 2021 WL 7906567, at *6 (E.D.N.Y.
 Sept. 30, 2021) ................................................................................................................ 13, 15

*Mason v. Midland Funding LLC*, 815 F. App'x 320, 324–25 (11th Cir. 2020) ....................... 9, 15

*Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)........................................................ 7

*Multi Access Ltd. v. Guangzhou Baiyunshan Pharm. Holdings Co., Ltd*, No. 20-CV-7397 (LJL),
 2026 WL 890565, at *3 (S.D.N.Y. Apr. 1, 2026)..................................................................... 10

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)...................................... 6, 13, 15

*Pena v. City of New York*, No. 24 CIV. 5893 (AKH), 2026 WL 1601478, at *2 (S.D.N.Y. June 4,
 2026) ................................................................................................................................... 8

*Rambus, Inc. v. Infineon Techs. AG*, 348 F. Supp. 2d 698, 707 (E.D. Va. 2004)........................ 12

*Salerno v. Credit One Bank*, 2015 WL 6554977, at *4 (W.D.N.Y. Oct. 29, 2015....................... 12

*Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012).................................... 6, 7, 9, 14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)..................................... 7

*Wexler v. LVNV Funding, LLC*, No. 22 Civ. 1348 (PAE), 2023 WL 4305776, at *4 (S.D.N.Y.
 June 30, 2023)............................................................................................................. 7, 9, 14

**Statutes**

9 U.S.C. § 4............................................................................................................... 2, 16, 17

**Rules**

Fed. R. Evid. 801–803 ........................................................................................................... 2, 12

Fed. R. Civ. P. 30(b)(6)........................................................................................................ 10, 14

Fed. R. Civ. P. 56(c)(4)............................................................................................................ 8

Fed. R. Evid. 901 ................................................................................................................ 2, 12

Plaintiff Erum Shirazi, by Counsel, opposes Defendants LVNV Funding LLC and Resurgent Capital Services, L.P.'s Renewed Motion to Compel Arbitration (ECF 68). For the reasons below, the Court should deny the Motion.

**OVERVIEW**

After being permitted to take discovery on the threshold question of contract formation, Defendants LVNV and Resurgent return with the same problem they had before—they cannot prove, as a matter of law, that Plaintiff ever formed an agreement to arbitrate with Citibank, much less with them. Defendants' witness, Patricia Sexton, repeatedly conceded that she has no personal knowledge of how the Best Buy Account was opened, what was sent to Plaintiff, whether Plaintiff ever received any account agreement, or whether Plaintiff ever used the card. She admitted that everything in her affidavit comes from Citibank, that the only "Cardholder Agreement" Resurgent received is dated 2022—seven years after the Account was supposedly opened—and that Resurgent itself did nothing to verify the authenticity of that document or that Plaintiff ever saw or accepted it.

Citibank's witness, Steven Sabo, was no better. He admitted Citibank no longer has the application; that no one from Citibank witnessed Account formation; and that he does not know whether the welcome letter and Cardholder Agreement "actually went to Ms. Shirazi versus any other person on the planet." And Plaintiff, for her part, has testified under oath that she never opened the Best Buy Account, never received the Cardholder Agreement, did not use the card, did not make the charges that Defendants say "line up perfectly" with her travel, and never lived at 1 Domino Way, Centereach, New York—the address on many of the Best Buy billing statements Defendants say they bought.

Because Defendants' Motion is governed by a summary-judgment standard, they must prove the existence of an arbitration agreement as a matter of law. They have not. Worse, Defendants are assignees—they can claim no greater rights than Citibank had, and they have even less proof than Citibank had on Citibank's own (rejected) motion to compel. Defendants' reliance on Citibank's records, conducted through a witness with no personal knowledge of mailing, formation, or use, is precisely the kind of evidentiary failure that defeats arbitration. The Motion should be denied; alternatively, the Court should set the formation question for trial under 9 U.S.C. § 4.

