**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ERUM SHIRAZI, | ) | Case No.: 1:25-cv-02992-PAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITIBANK, N.A., | ) | |
| Serve:  Any Officer | ) | |
|         388 Greenwich Street | ) | |
|         New York,  NY 10013 | ) | |
| | ) | |
| LVNV FUNDING, LLC, | ) | |
| Serve:  Corporation Service Company, Reg. Agent | ) | |
|         80 State Street | ) | |
|         Albany, NY 12207 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RESURGENT CAPITAL SERVICES, L.P. | ) | |
| Serve:  Corporation Service Company, Reg. Agent | ) | |
|         80 State Street | ) | |
|         Albany, NY 12207 | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS, LVNV FUNDING LLC, AND RESURGENT CAPITAL SERVICES, L.P**
**REPLY IN FURTHER SUPPORT OF THEIR**
**RENEWED MOTION TO COMPEL ARBITRATION**

---

**J.ROBBIN LAW**
Jonathan M. Robbin
200 Business Park Drive, Suite 103
Armonk, New York 10504
914-685-5016
Jonathan.robbin@jrobbinlaw.com

**TABLE OF CONTENTS**

I.     Defendants' Evidence Establishes That Plaintiff Opened the BestBuy Account ............... 1

II.    Defendants Have Produced Evidence That Plaintiff Used the BestBuy Credit Card ......... 6

     A.    Plaintiff Admitted to Receiving Mail at the Addresses Where the Best Buy Documents Were Sent ...................................................................................... 6

     B.    It is Not a Coincidence that the Best Buy Card Activity Occurred in the Precise Locations Where Plaintiff Was Located ................................................... 6

     C.    Plaintiff's Statements About the Charges on The Best Buy Card are Inconsistent 8

III.    Defendants Are Not Required to Proceed in Court Because of the Collection Case ....... 10

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Bowker v. Midland Funding, LLC*,
    2020 WL 5743044 (D.N.J. Sept. 25, 2020) .................................................................. 5

*Buxton v. Dougherty*,
    821 F. App'x 70 (3d Cir. 2020) ................................................................................... 9

*Cedrela Transp. Ltd. v. Banque Cantonale Vaudoise*,
    67 F. Supp. 2d 353 (S.D.N.Y. 1999) ........................................................................... 5

*Certain Underwriters at Lloyd's London v. Colonial Penn Insurance Co.*,
    1997 U.S. LEXIS 8074 (S,D.N.Y. June 11, 1997) ....................................................... 5

*Crotona 1967 Corp. v. Vidu Bros. Corp.*,
    925 F. Supp. 2d 298 (E.D.N.Y. 2013) ......................................................................... 5

*Feltman v. Tri-State Empl. Serv., Inc.*
    2023 U.S. Dist. LEXIS 42982 (S.D.N.Y. 2023) ........................................................... 2

*Feltman v. Tri-State Employment Serv.*,
    602 B.R. 840 (Bankr. S.D.N.Y. 2019) ......................................................................... 2

*Kurmangaliyev v. Verizon Wireless Servs., LLC*,
    2026 U.S. Dist. LEXIS 103420 (E.D.N.Y. May 8, 2026) ............................................. 7

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016).......................................................................................... 6

*Rodriguez-Ocasio v. MHC Receivables LLC*,
    2026 U.S. Dist. LEXIS 139363 (D.N.J. June 23, 2026) ............................................. 10

*Sultan v. Coinbase*,
    354 F. Supp. 3d 156 (E.D.N.Y 2019) ........................................................................... 9

**Statutes**

Fed R. Evid. 901 ........................................................................................................ 2, 3

Fed. R. Evid. 802 ........................................................................................................... 2

Fed. R. Evid. 803 ........................................................................................................ 2, 3

Defendants[1] submit this Reply Brief, with Exhibits[2], in Further Support of Defendants' Renewed Motion to Compel Arbitration. Ms. Shirazi's Opposition chooses to ignore the irrefutable evidence and instead present red herrings and conclusory self-serving statements in opposition. But the undisputed facts are (1) Plaintiff opened the Best Buy Account in 2015; (2) Citibank provided Plaintiff with a Card Agreement in 2015, which contained an arbitration provision; (3) Plaintiff used the Credit Card repeatedly over the next months/years; (4) Plaintiff was provided monthly billing statements demonstrating her use of the card and (5) Plaintiff never opted out of the Best Buy Card Agreement or disputed the charges with Citibank. As a result, due to the overwhelming preference for arbitration, this Court must order Arbitration.

