**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ERUM SHIRAZI, | ) | Case No.: 1:25-cv-02992-PAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITIBANK, N.A., | ) | |
| Serve:  Any Officer | ) | |
|     388 Greenwich Street | ) | |
|     New York,  NY 10013 | ) | |
| | ) | |
| LVNV FUNDING, LLC, | ) | |
| Serve:  Corporation Service Company, Reg. Agent | ) | |
|     80 State Street | ) | |
|     Albany, NY 12207 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RESURGENT CAPITAL SERVICES, L.P. | ) | |
| Serve:  Corporation Service Company, Reg. Agent | ) | |
|     80 State Street | ) | |
|     Albany, NY 12207 | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS, LVNV FUNDING LLC, AND RESURGENT CAPITAL SERVICES, L.P**
**REPLY IN SUPPORT OF THEIR**
**RENEWED MOTION TO COMPEL ARBITRATION**

---

**J.ROBBIN LAW**
Jonathan M. Robbin
200 Business Park Drive, Suite 103
Armonk, New York 10504
914-685-5016
Jonathan.robbin@jrobbinlaw.com

1

Defendants[1] submit the following Response to Plaintiff's Statement of Undisputed Facts and in Support of Defendant's Renewed Motion to Compel Arbitration.

**Defendants' General Dispute**

Plaintiff's Rule 56.1 Statement relies solely on conclusory and self-serving testimonial statements that Plaintiff made in her Deposition. But, such testimony cannot be treated as undisputed unless supported by direct or circumstantial evidence. *FTC v. RCG Advances, LLC*, 695 F. Supp. 3d 368, 381 (S.D.N.Y. 2023). To defeat a Motion assessed under a summary judgment standard, Plaintiff "must offer some hard evidence showing that [her] version of the events is not wholly fanciful." *Id.* (quoting *Walker v. Carter,* 210 F. Supp. 3d 487, 503 (S.D.N.Y. 2016)). Plaintiff has failed to do so, such that even those documents she offers as evidence are actually more useful to Defendants' contentions.

For these reasons, Defendants generally dispute all statements in the Rule 56.1 Statement that quote Plaintiff's testimony, because "[b]y itself, . . . such bare and **conclusory testimony** does not **create** a genuine dispute of material fact." *Id.* at  387.

1.      Plaintiff discovered in 2021 that an unknown person had used her personal information to open numerous accounts in her name, including a Best Buy/Citibank credit card. (Ex. 1, Shirazi Dep. at 23:14–20, 92:4–17, 115:11–24, 117:2–12, 121:19–122:16.)

**Response: Undisputed as to Plaintiff's testimony. Defendants dispute that Plaintiff did not know about the BestBuy account until 2021 based on the mailings to Plaintiff's verified residence.**

2.      She specifically denied opening or authorizing anyone to open the Best Buy Account and the Citi Diamond Preferred Account. (Ex. 1, Shirazi Dep. at 24:11–17.)

---

[1] All definitions are the same as those used in Defendants original moving papers.

**Response:** **Plaintiff's testimony is conclusory and self-serving. Defendants dispute that this was Plaintiff's only testimony regarding the BestBuy account and Plaintiff provided no evidence to the contrary.** *See* **Reply at 8-9.**

3.    She specifically denied opening or authorizing anyone to open the Best Buy Account and the Citi Diamond Preferred Account. (Ex. 1, Shirazi Dep. at 24:11–17.)

**Response:** **Plaintiff's testimony is conclusory and self-serving. Defendants dispute that this was Plaintiff's only testimony regarding the BestBuy account and Plaintiff produced no evidence to the contrary.** *See* **Reply at 8-9.**

4.    When she went to a Bank of America branch in 2021 to open a checking account, she was told accounts already existed in her name, leading her to inquire at other banks, file a police report, and obtain her credit report. (Ex. 1, Shirazi Dep. at 92:4–17, 117:2–12, 121:8–122:16.)

**Response:** **Plaintiff's testimony is conclusory and self-serving. Plaintiff produced no evidence of the same.**

5.    Plaintiff testified that the only Citibank account she opened was a Macy's store card in July 2016—which she received with the card agreement at her 341 East 70th Street, Apartment 15D address, used herself, and paid herself in cash or by TD Bank debit card. (Ex. 1, Shirazi Dep. at 85:10–25; 86:2–15; 88:12–89:8.)