## EVIDENTIARY OBJECTIONS

Defendants' Motion relies almost entirely on documents it obtained from Citibank, but those documents are hearsay and Defendants have not authenticated them. FED. R. EVID. 801–803; FED. R. EVID. 901. Plaintiff therefore objects to the use of any Citibank document that is not supported by testimony from a witness with personal knowledge of their creation, the accuracy of the information they contain, and that they meet a hearsay exception.

## FACTUAL BACKGROUND

**I.    Plaintiff Is A Victim Of Identity Theft Who Never Opened Or Used The Best Buy Account.**

Plaintiff discovered in 2021 that an unknown person had used her personal information to open numerous accounts in her name, including a Best Buy/Citibank credit card. (Plaintiff's Statement of Undisputed Facts ("PSUF") ¶ 1.) She testified as "never applying a Citibank card" and "never, ever sign and apply" for the account at issue. (PSUF ¶ 2.) She specifically denied opening or authorizing anyone to open the Best Buy Account and the Citi Diamond Preferred Account. (PSUF ¶ 3.) When she went to a Bank of America branch in 2021 to open a checking

account, she was told accounts already existed in her name, leading her to inquire at other banks, file a police report, and obtain her credit report. (PSUF ¶ 4.)

Plaintiff testified that the only Citibank account she opened was a Macy's store card in July 2016—which she received with the card agreement at her 341 East 70th Street, Apartment 15D address, used herself, and paid herself in cash or by TD Bank debit card. (PSUF ¶ 5.) By contrast, Plaintiff has consistently testified that she did not use the Best Buy card and did not make any of the charges Defendants attribute to her. (*Id.*)

She testified she never resided at—and had never even been to—the "1 Domino Way, Centereach, New York" address that appears on Best Buy billing statements Defendants claim Citi mailed to her. (PSUF ¶ 7.) Plaintiff also testified that she never held the bank accounts from which the Best Buy balance was purportedly paid by automatic withdrawal—she did not recognize the account ending in 4794 from which the monthly payments were drawn, or the account ending in 9467. (PSUF ¶ 8.) And she explained that the only thing she ever received in connection with Best Buy was a three-year warranty card she paid roughly $300 for when she purchased a MacBook with her TD Bank debit card—not a credit card: "I never, ever applied for the credit card and Citibank and the BestBuy bank." (PSUF ¶ 9.)

II.    **Defendants' Rule 30(b)(6) Witness Conceded That Everything In Her Affidavit Comes From Citibank And That Defendants Have No Personal Knowledge Of Anything That Occurred Between Plaintiff And Citi.**

A.    **There Is No Provable Connection Between Plaintiff And The Best Buy Account.**

Patricia Sexton, the Resurgent Paralegal 2 designated to testify for LVNV and Resurgent, repeatedly admitted that Defendants have no first-hand knowledge of how the Best Buy Account was opened or what, if anything, was provided to Plaintiff. When asked how she could swear that "Plaintiff entered into a Card Agreement" in 2015, she answered: "That would be based on

Citibank. . . . I have no personal knowledge of that. That would be Citibank." (PSUF ¶ 10.) She further testified that she has "no personal knowledge other than what I've reviewed." (PSUF ¶ 11.) There is no application, no document with Plaintiff's signature, no driver's license, no passport, and no skip-trace or credit reports about Plaintiff in the file Resurgent received from Citibank. (PSUF ¶ 12.) The Cardholder Agreement Resurgent attached to its original papers was from 2022—not 2015—and Sexton admitted Plaintiff's name appears nowhere on it. (PSUF ¶ 13.) That has not changed with any account agreement Defendants provide, some of which do not even mention Best Buy. (ECFs 67-18 (appearing to be incomplete); 67-40 (same); 67-28; 67-39 (not mentioning Best Buy); 67-41 (incomplete and does not mention Best Buy).) To the extent Defendants now want to rely on the 2015 or 2021 Agreements they never possessed, Plaintiff objects to them as noted above.