## I.    Defendants' Evidence Establishes That Plaintiff Opened the BestBuy Account

Contrary to the Opposition's arguments, Defendants have provided admissible conclusive evidence, through both the documents produced by Co-Defendant Citibank and Citibank's deposition testimony, establishing that Ms. Shirazi opened the Account at issue – years before she alleged identity fraud, and then used the Best Buy account. Plaintiff has produced no evidence to call into question the 2015 Opening of the Account and still solely relies on Ms. Shirazi's conclusory, vacillating, and self-serving statements, in addition to a police report six years after opening the account, which ultimately the police determined was insufficient to establish any identity theft or maintain an investigation. While Plaintiff argues that Ms. Sexton's lack of personal knowledge on the subject prevents Defendants from proceeding in arbitration, that argument has no bearing on this Motion. Citibank's evidence, authenticated by a Citibank witness, establishes Plaintiff's opening of the Account.

---

[1] All definitions are the same as those used in Defendants' original moving papers.
[2] Attached hereto as **Exhibit A** is a true copy of all excerpts of Mr. Sabo's Deposition testimony that is cited herein. Attached hereto as **Exhibit B** is a true copy of all excerpts of Ms. Shirazi's Deposition that is cited herein.

1

At his deposition, Mr. Sabo, Citibank's 30(b)(6) designated witness, testified that the 2015 Cardholder Agreement and subsequent changes to the Agreement were in fact sent to Plaintiff in Citibank's ordinary course of business. Ex. A, Sabo Dep. at 60:8-12. Mr. Sabo's testimony and the documents produced by Citibank, a party to this lawsuit, are admissible to establish the underlying Cardholder Agreement and agreement to arbitrate. *See Feltman v. Tri-State Employment Serv.*, 602 B.R. 840, 847-848 (Bankr. S.D.N.Y. 2019) (holding a party satisfies F.R.E. 901 and authenticate documents through "circumstantial evidence of the authenticity of the underlying documents through the testimony of a witness knowledgeable about them." (internal quotations omitted)); *Feltman v. Tri-State Empl. Serv., Inc.* 2023 U.S. Dist. LEXIS 42982 at *21 (S.D.N.Y. 2023) ("Respondents' own records — which were plainly admissible as either business records, *see* Fed. R. Evid. 803(6), statements of a party-opponent, *see* Fed. R. Evid. 802(d)(2), or both" were sufficient to establish an agreement between the parties and prove that no triable issue of fact remained as to whether defendant owed plaintiff money).

In fact, Mr. Sabo provided detailed testimony on Citibank's processes in the ordinary course of business because "[n]othing in the business records suggests . . . [t]hat anything outside of the ordinary course of business for not just [the Best Buy Account] but any credit card was missed." Ex. A, Sabo Dep. at 58-59. This included that, in the ordinary course of business:

- At the time of account application, "when an address is provided by an applicant, it's also run against third-party vendors who provide or ensure that the address that is on the application matches the applicant's name." Ex. A, Sabo Dep. at 53.
- ". . . for information security purposes, applications are generally destroyed in less than 7 years." Ex. A, Sabo Dep. at 54.
- "[T]he account is subject to written terms and conditions and that they were provided to Plaintiff in [or] around September 2015." Ex. A, Sabo Dep. at 35, *citing* Robbin Decl., Ex. G (Declaration of Steven Sabo), ¶ 6.
- "Ms. Shirazi has agreed to the [2022] terms and conditions" because "[a]ny changes in terms in terms and conditions supersede the prior agreement." Ex. A, Sabo Decl. at 42:8-14.