**Response**: **Plaintiff's testimony is conclusory and self-serving. Plaintiff produced no evidence of the same. Defendants have produced evidence and testimony that the BestBuy Cardholder Agreement and account statements were sent to 341 East 70th Street, Apartment 15D.** *See* **Sabo Dep. at 58:14-16, 60:8-12.**

3

6.      She has consistently testified that she did not use the Best Buy card and did not make any of the charges Defendants attribute to her. (Ex. 1, Shirazi Dep. at 105:21–106:3 (discussing Apple Store charge), 106:4–14 (addressing American Airlines and "airport taxi" charges; "I never used the airport taxi. We have a bus. We have everything"), 108:10–21, 109:12–18 ("I always have a TD Bank card. I always use my TD Bank card."), 114:18–115:7 (discussing the "warranty" card from her one BestBuy MacBook purchase paid with TD Bank debit, not a Citibank credit card).)

**Response: Plaintiff's testimony is conclusory and self-serving. Plaintiff produced no evidence of the same. Defendants dispute that Plaintiff's testimony regarding use of the BestBuy Card was consistent. *See* Shirazi Dep. at 108 ("I don't remember [. . .] I don't remember because its been a long time. . ."); Shirazi Dep. at 111 ("Honestly, I don't remember which card I can use[.]"); Shirazi Dep. at 113 (when asked if she was saying that she did not make the purchases, she stated "I don't remember."); Shirazi Dep. at 159:7-14 (Plaintiff agreed that, "when [she] went to BestBuy, they gave [her] a card[.]").   For example, when asked if she recognized overlaps in her travel to JFK airport and the BestBuy charges at JFK airport on May 11, 2018,  Plaintiff stated, "I don't remember. Yes, maybe not. I don't know." Shirazi Dep. at 105.**

7.      She testified she never resided at—and had never even been to—the "1 Domino Way, Centereach, New York" address that appears on Best Buy billing statements Defendants claim Citi mailed to her. (Ex. 1, Shirazi Dep. at 56:6–23.)

**Response: Defendants dispute the representation that the 1 Domino Way, Centereach, New York address was the only address associated with the BestBuy Account. *See* Motion, Resurgent Aff. Ex. 2 at 372-383 (account statements showing**

4

**that there were two addresses previously associated with the address); and Shirazi Dep. at 37, 41-42, 47, 85-87 (Plaintiff's testimony verifying that she lived at and received mail at those addresses).**

8.      Plaintiff also testified that she never held the bank accounts from which the Best Buy balance was purportedly paid by automatic withdrawal—she did not recognize the account ending in 4794 from which the monthly payments were drawn, or the account ending in 9467. (Ex. 1, Shirazi Dep. at 64:12–65:7.)

**Response: Plaintiff's testimony is conclusory and self-serving. Plaintiff produced no evidence of the same. However, Defendants dispute that Plaintiff did not make any payments on the account.**

9.      She explained that the only thing she ever received in connection with Best Buy was a three-year warranty card she paid roughly $300 for when she purchased a MacBook with her TD Bank debit card—not a credit card: "I never, ever applied for the credit card and Citibank and the BestBuy bank." (Ex. 1, Shirazi Dep. at 114:13–115:7, 158:15–159:11, 162:11–25.)

**Response**: **Disputed. Plaintiff testified that she did, in fact, receive a <u>card</u> from BestBuy. Shirazi Dep. at 159:7-14 (Plaintiff agreed that, "when [she] went to BestBuy, they gave [her] a card[.]").**

10.      Patricia Sexton, the Resurgent Paralegal 2 designated to testify for LVNV and Resurgent, repeatedly admitted that Defendants have no first-hand knowledge of how the Best Buy Account was opened or what, if anything, was provided to Plaintiff. When asked how she could swear that "Plaintiff entered into a Card Agreement" in 2015, she answered: "That would be based on Citibank. . . . I have no personal knowledge of that. That would be Citibank." (Ex. 2, Sexton Dep. at 46:10–16.)

**Response: Undisputed.**

11.    She further testified that she has "no personal knowledge other than what I've reviewed." (Ex. 2, Sexton Dep. at 46:17–47:4.)

**Response: Undisputed.**

12.    There is no application, no document with Plaintiff's signature, no driver's license, no passport, and no skip-trace or credit reports about Plaintiff in the file Resurgent received from Citibank. (Ex. 2, Sexton Dep. at 49:25–52:13, 77:13–78:2.)