Ms. Sexton testified Resurgent did nothing to verify that the 2022 agreement was actually communicated to Plaintiff: "We just – we received the terms from Citi." (PSUF ¶ 15.) She agreed Resurgent does not know "what was handed over to her when the account was opened," does not know whether Plaintiff "had a chance to even look at the terms," and cannot say whether the 2022 agreement was ever "handed over to her or that it was sent to her by email." (PSUF ¶ 16.) She conceded the only "evidence" Resurgent has of Plaintiff's purported acceptance is the bare existence of billing statements bearing Plaintiff's name; she does not personally know that Plaintiff made any of the underlying transactions. (PSUF ¶ 17.) And critically, when asked whether Resurgent's position would still be that Plaintiff "accepted the cardholder agreement" if it turned out she was not the one engaging in the transactions, Sexton conceded: "if we're going to say if someway out there it wasn't her and it's determined that it wasn't, then, no, she – we – they would maybe not be responsible." (PSUF ¶ 18.)

**B. Citibank's Witness Admitted Citibank Has No Record That The Cardholder Agreement Actually Went To Plaintiff, And The Original Application Is Gone.**

Steven Sabo, the Citibank Recovery Manager Defendants cite as their primary mailing witness, conceded that no one from Citibank witnessed Account formation: "No one from Citibank – yes. . . . Correct. Yes, that is correct." (PSUF ¶ 19.) He admitted Citibank does not retain applications beyond seven years and that, by 2026, the Best Buy application is "now gone," so Citibank cannot say whether the Account was opened in person or online. (PSUF ¶ 20.) As to whether any agreement "actually went to Ms. Shirazi versus any other person on the planet," Sabo testified: "I don't know." (PSUF ¶ 21.) He further conceded that no LexisNexis or third-party verification report relating to Plaintiff exists in Citibank's records today, which indicates Citi did not make an effort to ensure the applicant was who he or she stated he or she was. (PSUF ¶ 22.) Sabo also confirmed that when Citibank sold the Account to LVNV in 2021, Citibank sent only "original data source information" (i.e., name and biographical fields), at most the last twelve months of statements, and "the most recent card agreement that was available at the time the account was sold"—not the 2015 agreement supposedly in effect at opening. (PSUF ¶ 23.)

**C. Some Statements Defendants Cite As Proof Of "Use" Were Addressed To 1 Domino Way, Centereach—An Address Plaintiff Has Never Lived At Or Visited.**

Many of Defendants' Best Buy statements—which they say were mailed to Plaintiff and prove her acceptance of a cardholder agreement—are addressed to "1 Domino Way, Centereach, New York 11720." (PSUF ¶ 24.) Ms. Sexton acknowledged that address is different from the Bainbridge Avenue address that appears on the bill-of-sale data sheet Citibank gave Resurgent, and could not explain the discrepancy or whether Resurgent has any documents connecting Plaintiff to the Centereach address (PSUF ¶ 25.) Plaintiff testified she has never resided at 1

Domino Way, has "never been there" at all, (PSUF ¶ 7), and never received any account statements at any of the addresses at which she did live. (PSUF ¶ 26.) Mr. Sabo separately testified that the 1 Domino Way address "was not the original address Citibank had," which was 341 East 70th Street, and he could not explain how or when it changed. (PSUF ¶ 27.)

### D. LVNV First Sued Plaintiff In State Court Over This Same Account, Never Electing Arbitration.

In a remarkable turn of hypocrisy, on January 16, 2024, LVNV filed a collection complaint against Plaintiff in the Civil Court of the City of New York, Bronx County, on this same Best Buy Account ending in 4794. (PSUF ¶ 28.) LVNV concedes that when it filed that state-court action, it already had everything it now relies on— "the account agreement, the billing statements, all that" so it could have compelled arbitration. (PSUF ¶ 29.) Ms. Sexton could offer no explanation for why LVNV chose to sue Plaintiff in court rather than initiate arbitration, and Defendants' Counsel improperly instructed her not to answer such questions. (PSUF ¶ 30.) And she refused to answer as to whether it was fair that Defendants want to now tear this case from this Court and place it into arbitration when Defendants chose court when they were the plaintiffs suing Ms. Shirazi over the same debt. (PSUF ¶ 31.)