2

- "[The 2015] and subsequent terms and conditions were . . . presented to Ms. Shirazi for review and approval" established by the "[o]rdinary course of business and use of the account." Ex. A, Sabo Dep. at 42:15-20.
- Ms. Shirazi received the Agreement. *See* Ex. A, Sabo Dep. at 58:14-16.
- "[C]ard agreements are sent, changes in terms are sent sometimes via solo mailers, sometimes statement messaging in billing statements. This is all part of Citibank's ordinary course of business" Ex. A, Sabo Dep. at 60:8-12.
- The 2022 Cardholder Agreement was part of "Citibank's electronic system of records" that was "stored in connection with the Best Buy Account that" is at issue. Ex. A, Sabo Dep. at 40-41.
- "The account was issued in the name of Erum Shirazi. Monthly billing statements were generated for the account holder to review. No suspicious activity, nothing outside of what appeared to be the account holder's region. No suspicious transactions." Ex. A, Sabo Dep. at 63:15-21.

In establishing that the Cardholder Agreement was part of "Citibank's electronic system of records," and that Citibank regularly sent customers notice of changes in successive Cardholder Agreements, Mr. Sabo authenticated both the 2015 and 2022 Cardholder Agreements as business records that were made by Citibank and provided to Plaintiff at the address provided by Plaintiff.[3] Pursuant to Federal Rule of Evidence 803(6), there is an exception to the rules against hearsay where a qualified witness' testimony confirms that a document is a record of regularly conducted activity that was kept in the ordinary course of business. F.R.E. 803 (6)(A-D). Further, testimony of a witness with knowledge is sufficient to authenticate a document as what it claims to be. F.R.E. 901(b)(1). Mr. Sabo's testimony supports the admissibility of both Agreements.

In her Deposition, Ms. Sexton admitted that she did not have personal knowledge of the Opening of the Account, but her testimony about the Account is "based on Citibank." Sexton Dep. at 46.[4] Citibank, as a party to this action, and subject to the Court's discovery order, went back into its archives and produced and then verified documents from the Opening of the Account,

---

[3] Any alleged gaps in Ms. Sexton's testimony are filled by Mr. Sabo's testimony.
[4] Contrary to Plaintiff's suggestion, the fact that the 2015 Cardholder Agreement was not provided by Citibank at the time of transfer of the Account does not negate its existence or testimony by Citibank's party-witness that it was provided to Plaintiff at the Opening of the Account.

3

including the original 2015 Cardholder Agreement. *See* Ex. A,  Sabo Dep. at 83:8-14, 51:4:9. Further, Citibank's proffered witness, Steven Sabo, verified and authenticated the 2015 Cardholder Agreement. *See* Ex. A, Sabo Dep. at 83:23-84:1 (". . . part of Citibank's ordinary course of business when the account is opened, terms and conditions are provided.) Although Defendants did not have that document before discovery, once it was produced and authenticated by Citibank, they can rely on it.

Regardless of Plaintiff's alleged confusion over which Cardholder Agreement applies, all include binding arbitration provisions and the 2015, 2021, and 2022 Cardholder Agreements have substantially similar Arbitration Agreements. *See* Resurgent Aff., Exs. 1, 5, and 6.[5]

Ms. Shirazi testified that in 2015, she resided at 88-25 211th Street, Queens Village, NY 11427 ("88-25 211th Street"). Ex. B, Shirazi Dep. at 37. She further testified that she regularly received mail at that address. Ex. B, Shirazi Dep. at 41-42. Mr. Sabo confirmed that the Queens Village address was the first address associated with Plaintiff's BestBuy account, and that "Citibank's system of records" and ordinary course of business establish that the 2015 Agreement was mailed to that address. Ex. A, Sabo Dep. at 151:10-15.

The Opposition argues, because Plaintiff was a victim of identity theft, she did not agree to the terms of the Arbitration Agreement. However, Plaintiff provides no proof of identity theft; no bank statements, affidavits, disputes, or otherwise made in 2015 or thereabout establishing that there was identity theft or calling into question the Monthly Billing Statements sent to Ms. Shirazi's verified residence.