**Response: Disputed. Defendants dispute the representation that there were never any application or documents evidencing proof of the application. Mr. Sabo, Citibank's party-witness, testified  that "applications are generally destroyed in less than 7 years[,]" as an ordinary practice at Citibank and also throughout the industry. Sabo Dep. at 54.**

13.    The Cardholder Agreement Resurgent attached to its original papers was from 2022—not 2015—and Sexton admitted Plaintiff's name appears nowhere on it. (Ex. 2, Sexton Dep. at 53:20–54:18, 55:7–56:16.)

**Response: Undisputed. However, in Court ordered discovery Citibank produced the 2015 Cardholder Agreement, and Mr. Sabo testified that the 2015 Cardholder Agreement, along with later iterations of the Cardholder Agreement, were sent to Plaintiff at Plaintiff's verified residence in the ordinary course of business. *See* Sabo Dep. at 83:23-84:1 (". . . part of Citibank's ordinary course of business when the account is opened, terms and conditions are provided.); *see also* Sabo Dep. at 42:8-14 ("[a]ny changes in terms in terms and conditions supersede the prior agreement.").**

14.    That has not changed with any account agreement Defendants provide, some of which do not even mention Best Buy. (ECFs 67-18 (appearing to be incomplete); 67-40 (same); 67-28; 67-39 (not mentioning Best Buy); 67-41 (incomplete and does not mention Best Buy).)

**Response: Undisputed that the Cardholder Agreements do not include Plaintiff's name. Otherwise, Defendants dispute this fact. Mr. Sabo testified that that the Cardholder Agreement was part of "Citibank's electronic system of records," and that Citibank regularly sent customers notice of changes in successive Cardholder Agreements. He further testified that the 2022 Cardholder Agreement was part of "Citibank's electronic system of records" that was "stored in connection with the BestBuy Account that" is at issue. Sabo Dep. at 40-41.**

15.    Ms. Sexton testified Resurgent did nothing to verify that the 2022 agreement was actually communicated to Plaintiff: "We just – we received the terms from Citi." (Ex. 2, Sexton Dep. at 56:11–58:18.)

**Response: Disputed. The statement improperly curtails and misrepresents Ms. Sexton's testimony. Ms. Sexton testified that she was not personally aware of what Resurgent did to verify this information, but that such a question "would be for [Resurgent's] inventory management people." Sexton Dep. at 58:1-2. Moreover, Mr. Sabo's testimony established that, in the ordinary course of its business, Citibank sent the Cardholder Agreement and any updates to Plaintiff. Sabo Dep. at 60:8-12.**

16.    She agreed Resurgent does not know "what was handed over to her when the account was opened," does not know whether Plaintiff "had a chance to even look at the terms," and cannot say whether the 2022 agreement was ever "handed over to her or that it was sent to her by email." (Ex. 2, Sexton Dep. at 64:13–65:20.)

7

**Response: Disputed. The statement improperly curtails and misrepresents Ms. Sexton's testimony. Ms. Sexton testified that she was not personally aware of what Resurgent did to verify this information, but that such a question "would be for [Resurgent's] inventory management people." Sexton Dep. at 58:1-2. Moreover, Mr. Sabo's testimony established that, in the ordinary course of its business, Citibank sent the Cardholder Agreement and any updates to Plaintiff. *See* Sabo Dep. 60:8-12.**

17.    She conceded the only "evidence" Resurgent has of Plaintiff's purported acceptance is the bare existence of billing statements bearing Plaintiff's name; she does not personally know that Plaintiff made any of the underlying transactions. (Ex. 2, Sexton Dep. at 61:10–62:17, 63:2–65:20.)

**Response: Undisputed that this was Ms. Sexton's testimony. Defendants dispute that Resurgent has no other evidence of the Agreement. Mr. Sabo testified at length about Citibank's ordinary course of business, including that the Cardholder Agreement would have been sent to Plaintiff.** Sabo Dep. at 60:8-12. **Furthermore, confronted with evidence of overlap in Plaintiff's precise locations and charges made on the card on the same days, Plaintiff testified that she could not recall whether she made those purchases – not that she did not make them. Shirazi Dep. at 108 ("I don't remember [. . .] I don't remember because its been a long time. . ."); Shirazi Dep. at 111 ("Honestly, I don't remember which card I can use[.]"); Shirazi Dep. at 113 (when asked if she was saying that she did not make the purchases, she stated "I don't remember."); Shirazi Dep. at 159:7-14 (Plaintiff agreed that, "when [she] went to BestBuy, they gave [her] a card[.]").    For example, when asked if she recognized overlaps in her travel to JFK airport and the BestBuy charges at JFK airport on May**

**11, 2018,  Plaintiff stated, "I don't remember. Yes, maybe not. I don't know." Shirazi**

**Dep. at 105.**

18.     When asked whether Resurgent's position would still be that Plaintiff "accepted the cardholder agreement" if it turned out she was not the one engaging in the transactions, Sexton conceded: "if we're going to say if someway out there it wasn't her and it's determined that it wasn't, then, no, she – we – they would maybe not be responsible." (Ex. 2, Sexton Dep. at 63:24–64:8.)