### LEGAL STANDARDS

Because Plaintiff has "put in issue" the making of the alleged arbitration agreement, the Court evaluates Defendants' Motion under a summary-judgment standard. "In the context of motions to compel arbitration brought under the Federal Arbitration Act . . . , the court applies a standard similar to that applicable for a motion for summary judgment. If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) (citations omitted); *accord Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (court

"consider[s] all relevant, admissible evidence" and "draw[s] all reasonable inferences in favor of the non-moving party"); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). Plaintiff's claims may be sent to arbitration only if Defendants prove, on this record and as a matter of law, that a valid agreement to arbitrate exists. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010).

The "first principle that underscores all of our arbitration decisions" is that arbitration "is strictly a matter of consent" and is "a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock*, 561 U.S. at 299 (quotations omitted, emphasis in original); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("[A] party may not be compelled under the FAA to submit to . . . arbitration unless there is a contractual basis for concluding that the party *agreed* to do so.") (emphasis in original). Whether a valid agreement to arbitrate exists is governed by ordinary state-law contract principles, which under New York law require a meeting of the minds and a manifestation of mutual assent. *Schnabel*, 697 F.3d at 119–20.

These standards confirm, contrary to Defendants' bald argument, that there is no "insurmountable preference for arbitration." (ECF 68 at 14.) It is a matter of contract, and the Defendants may move this case to arbitration only if they prove that such a contract exists. *Granite Rock*, 561 U.S. at 299; *Stolt-Nielsen*, 559 U.S. at 684.

As the movants, Defendants bear the initial burden of proving a *prima facie* case that an arbitration agreement was formed. *Wexler v. LVNV Funding, LLC*, No. 22 Civ. 1348 (PAE), 2023 WL 4305776, at *4 (S.D.N.Y. June 30, 2023). Because Defendants are not the original creditor but assignees, they "stand[] in the shoes of" Citibank and can enforce no greater rights than Citibank could. *Wexler*, 2023 WL 4305776, at *7. Because the Court evaluates Defendants'

Motion against a Rule 56 standard, the Court grants Defendants no factual inferences and resolves any factual disputes in Plaintiff's favor. *See Pena v. City of New York*, No. 24 CIV. 5893 (AKH), 2026 WL 1601478, at *2 (S.D.N.Y. June 4, 2026) (noting the requirement that non-movant receives benefit of reasonable inferences); *Alta P'ners, LLC v. Suncar Tech. Grp., Inc.*, No. 1:23-cv-7974-GHW, 2026 WL 1552652, at *1, n.1 (S.D.N.Y. June 2, 2026) ("[W]here [facts are] disputed, the Court resolves all ambiguities and draws all permissible factual inferences in favor of Alta, as the party against whom summary judgment is sought.").

ARGUMENT AND AUTHORITIES

**I.    Defendants Have Not Proven, As A Matter Of Law, That Plaintiff Ever Formed An Arbitration Agreement With Citi.**

**A.    Defendants' Affidavits Cannot Fill The Gaps Because Their Witnesses Lack Personal Knowledge Of Every Fact Essential To Contract Formation.**

Under Rule 56(c)(4), "[a]n affidavit or Affidavit used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). While Ms. Sexton submitted an Affidavit in support of Defendants' original motion to compel arbitration (ECF 33-10) her subsequent deposition testimony renders that Affidavit useless as evidence. Ms. Sexton conceded in her deposition that she has "no personal knowledge other than what I've reviewed," (PSUF ¶ 11), and that "[t]hat would be based on Citibank" each time she was asked how she knew Plaintiff formed an agreement, (PSUF ¶¶ 10–11.) When pressed on the operative question—whether the agreement Defendants want enforced was ever "handed over" to Plaintiff or sent to her—Sexton answered: "That would be a question for Citibank." (PSUF ¶ 32.) And she agreed that "Resurgent doesn't know anything about what was handed over to her when

the account was opened," and that "Resurgent wouldn't know if Resurgent wasn't there." (PSUF ¶ 33.)