---

[5] The original 2015 Cardholder Agreement states, "Agreement to Arbitrate: Either you or we may, without the others consent, elect mandatory, binding arbitration for any claim, dispute or controversy between you and us. . . ." Motion, Resurgent Aff., Ex. 1 at 17. The 2021 Cardholder Agreement states, " *You or we may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims"). **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**" Resurgent Aff. Ex. 5 at 6. Th 2022 Cardholder Agreement contains identical language. *See* Resurgent Aff., Ex. 6 at 7.

Instead, Plaintiff testified that she did not discover the fraud until around September 2021, when she went to open a Bank of America account and was told that there was already an account in her name and that there were other credit accounts also in her name. Ex. B, Shirazi Dep. at 92, 117, 120. On September 23, 2021, Plaintiff filed a Police Report. Marchiando Aff., Ex. 5. Thereafter, she designated Syed M. Jafri as an authorized representative for purposes of requesting information about the Complaint. Marchiando Aff., Ex. 4. However, Plaintiff did not produce any evidence that the investigation remained active or resulted in an arrest. In fact, Plaintiff testified that she waited nearly a year to hear from the police, followed up on multiple occasions, and received updates on the investigation. *See* Ex. B, Shirazi Dep. at 125, 132-33.  Thus, Defendants have produced admissible evidence and testimony establishing Plaintiff opened the BestBuy card and received a copy of the 2015 Card Agreement.

Finally, LVNV, as the assignee of the account, "ste[pped] into the shoes of [the Assignor] and is entitled to enforce the arbitration agreement." *See Bowker v. Midland Funding, LLC*, 2020 WL 5743044, at *2 (D.N.J. Sept. 25, 2020); *see also Crotona 1967 Corp. v. Vidu Bros. Corp.*, 925 F. Supp. 2d 298, 306 (E.D.N.Y. 2013) ("Moreover, it is well-settled that  "an assignee stands in the shoes of the assignor. He takes all rights of the assignor, no greater and no less, receiving the same legal rights and subject to the same equities and burdens." (internal quotations and citations omitted)).[6]

---

[6] *See also Cedrela Transp. Ltd. v. Banque Cantonale Vaudoise*, 67 F. Supp. 2d 353, 354-55 (S.D.N.Y. 1999), *citing Certain Underwriters at Lloyd's London v. Colonial Penn Insurance Co.*, 1997 U.S. LEXIS 8074, at *2 (S,D.N.Y. June 11, 1997) ("holding that an assignee of an agreement that contained an arbitration provision had the right to compel a party to that agreement to submit to arbitration where the assignment assigned all of [the assignor's] rights under the agreement)" (internal quotations omitted)).

**II.**    **Defendants Have Produced Evidence That Plaintiff Used the BestBuy Credit Card**

    **A.**    **Plaintiff Admitted to Receiving Mail at the Addresses Where the Best Buy Documents Were Sent**

Ms. Shirazi testified that in 2015, she resided at 88-25 211th Street, and received mail there. Ex. B, Shirazi Dep. at 37, 41-42. Ms. Shirazi also confirmed that in 2016, she moved from 88-25 211th Street to 341 East 70th Street, Apartment 15D, New York, New York 10021 ("341 East 70th St."). Ex. B, Shirazi Dep. at 43. She again confirmed that she had regularly received mail at that address, including the Macy's account agreement and account statements. *See* Ex. B, Shirazi Dep. at 47, 85-87. The evidence establishes that both the 2015 Card Agreement and the Best Buy account statements were initially sent to 88-25 211th Street, and then the account statements reflected Ms. Shirazi's change in address. *See* Resurgent Aff., Ex. 2 at 372-383. This is evidenced by the May 2016 statement, which was sent to 88-25 211th Street, and then the June 2016 statement which was sent to 341 East 70th St. *Id.*

In addition, Plaintiff reiterates and relies on her claims that she does not know the address at 1 Domino Way in Centereach, New York. *See* Opp. at 3, 5-6. But this argument is a red herring and of no relevance as to whether she *opened* the account. The address on the Best Buy Card did not change from 341 East 70th Street, to the Domino Way address until September 2019, four years after Ms. Shirazi opened and began using the Account. *See* Resurgent Aff., Ex., 2 at 150-163; s*ee* Ex. B, Shirazi Dep. at 47 ("did you, on a regular basis receive mail at that address?" "Yes."). Thus, this later address does not dispute that Plaintiff in fact opened the Best Buy Card.