> **Response: Undisputed that Ms. Sexton's testimony was that, in a hypothetical situation where an individual did not open or use a card, he or she would not be liable. However, Defendants dispute that the hypothetical is applicable here. When Plaintiff was asked whether she used the card, Plaintiff testified that she could not recall whether she made those purchases – not that she did not make them. Shirazi Dep. at 108 ("I don't remember [. . .] I don't remember because its been a long time. . ."); Shirazi Dep. at 111 ("Honestly, I don't remember which card I can use[.]"); Shirazi Dep. at 113 (when asked if she was saying that she did not make the purchases, she stated "I don't remember."); Shirazi Dep. at 159:7-14 (Plaintiff agreed that, "when [she] went to BestBuy, they gave [her] a card[.]").   For example, when asked if she recognized overlaps in her travel to JFK airport and the BestBuy charges at JFK airport on May 11, 2018,  Plaintiff stated, "I don't remember. Yes, maybe not. I don't know." Shirazi Dep. at 105.**

19.     Steven Sabo, the Citibank Recovery Manager Defendants cite as their primary mailing witness, conceded that no one from Citibank witnessed Account formation: "No one from Citibank – yes. . . . Correct. Yes, that is correct." (Ex. 3, Sabo Dep. at 84:7–14.)

**Response: Defendants dispute this as a mischaracterization of Mr. Sabo's testimony. While Mr. Sabo testified that "no one from Citi was there when [the] account was opened," he further testified as to the account formation process in the ordinary course of business.** *See* **Reply at 3-4 (Sabo Dep. at 35, 53, 58, and 75). This included testimony that Plaintiff would have received the 2015 Cardholder Agreement at formation, as part of the ordinary course of Citibank's business. Sabo Dep. at 58.**

20.     He admitted Citibank does not retain applications beyond seven years and that, by 2026, the Best Buy application is "now gone," so Citibank cannot say whether the Account was opened in person or online. (Ex. 3, Sabo Dep. at 140:7–15, 146:1–11, 146:22–147:7.)

**Response: Undisputed that Mr. Sabo testified that ". . . for information securities purposes, applications are generally destroyed in less than 7 years." Sabo Dep. at 54.**

21.     As to whether any agreement "actually went to Ms. Shirazi versus any other person on the planet," Sabo testified: "I don't know." (Ex. 3, Sabo Dep. at 122:7–123:3.)

**Response: Disputed as to the mischaracterization of Mr. Sabo's testimony. Mr. Sabo testified "[The 2015] and subsequent terms and conditions were . . . presented to Ms. Shirazi for review and approval" established by the "[o]rdinary course of business and use of the account." Sabo Dep. at 42:15-20.**

22.     He further conceded that no LexisNexis or third-party verification report relating to Plaintiff exists in Citibank's records today, which indicates Citi did not make an effort to ensure the applicant was who he or she stated he or she was. (Ex. 3, Sabo Dep. at 109:18–110:3, 111:16–112:2, 149:10–21.)

**Response: Disputed as to Mr. Sabo's testimony and as an illogical leap from reality. Mr. Sabo did not testify that "Citi did not make an effort to ensure the applicant was**

**who [she] stated [she] was." Instead, he testified that "when an address is provided by an applicant, it's also run against third-party vendors who provide or ensure that the address that is on the application matches the applicant's name." Sabo Dep. at 53. However, because this case was filed more than 10 years after the Opening of the Account, ". . . for information securities purposes, applications are generally destroyed in less than 7 years." Sabo Dep. at 54. Therefore, Mr. Sabo testified that, in the ordinary course of business, the documents Citibank used to confirm the identity of the applicant were destroyed – not that the documents never existed in the first place.**

23.    Sabo also confirmed that when Citibank sold the Account to LVNV in 2021, Citibank sent only "original data source information" (i.e., name and biographical fields), at most the last twelve months of statements, and "the most recent card agreement that was available at the time the account was sold"—not the 2015 agreement supposedly in effect at opening. (Ex. 3, Sabo Dep. at 131:5–22.)