This is the same evidentiary failure the Eleventh Circuit identified in *Mason v. Midland Funding LLC*, 815 F. App'x 320, 324–25 (11th Cir. 2020). There, a debt buyer's servicer-affiant tried to establish the mailing of a card agreement to the consumer by relying on the originator's records, but "failed to show" that the affiant had personal knowledge that the agreement "was in fact placed in mail," had not himself reviewed the third-party mailer's records, and was therefore insufficient to trigger any presumption of receipt. *Id.* at 326. Here, the showing is even thinner: Ms. Sexton did not even purport to attest that the 2022 cardholder agreement attached to her affidavit was mailed to Plaintiff at all—only that "we received the terms from Citi." (PSUF ¶ 34.)

Defendants will likely point to *Wexler*, 2023 WL 4305776, at *8, where the court accepted a Sexton Affidavit as enough to authenticate a Citibank cardholder agreement for purposes of Rule 803(6). But *Wexler* addressed a different question: whether the assignee's witness had laid an adequate *authentication* foundation under Rule 901 to put a document before the court. *Id.* at *7–8. It did not hold that an assignee may, on personal knowledge it does not have, prove that the consumer *formed* the contract—that she received the document, that she assented, that she used the account. The *Wexler* plaintiff did not contest those facts, but Plaintiff here does. Where, as here, the consumer puts formation in issue, the assignee must do more than incorporate the originator's records into its own database—it must prove formation as a matter of law, *Schnabel*, 697 F.3d at 113, and that is what neither Defendant has done.

Recognizing that Ms. Sexton's testimony dooms her earlier Affidavit, Defendants now tender an Affidavit from undisclosed witness Tonya Henderson. (ECF 67-27.)[1] Ms. Henderson provides identical statements about personal knowledge as did Ms. Sexton, and relies on the same documents Citi provided Defendants when they purchased the account from Citi. A key, and improper, difference is that Ms. Henderson attempts to speak on the contents of the 2015 and 2021 Cardmember Agreements (ECF 67-27 ¶¶ 10, 21, 23), but she cannot sidestep Ms. Sexton's testimony that the 2022 Agreement is all Defendants had in their records nor does she have personal knowledge to authenticate Citi's records. Because Ms. Henderson's Affidavit is nearly verbatim to Ms. Sexton's and Ms. Sexton gave testimony as the representative of Defendants under Rule 30(b)(6), nothing Ms. Henderson says can overcome Ms. Sexton's testimony because the latter binds Defendants. FED. R. CIV. P. 30(b)(6); *Multi Access Ltd. v. Guangzhou Baiyunshan Pharm. Holdings Co., Ltd*, No. 20-CV-7397 (LJL), 2026 WL 890565, at *3 (S.D.N.Y. Apr. 1, 2026). And further, because she does not purport to have personal knowledge (because she does not) of the creation of Citi's documents, she cannot supplant Plaintiff's evidentiary objections to Defendants' use of those documents.

### B.  Defendants Cannot Connect Any Cardholder Agreement To Plaintiff.

It is frankly difficult to discern from Defendants' brief which Cardholder Agreement they seek to enforce. (*See* ECF 68 at 9–11 (discussing the 2015, 2021, and 2022 versions of the

---

[1] Plaintiff objects to the use of this new witness, as a significant aspect of the discovery period the Court permitted and deposing Ms. Sexton was to test the knowledge that went into her earlier Affidavit. Plaintiff is now deprived of the ability to learn the knowledge underpinning the statements in Ms. Henderson's Affidavit, which she believes is improper gamesmanship by Defendants. This ploy is highlighted by the near-verbatim statements made by both witnesses in their Affidavits. (*See* Ex. 1 for comparison of statements in ECF 33-10 with those in ECF 67-27, with the differences highlighted.) It appears that Defendants hope to diffuse the problems Ms. Sexton's deposition testimony presents for their Motion by simply putting a new name on the same Affidavit. The Court should decline to credit such tactics.