    **B.**    **It is Not a Coincidence that the Best Buy Card Activity Occurred in the Precise Locations Where Plaintiff Was Located**

As the Opposition correctly provides, the Court must "draw[s] all ***reasonable*** inferences in favor of the non-moving party." Opp. at 6-17 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (emphasis added). The key here is the term "reasonable."

"If the party seeking arbitration has substantiated the entitlement by showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Kurmangaliyev v. Verizon Wireless Servs., LLC*, 2026 U.S. Dist. LEXIS 103420 at *23 (E.D.N.Y. May 8, 2026)(holding because there was evidence of purchase, coupled with continued use of Verizon's services, "mere denials without submitting any evidentiary facts [. . . ] is ultimately insufficient to demonstrate that there is a genuine issue of material fact as to whether an arbitration agreement exists.")

Plaintiff was not merely in the same city and state on the same days as the account activity, as the Opposition would have the Court believe. *See* Opp. at 13. On the contrary, the charges on the Best Buy card occurred *in the precise location* where Plaintiff was *on the exact day* she was there. For example, Plaintiff admitted, as corroborated by her Travel Log[7], that on May 11, 2018, she travelled at John F. Kennedy Airport in New York. There is no dispute that a charge was made on the Best Buy Card at John F. Kennedy Airport in New York on that date. *See* Motion at 4-6. This is not a one off. *See* Chart in Motion at 4-6. In fact, the charges on the Best Buy Account consistently line up directly with Ms. Shirazi's precise location as provided by her produced Travel Log. When she traveled to Toronto, the Card was used in the Toronto airport. When she traveled to JFK, the Card was used in JFK. *See* Motion at 4-6.

Plaintiff provides no evidence calling these charges into question but instead asks the Court to make an outrageous inference in her favor: that an alleged unnamed identity thief, who Plaintiff has no evidence of and no proof of, followed Plaintiff on multiple travel tours from Pakistan to Canada to the United States and back, bought plane tickets or otherwise obtained access to the exact airports Plaintiff was at, on the same date, and inconspicuously made purchases on the Best

---

[7] Plaintiff tries to argue the Travel Log confirms her presence outside the United States. But more importantly it confirms her presence in the exact locations that Best Buy Card was used.

7

Buy Card both in those airports and in those countries while she was there. And then, when the Monthly Billing statements went to Ms. Shirazi's house, Ms. Shirazi took no action to call the charges into question. It strains credibility to look the other way to these charges. This goes far beyond providing a "reasonable" inference.

Further, Plaintiff's self-serving testimony that "she used her TD Bank debit card on her travels" is not sufficient to overcome the evidence showing her at the same exact locations where and when the charges were made. *See* Opp. at 14. Plaintiff failed to produce a copy of the TD Bank debit card, any bank statements from TD Bank, or any documentary evidence in response to Defendants' interrogatories seeking all credit card statements.[8] In fact, there is no evidence that a TD Bank Account exists. Plaintiff's conclusory and self-serving statement without factual support cannot overcome the actual evidence. Because Plaintiff introduced no evidence and offered nothing other than denying opening the account, Plaintiff has not created a triable issue of fact.

**C.      Plaintiff's Statements About the Charges on The Best Buy Card are Inconsistent**

The Opposition provides no evidence calling into question Ms. Shirazi's clear use of the Best Buy Account. It, instead, again relies on the conclusory statements that she both does not remember opening the Best Buy Account and did not open the Account. *See* [ECF Doc. 30-1] at 2; Ex. B, Shirazi Dep. at 162:18. But the evidence refutes this position.  Despite documents drafted and filed by her attorneys denying receipt or use of the Best Buy Card, when asked herself, Ms. Shirazi did not state she did not open the account, rather that she could not recall whether she opened the Best Buy Card or made the purchases on the account statements. *See, e.g.* [ECF Doc.