**Response: Undisputed.**

24.    Many of Defendants' Best Buy statements—which they say were mailed to Plaintiff and prove her acceptance of a cardholder agreement—are addressed to "1 Domino Way, Centereach, New York 11720." (Ex. 2, Sexton Dep. at 72:14–73:24.)

**Response: Undisputed that some of Plaintiff's BestBuy Statements were addressed to 1 Domino Way. However, Defendant's dispute the characterization this was the address used at the Opening of the Account or that this address was the only address associated with the Account. Ms. Shirazi testified that in 2015, she resided at 88-25 211th Street, and received mail there. Shirazi Dep. at 37, 41-42. Ms. Shirazi also**

11

**confirmed that in 2016, she moved from 88-25 211th Street to 341 East 70th Street, Apartment 15D, New York, New York 10021 ("341 East 70th St."). Shirazi Dep. at 43. She again confirmed that she had regularly received mail at that address, including the Macy's account agreement and account statements. *See* Shirazi Dep. at 47, 85-87. The evidence establishes that both the 2015 Card Agreement and the BestBuy account statements were initially sent to 88-25 211th Street, and then the account statements reflected Ms. Shirazi's change in address. *See* Resurgent Aff., Ex. 2 at 372-383. This is evidenced by the May 2016 statement, which was sent to 88-25 211th Street, and then the June 2016 statement which was sent to 341 East 70th St. *Id.***

25.     Ms. Sexton acknowledged that address is different from the Bainbridge Avenue address that appears on the bill-of-sale data sheet Citibank gave Resurgent, (Ex. 2, Sexton Dep. at 73:21–24), and could not explain the discrepancy or whether Resurgent has any documents connecting Plaintiff to the Centereach address (Ex. 2, Sexton Dep. at 73:25–74:2, 78:3–12.)

**Response: Undisputed.**

26.     Plaintiff testified she has never resided at 1 Domino Way, has "never been there" at all, (Ex. 1, Shirazi Dep. at 56:6–23), and never received any account statements at any of the addresses at which she did live. (Ex. 1, Shirazi Dep. at 47:12–22, 51:21–23, 91:11–18, 101:12–102:5.)

**Response: Undisputed as to Plaintiff's testimony. Defendants dispute that Plaintiff never received account statements at her various addresses. Ms. Shirazi testified that in 2015, she resided at 88-25 211th Street, and received mail there. Shirazi Dep. at 37, 41-42. Ms. Shirazi also confirmed that in 2016, she moved from 88-25 211th Street to 341 East 70th Street, Apartment 15D, New York, New York 10021 ("341 East 70th**

**St."). Shirazi Dep. at 43. She again confirmed that she had regularly received mail at that address, including the Macy's account agreement and account statements.** *See* **Shirazi Dep. at 47, 85-87. The evidence establishes that both the 2015 Card Agreement and the BestBuy account statements were initially sent to 88-25 211th Street, and then the account statements reflected Ms. Shirazi's change in address.** *See* **Resurgent Aff., Ex. 2 at 372-383. This is evidenced by the May 2016 statement, which was sent to 88-25 211th Street, and then the June 2016 statement which was sent to 341 East 70th St.** *Id.*

27.    Mr. Sabo separately testified that the 1 Domino Way address "was not the original address Citibank had," which was 341 East 70th Street, and he could not explain how or when it changed. (Ex. 3, Sabo Dep. at 100:1–16, 88:6–22.)

**Response: Undisputed.**

28.    On January 16, 2024, LVNV filed a collection complaint against Plaintiff in the Civil Court of the City of New York, Bronx County, on this same Best Buy Account ending in 4794. (Ex. 2, Sexton Dep. at 84:13–87:18.)

**Response: Undisputed.**

29.    When it filed that state-court action, LVNV already had everything it now relies on— "the account agreement, the billing statements, all that" so it could have compelled arbitration. (Ex. 2, Sexton Dep. at 87:13–18.)

**Response: Disputed. Defendants acknowledge that they have all of the documents that were included in the collections action, but also receive the benefit of documents and testimony produced by Citibank in this action. Further, Defendants brought the collections action according to the terms of the Arbitration Agreement, which states**

13

that "[Citibank or its assignee] won't initiate an arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us." Resurgent Aff., Ex. 5 at 7.