Agreement).) That matters because Defendants want to tie Plaintiff to an agreement through later use of the card since they cannot establish that she opened the account or agreed to any terms in 2015. But the transactions to which Defendants point as supposedly being executed by Plaintiff (and which she denies or does not confirm making) were all in 2018. (ECF 68 at 4–6.) So she could not have adopted the 2021 or 2022 Agreements through this conduct, even assuming Defendants' assertions about the transactions are accurate.

The only Cardholder Agreement Defendants have in their own records is from 2022—seven years after the Account was supposedly opened. Ms. Sexton testified she reviewed only "[t]he version that was in . . . our Resurgent account portal," which is the 2022 version. (PSUF ¶ 35.) Defendants have not explained-away (nor could they) this problem, and have not stated how they could now seek to use 2015 or 2021 agreements they never possessed. Ms. Sexton expressly admitted as much, noting her original Affidavit only refers to the 2022 version in Resurgent's file. (PSUF ¶ 36.) Defendants thus have no admissible evidence of the 2015 terms—and Mr. Sabo confirmed Citibank sent only the "most recent card agreement that was available at the time the account was sold" to LVNV. (PSUF ¶ 37.) Even taking Defendants' factual statement at face value, the 2022 agreement post-dates Plaintiff's last alleged account-related activity (Defendants concede the last activity was in March 2021, ECF 68 at 6–7), so Plaintiff cannot have "accepted" the 2022 terms through later use.

The larger problem for Defendants in attempting to use any Cardholder Agreement is that it has not authenticated any of them or overcome Plaintiff's objection that their contents are hearsay. Through Ms. Henderson, Defendants want to assert that "because we believe these are Citi's business records, they become our business records when they pass into our hands." (*See* ECF 67-27 ¶ 6.) But this is not how the Rules of Evidence work—a party that wants to rely on a

document must authenticate it and overcome any hearsay problems. FED. R. EVID. 801–803; FED. R. EVID. 901. None of these Cardholder Agreements have Plaintiff's name on them or are linked to accounts that are supposedly hers, so authentication is meaningful. Failure there means the Agreements are not properly before the Court.

Ms. Sexton confirmed at her deposition that Defendants do nothing to confirm any of the information in records they receive or show they have familiarity with the record-creation and keeping functions of the originator of the records. (PSUF ¶ 38.) One court has explained how this problem dooms admissibility:

> Of the purported business records at issue here, where the original source is an "outsider," there are no Affidavits from the outside entities and none of the proffered Affidavits otherwise recite any fact that shows qualification by the participant in the chain who actually supplied the information.

*Rambus, Inc. v. Infineon Techs. AG*, 348 F. Supp. 2d 698, 707 (E.D. Va. 2004). Defendants have made no effort to authenticate or overcome any hearsay objections to their use of documents that originated with Citi, so they cannot rely on them for their Motion.

In sum, Defendants are unable to tie any Cardholder Agreement to Plaintiff through actual acceptance or later use, even assuming Defendants may rely on such inadmissible documents. The Court should therefore end its analysis here, and deny Defendants' Motion.

### C. Account Use Does Not Establish Acceptance Of Account Terms Where The Consumer's Use Of That Account Is Itself The Disputed Fact.

Defendants' entire "acceptance through use" theory falters on the central question—who used this card? Their cases (*e.g.*, *Salerno v. Credit One Bank*, 2015 WL 6554977, at *4 (W.D.N.Y. Oct. 29, 2015)) hold that "regular use of a credit card constitutes sufficient evidence of the card user's consent to the terms of the agreement governing the account." (ECF 68 at 17.) But Plaintiff has sworn that she did not use the card and did not make the charges Defendants attribute to her.