---

[8] Moreover, at Plaintiff's Deposition, Defendants' counsel again requested that Plaintiff produce records of the TD Bank account. *See* Ex. B, Shirazi Dep. at 163. It would be to Plaintiff's benefit to produce proof of use of the TD Bank account, yet Plaintiff failed to produce any documents, account statements, or even an account number associated with a TD Bank account.

30-1] at 2 ("I cannot recall with complete certainty that this is true."); Ex. B, Shirazi Dep. at 108 ("I don't remember [. . .] I don't remember because its been a long time. . ."); Ex. B, Shirazi Dep. at 111 ("Honestly, I don't remember which card I can use[.]"); Ex. B, Shirazi Dep. at 113 (when asked if she was saying that she did not make the purchases, she stated "I don't remember."); Ex. B, Shirazi Dep. at 159:7-14 (Plaintiff agreed that, "when [she] went to BestBuy, they gave [her] a card[.]"). For example, when asked if she recognized overlaps in her travel to JFK airport and the BestBuy charges at JFK airport on May 11, 2018,  Plaintiff stated, "I don't remember. Yes, maybe not. I don't know." Ex. B, Shirazi Dep. at 105.

"[A] lack of recollection does not suffice" to create a triable of issue of fact for trial. *Sultan v. Coinbase*, 354 F. Supp. 3d 156, 162 (E.D.N.Y 2019). In *Sultan*, in opposition to the motion to compel arbitration, plaintiff argued that he "did not recall" having checked the box. *Id*. The Court determined that plaintiff's lack of recollection did not 'set forth specific facts showing that there is a genuine issue for trial." *Id.* at 162; *see also Buxton v. Dougherty,* 821 F. App'x 70, 71 n.2 (3d Cir. 2020) ("Statements of undisputed material facts may not "primarily rely on speculation and legal conclusions"),

As in *Sultan*, Plaintiff's failed recollection of creating or using the account does not suffice to create a triable issue of fact. The 2015 Cardholder Agreement states that "[t]he Agreement is binding on [the cardholder] unless [the cardholder] close[s] [the] account within 30 days after receiving the card and [the cardholder] has not used or authorized use of the card." *See* Resurgent Aff., Exhibit 1 at 4. There is no evidence that Plaintiff attempted to close the account within 30 days of opening, and, according to the account statements, the first activity on the BestBuy Card occurred on March 30, 2016. *See* Resurgent Aff., Exhibit 2 at 386.

**III.**    **Defendants Are Not Required to Proceed in Court Because of the Collection Case**

Plaintiff's argument that Defendants' collection action undermines proceeding in arbitration also fails. Just last week, the New Jersey District Court rejected this identical argument. *Rodriguez-Ocasio v. MHC Receivables LLC*, 2026 U.S. Dist. LEXIS 139363 at *21-22 (D.N.J. June 23, 2026). The Court held LVNV did not waive its right to arbitrate by filing the collection action because "(1) [The] Collections Actions were separate actions filed pursuant to the Arbitration Agreements . . . and (2) [Defendant] promptly sought to compel arbitration in [the instant] action." *Id.* at 17.

No different than *Rodriguez-Ocasio,* Defendants brought the collections action according to the terms of the Arbitration Agreement, which states that "[Citibank or its assignee] won't initiate an arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us." Resurgent Aff., Ex. 5 at 7. Moreover, as in *Rodriguez Ocasio*, Defendants here promptly filed their initial Motion to Compel Arbitration once Ms. Shirazi instituted affirmative claims against Defendants. The collections action taking place in a separate court does not undermine Defendants' decision to pursue arbitration here, because the two separate actions have no bearing on one another.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion in its entirety, together with any such further relief that the Court deems proper.

10

Dated:  Armonk, New York
      June 26, 2026                    Respectfully submitted,
                                        */s/ Jonathan M. Robbin*
                                        Jonathan M. Robbin
                                        **J. ROBBIN LAW**
                                        200 Business Park Drive, Suite 103
                                        Armonk, New York 10504
                                        (914) 685-5017
                                        *Attorneys for Defendants, LVNV Funding, LLC &*
                                        *Resurgent Capital Services, L.P.*

11