30.    Ms. Sexton could offer no explanation for why LVNV chose to sue Plaintiff in court rather than initiate arbitration, and Defendants' Counsel improperly instructed her not to answer such questions. (Ex. 2, Sexton Dep. at 87:19–90:6 (instructing witness not to answer; witness deferring to "collection counsel").)

**Response: Disputed. Defendants brought the collections action according to the terms of the Arbitration Agreement, which states that "[Citibank or its assignee] won't initiate an arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us." Resurgent Aff., Ex. 5 at 7. Further, Defendants dispute the suggestion that an instruction not to answer an improper question should yield a negative inference against Defendants.**

31.    She refused to answer as to whether it was fair that Defendants want to now tear this case from this Court and place it into arbitration when Defendants chose court when they were the plaintiffs suing Ms. Shirazi over the same debt. (Ex. 2, Sexton Dep. at 87:13–89:10.)

**Response: Disputed. Defendants brought the collections action according to the terms of the Arbitration Agreement, which states that "[Citibank or its assignee] won't initiate an arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us." Resurgent Aff., Ex. 5 at 7.**

32.    When pressed on the operative question—whether the agreement Defendants want enforced was ever "handed over" to Plaintiff or sent to her—Sexton answered: "That would be a question for Citibank." (Ex. 2, Sexton Dep. at 58:6–22.)

**Response: Disputed. Mr. Sabo, Citibank's 30(b)(6) designated witness testified regarding what information was provided by Citibank at the time of the sale and transfer. Sabo Dep. at 131:5–22.**

33.     She agreed that "Resurgent doesn't know anything about what was handed over to her when the account was opened," and that "Resurgent wouldn't know if Resurgent wasn't there." (Ex. 2, Sexton Dep. at 64:19–65:6.)

**Response: Disputed. Mr. Sabo testified, "[The 2015] and subsequent terms and conditions were . . . presented to Ms. Shirazi for review and approval" established by the "[o]rdinary course of business and use of the account." Sabo Dep. at 42:15-20.**

34.     Ms. Sexton did not purport to attest that the 2022 cardholder agreement attached to her affidavit was mailed to Plaintiff at all—only that "we received the terms from Citi." (Ex. 2, Sexton Dep. at 56:11–58:18.)

**Response: Disputed as to the characterization. Mr. Sabo testified, "[The 2015] and subsequent terms and conditions were . . . presented to Ms. Shirazi for review and approval" established by the "[o]rdinary course of business and use of the account." Sabo Dep. at 42:15-20.**

35.     The only Cardholder Agreement Defendants have in their own records is from 2022—seven years after the Account was supposedly opened. Ms. Sexton testified she reviewed only "[t]he version that was in . . . our Resurgent account portal," which is the 2022 version. (Ex. 2, Sexton Dep. at 55:7–56:16, 59:11–61:4.)

**Response: Disputed. Because Citibank unlocked its archives to obtain the Cardholder Agreements and account statements, and Mr. Sabo testified as to the authenticity of**

15

the documents, Defendants are entitled to introduce those documents as evidence. *See* **Reply at 1-2**.

36. Ms. Sexton noted her original Affidavit only refers to the 2022 version in Resurgent's file. (Ex. 2, Sexton Dep. at 59:11–61:4.)

**Response: Undisputed.**

37. Mr. Sabo confirmed Citibank sent only the "most recent card agreement that was available at the time the account was sold" to LVNV. (Ex. 3, Sabo Dep. at 131:5–14.)

**Response: Undisputed.**

38. Defendants do nothing to confirm any of the information in records they receive or show they have familiarity with the record-creation and keeping functions of the originator of the records. (Ex. 2, Sexton Dep. at 36:15–37:3, 38:13–39:11, 46:25–47:4.)

**Response: Disputed. Ms. Sexton testified that she was not personally aware of what Resurgent did to verify this information, but that such a question "would be for [Resurgent's] inventory management people." Sexton Dep. at 58:1-2.**

39. Plaintiff has sworn that she did not use the Best Buy card and did not make the charges Defendants attribute to her. (Ex. 1, Shirazi Dep. at 23:14–24:17, 92:4–17, 105:21–106:3, 108:10–109:21.)