(PSUF ¶ 39.) The very "use" Defendants invoke is the disputed fact. The Eastern District of New York has rejected exactly this circular reasoning when the consumer denies opening or using the account: "well-supported allegations of fraud in the formation of an arbitration agreement, such as where the party objecting to arbitration alleges an identity thief opened or otherwise interfered with the agreement containing the arbitration provision, preclude a finding as a matter of law that the parties have an enforceable agreement to arbitrate." *Haynes v. TransUnion, LLC*, No. 19-cv-7157 (JS)(ARL), 2021 WL 7906567, at *6 (E.D.N.Y. Sept. 30, 2021), *adhered to on reconsideration*, 2022 WL 1228927 (E.D.N.Y. Apr. 25, 2022). And on this record, where the moving party "fail[s] to produce evidence that Plaintiff used the . . . Account, let alone evidence she used it after receiving the . . . New Card Agreement," a genuine dispute of material fact precludes arbitration. *Id.* at *7. Here, Plaintiff has testified she never opened the Best Buy account, never used the card, made no payments on the account, did not authorize anyone to do any of these things, and provided two police reports showing she is the victim of identity theft. (PSUF ¶¶ 2–3, 45.) Defendants cannot overcome these facts with circumstantial proof that purchases occurred in the same city Plaintiff may have traveled to.

Defendants nevertheless ask the Court to accept that Plaintiff must have used the card because some of the merchant locations on the Best Buy statements happen to fall in cities Plaintiff visited on her PIA flight rotations. That argument requires the Court to draw inferences against the non-movant—the opposite of the standard the Court must apply. *Nicosia*, 834 F.3d at 229. Defendants have no charge slips, receipts, pictures, or video placing Plaintiff in any of these locations at the times of the purchases, so they are asking the Court to do what it cannot—give Defendants the benefit of a factual inference on summary judgment.

Even on the merits, the argument is weak. Plaintiff testified she used her TD Bank debit card on her travels, not a Best Buy credit card; she does not recognize the Apple Store, airport taxi, and similar charges; and she made no payments on the account. (PSUF ¶¶ 40–41 (confirming Resurgent has no documents linking Plaintiff to the Centereach address).) So while Defendants claim "Plaintiff has produced zero evidence to call these location matched purchases into question" (ECF 68 at 18), the opposite is true.

Defendants further hope to surmount their evidentiary shortcomings by claiming "Citibank mailed Monthly Billing Statements and other account documents to Plaintiff's admitted address." (ECF 68 at 18.) That statement also assumes too much, because no one supports the statement with actual knowledge, and Citi's Rule 30(b)(6) witness could not testify as to Citi's mailing of anything. (PSUF ¶ 42.)

At best, Defendants have created a fact dispute they cannot overcome, which requires denial under *Schnabel* and *Bensadoun*, not the granting of a motion to compel.

### D.  Defendants' Assignee Status Makes Their Proof Problems Worse.

Defendants emphasize—correctly—that an assignee can enforce an arbitration provision its assignor could have enforced. *Wexler*, 2023 WL 4305776, at *7. But the corollary cuts the other way: an assignee can enforce only what the assignor could have enforced and must do so with admissible evidence of its own. *See id.* Citibank itself could not muster admissible evidence that Plaintiff formed an arbitration agreement. Its own witness conceded he does not know whether the welcome letter or Cardholder Agreement "actually went to Ms. Shirazi versus any other person on the planet," (PSUF ¶ 43); that no one from Citibank was present at Account formation, (*id*); that the application is gone, (*id.*); and that the only LexisNexis-type verification report he could even theorize "may exist" is not in Citibank's records, (*id*.) After Citibank settled (ECF 65, 66), what is

left is Resurgent—a third-party servicer whose witness conceded that everything she "knows" about formation "would be a question for Citibank." (PSUF ¶ 44.) That cannot satisfy Defendants' summary-judgment burden. *Mason*, 815 F. App'x at 324–25.

### E. Plaintiff's Testimony Of Identity Theft—Corroborated By A Police Report And CBP Records—Precludes Formation As A Matter Of Law.