**Response: Disputed. Plaintiff's testimony is conclusory and self-serving. Plaintiff produced no evidence of the same. Defendants dispute that Plaintiff did not use the BestBuy Card and did not make the charges on the account at the precises locations she was, when she was at those locations. Reply at 8-9 ; *see also* Shirazi Dep. at 108 ("I don't remember [. . .] I don't remember because its been a long time. . ."); Shirazi Dep. at 111 ("Honestly, I don't remember which card I can use[.]"); Shirazi Dep. at**

**113 (when asked if she was saying that she did not make the purchases, she stated "I don't remember."); Shirazi Dep. at 159:7-14 (Plaintiff agreed that, "when [she] went to BestBuy, they gave [her] a card[.]").   For example, when asked if she recognized overlaps in her travel to JFK airport and the BestBuy charges at JFK airport on May 11, 2018,  Plaintiff stated, "I don't remember. Yes, maybe not. I don't know." Shirazi Dep. at 105.**

40.    Plaintiff testified she used her TD Bank debit card on her travels, not a Best Buy credit card; she does not recognize the Apple Store, airport taxi, and similar charges; and she made no payments on the account. (Ex. 1, Shirazi Dep. at 56:6–23, 64:12–65:15, 105:23–106:3, 106:8–14, 108:14–109:18.)

**Response: Disputed. Plaintiff's testimony is conclusory and self-serving. Plaintiff produced no evidence of the same. While she testified that she used another card on her travels, Plaintiff was unable to produce any evidence of the existence of a TD Bank account. With respect to the charges on the card, Plaintiff testified that she did not *recall* many of the charges on the account – an important distinction from denial of making the charges or from inability to recognize the charges. *see also* Shirazi Dep. at 108 ("I don't remember [. . .] I don't remember because its been a long time. . ."); Shirazi Dep. at 111 ("Honestly, I don't remember which card I can use[.]"); Shirazi Dep. at 113 (when asked if she was saying that she did not make the purchases, she stated "I don't remember."); Shirazi Dep. at 159:7-14 (Plaintiff agreed that, "when [she] went to BestBuy, they gave [her] a card[.]").   For example, when asked if she recognized overlaps in her travel to JFK airport and the BestBuy charges at JFK**

**airport on May 11, 2018,  Plaintiff stated, "I don't remember. Yes, maybe not. I don't know." Shirazi Dep. at 105.**

41.    Defendants have no documents linking Plaintiff to the Centereach address. (Ex. 2, Sexton Dep. at 72:19–74:2, 78:3–12.)

**Response: Disputed. The representation that the Centereach address was the only one associated with the account. With respect to the other addresses associated with the account, Plaintiff testified to residing at and receiving mail at both. Ms. Shirazi testified that in 2015, she resided at 88-25 211th Street, Queens Village, NY 11427 ("88-25 211th Street"). Shirazi Dep. at 37.[2] She further testified that she regularly received mail at that address. Shirazi Dep. at 41-42. Mr. Sabo confirmed that the Queens Village address was the first address associated with Plaintiff's BestBuy account, and that "Citibank's system of records" and ordinary course of business establish that the 2015 Agreement was mailed to that address. Sabo Dep. at 151:10-15.**

42.    Citi's Rule 30(b)(6) witness could not testify as to Citi's mailing of anything to Plaintiff. (Ex. 3, Sabo Depo. at 58:18–24, 59:7–60:25, 122:22–123:3.)

**Response: Disputed. Mr. Sabo testified •   "[C]ard agreements are sent, changes in terms are sent sometimes via solo mailers, sometimes statement messaging in billing statements. This is all part of Citibank's ordinary course of business" Sabo Dep. at 60:8-12.**

43.    Citibank's witness conceded he does not know whether the welcome letter or Cardholder Agreement "actually went to Ms. Shirazi versus any other person on the planet," (Ex.

3, Sabo Dep. at 122:14–123:3); that no one from Citibank was present at Account formation, (Ex. 3, Sabo Dep. at 84:7–14); that the application is gone, (Ex. 3, Sabo Dep. at 140:7–15, 146:1–11); and that the only LexisNexis-type verification report he could even theorize "may exist" is not in Citibank's records, (Ex. 3, Sabo Dep. at 109:13–110:3, 149:10–21.)

**Response: Disputed in so this item misrepresents and fails to contextualize the testimony cited. Mr. Sabo testified at length about Citibank's procedures in the ordinary course of business, including as to the Opening of the Account, the sending of the 2015 Cardholder Agreement and successive agreements to Plaintiff, and Citibank's document retention policies and the reason why documents have been destroyed. Reply at 2-3.**

44.    After Citibank settled (ECF 65, 66), what is left is Resurgent—a third-party servicer whose witness conceded that everything she "knows" about formation "would be a question for Citibank." (Ex. 2, Sexton Dep. at 58:6–22, 64:19–65:20.)