Defendants boldly, and inaccurately, remark that "despite Plaintiff's claim that she was a victim of identity theft, she has not produced any documents or testimony to prove this allegation." (ECF 68 at 8.) Wrong. Plaintiff produced two 2021 police reports in this litigation (PSUF ¶ 45), and testified she did not open the Best Buy Account, did not use it, did not make payments on it, and did not authorize anyone else to do so. (*id*.) Her testimony is corroborated by U.S. Customs and Border Protection travel records confirming her presence outside the United States for extended periods. (PSUF ¶ 46.) She testified that she never lived at one of the addresses on the Best Buy statements (Centereach), and that even at the Manhattan address Defendants invoke, she received no credit card statements. (PSUF 47.) These are exactly the kind of "well-supported allegations of fraud in the formation of an arbitration agreement" that *Haynes* held "preclude a finding as a matter of law that the parties have an enforceable agreement to arbitrate." *Haynes*, 2021 WL 7906567, at *6. At a minimum, that testimony creates a genuine dispute of material fact requiring denial of the Motion. *Bensadoun*, 316 F.3d at 175.

Defendants will likely argue that Plaintiff's denials are "self-serving" or that she "cannot recall" things. Both arguments fail. Sworn deposition testimony, particularly testimony corroborated by independent records (the police report and CBP travel logs), is competent evidence on a Rule 56 record. *Nicosia*, 834 F.3d at 229. And as to recall, the only "recall" issue Defendants identify is Plaintiff's candid acknowledgment that she does not remember every individual purchase a fraudster supposedly made on her behalf nearly a decade ago. (PSUF ¶ 48.)

That is not a concession of acceptance. Instead, it confirms that Defendants cannot use Plaintiff to overcome their inability to connect her to the account. Plaintiff has not wavered on the things that matter: she did not open the Best Buy Account, did not use the Best Buy card, did not pay any Best Buy balance, did not live at 1 Domino Way, and never received any Best Buy account documents. (PSUF ¶¶ 45, 47.) Defendants have not eliminated all factual disputes to the contrary.

## II.    Defendants' Own Election To Sue Plaintiff In Court On This Very Account Undermines Their Motion.

LVNV concedes that on January 16, 2024, it sued Plaintiff in the Civil Court of the City of New York, Bronx County, on this same Best Buy Account ending in 4794. (PSUF ¶ 49.) Sexton was unable to explain why LVNV elected court over arbitration even though, as she conceded, LVNV had "all the information" it now relies on ("The account agreement, the billing statements, all that"). (PSUF ¶ 50.) While LVNV later "discontinued" that collection action (ECF 68 at 12), the fact that the same Defendants chose, in their own affirmative case, to enforce the very same Account in the court system—only to now insist the arbitration clause requires the opposite forum when Plaintiff sues them— underscores the inequity of their belated arbitration demand. At a minimum, it confirms what the rest of the record already shows: Defendants' own conduct treats the Account as cognizable in court.

## III.    At A Minimum, The Court Should Deny The Motion And Set The Formation Issue For Trial.

If the Court concludes that there is anything less than a clean grant of denial, the FAA itself provides the next step: "If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see Bensadoun*, 316 F.3d at 175. Sexton's and Sabo's depositions make plain that Defendants cannot satisfy their summary-judgment burden on a paper record. Should the Court reach this alternative, Plaintiff respectfully requests that the

issue of contract formation be set for a full evidentiary hearing on the issue of formation as the Court's calendar permits.

**CONCLUSION**

Defendants have not carried their burden of proving, as a matter of law, that an arbitration agreement was formed between Plaintiff and Citibank, much less that any such agreement was assigned to Defendants in a form that binds Plaintiff. The Motion should be denied; alternatively, the Court should order trial under 9 U.S.C. § 4 on the question of contract formation.

Dated: June 19, 2026

Respectfully submitted,

**ERUM SHIRAZI,**

By: ___*/s/ Craig C. Marchiando*___
Craig C. Marchiando, NY Bar No. 1024495
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: craig@clalegal.com

Abel L. Pierre, Attorney I.D. #AP-5508
Law Office of Abel L. Pierre, P.C.
165 Broadway, 23rd Floor
New York, New York 10006
(212) 766-3323 – Telephone
(212) 766-3322 – Facsimile
Email: abel@apierrelaw.com

*Counsels for Plaintiff*