**Response: Disputed. Citibank's document production and witness testimony do not disappear because Citibank agreed to settle this matter. In fact, at this point Citibank is still a party to this action, as the Court has not yet dismissed it. *See* Docket. As such, Defendants are entitled to introduce admissible documents and evidence presented by Citibank in this matter.**

45.    Plaintiff produced two 2021 police reports in this litigation (Exs. 4, 5, bates Plaintiff_Shirazi_000010, Plaintiff_Shirazi_000011–13), and testified she did not open the Best Buy Account, did not use it, did not make payments on it, and did not authorize anyone else to do so. (Ex. 1, Shirazi Dep. at 23:14–24:17, 28:18–29:9, 92:4–17, 97:18–25, 98:12–99:8.)

**Response: Undisputed that Plaintiff filed Police Reports. However, Defendants dispute that the Police Reports raise any issue of triable fact, as they were not filed**

19

**until over six years after the Account was opened. In the meantime, per Mr. Sabo's testimony, Citibank sent Plaintiff Cardholder Agreements and account statements for the Account, but she did not dispute the Account until years later.** *See* **Sabo Dep. at 60:8-12.**

46.    Her testimony is corroborated by U.S. Customs and Border Protection travel records confirming her presence outside the United States for extended periods. (Ex. 1, Shirazi Dep. at 100:10–103:14.)

**Response: Disputed.**

47.    She testified that she never lived at one of the addresses on the Best Buy statements (Centereach), and that even at the Manhattan address Defendants invoke, she received no credit card statements. (Ex. 1, Shirazi Dep. at 47:12–18, 51:21–23, 56:6–23, 91:11–18, 101:11–102:5.)

**Response: Disputed. Plaintiff testified that she regularly received mail at the 341 East 70th Street address, including the Macy's account agreement and account statements.** *See* **Shirazi Dep. at 47, 85-87.**

48.    Plaintiff candidly acknowledged that she does not remember every individual purchase a fraudster supposedly made on her behalf nearly a decade ago. (Ex. 1, Shirazi Dep. at 105:19–109:17.)

**Response: Disputed as a mischaracterization of Plaintiff's testimony. Plaintiff candidly acknowledged that she did not remember individual purchases made on an account issued in her name, at the precise places and locations that she was at, on the days she was at those locations. Shirazi Dep. at 108 ("I don't remember [. . .] I don't remember because its been a long time. . ."); Shirazi Dep. at 111 ("Honestly, I don't remember which card I can use[.]"); Shirazi Dep. at 113 (when asked if she was saying**

**that she did not make the purchases, she stated "I don't remember."); Shirazi Dep.**

**at 159:7-14 (Plaintiff agreed that, "when [she] went to BestBuy, they gave [her] a**

**card[.]").   For example, when asked if she recognized overlaps in her travel to JFK**

**airport and the BestBuy charges at JFK airport on May 11, 2018,  Plaintiff stated, "I**

**don't remember. Yes, maybe not. I don't know." Shirazi Dep. at 105.**

49.    LVNV sued Plaintiff in the Civil Court of the City of New York, Bronx County, on this same Best Buy Account ending in 4794. (Ex. 2, Sexton Dep. at 84:12–87:18.)

**Response: Undisputed.**

50.    Sexton was unable to explain why LVNV elected court over arbitration even though, as she conceded, LVNV had "all the information" it now relies on ("The account agreement, the billing statements, all that"). (Ex. 2, Sexton Dep. at 87:13–18.)

**Response: Disputed. Defendants acknowledge that they have all of the documents that were included in the collections action, but also receive the benefit of documents and testimony produced by Citibank in this action. Further, Defendants brought the collections action according to the terms of the Arbitration Agreement, which states that "[Citibank or its assignee] won't initiate an arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us." Resurgent Aff., Ex. 5 at 7.**

Dated: Armonk, New York
June 26, 2026                    Respectfully submitted,

*/s/ Jonathan M. Robbin*

Jonathan M. Robbin
**J. ROBBIN LAW**
200 Business Park Drive, Suite 103
Armonk, New York 10504
(914) 685-5017
*Attorneys for Defendants, LVNV Funding, LLC &*
*Resurgent Capital Services, L.P.*

21