UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERUM SHIRAZI,<br><br>Plaintiff,<br><br>-v-<br><br>LVNV FUNDING, LLC *and* RESURGENT CAPITAL SERVICES, L.P.,<br><br>Defendants. | 25 Civ. 2992 (PAE)<br><br><u>OPINION & ORDER</u> |

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion to compel arbitration. Plaintiff Erum Shirazi brings this action against defendants LVNV Funding, LLC ("LVNV") and Resurgent Capital Services, L.P. ("Resurgent") (together, "defendants"), contending they violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. She alleges that defendants incorrectly attributed debts incurred on a credit card to her, when in fact an unknown identity thief opened the account under her name and used the card without her knowledge or permission.

Before discovery, defendants moved to compel arbitration of Shirazi's claims. The Court found the record insufficiently developed to enable it to resolve the motion. *See Shirazi v. Citibank, N.A.*, No. 25 Civ. 2992 (PAE), 2026 WL 880443, at *11 (S.D.N.Y. Mar. 31, 2026) ("*Shirazi I*").[1] It thus deferred resolution of the motion, pending discovery and summary judgment briefing based on a more substantial record.

[1] Shirazi initially named Citibank, N.A. ("Citibank") as another defendant, which also moved to compel arbitration. After *Shirazi I* issued, Shirazi voluntarily dismissed her claims against Citibank, pursuant to a settlement agreement. *See* Dkt. 77.

Having completed discovery keyed to the motion to compel arbitration, defendants now renew that motion. For the following reasons, the Court grants the motion.

## I. Factual Background[2]

### A. The Parties

Shirazi currently resides in Manhattan. Dkt. 74 ("Shirazi 56.1 Resp.") ¶ 4. LVNV is a limited liability company that invests in unpaid customer debts. *Id.* ¶ 2. Resurgent is LVNV's master servicing agent. *Id.* ¶ 3. It manages LVNV's assets, including as its records custodian. *Id.*

### B. 2015: The Best Buy Credit Card Is Opened

On or about September 28, 2015, Citibank issued a Best Buy credit card, ending in 4794 (the "Best Buy card"). *Id.* ¶¶ 5–6. This account had been opened under the name Erum Shirazi, using her social security number, date of birth, and then-current address: 88-25 211th Street, Hillside Avenue, Queens Village, New York 11427 (the "Queens address"). *Id.*; Dkt. 75-2

[2] This decision draws the underlying facts from the parties' submissions in support of and opposition to the motion, including: defendants' declarations, exhibits, and Rule 56.1 statement supporting their motion to compel arbitration, Dkts. 67–70; Shirazi's declaration, exhibits, and Rule 56.1 statement and response supporting her opposition to the motion, Dkts. 71–74; and defendants' declaration, exhibits, and Rule 56.1 response supporting their reply, Dkts. 75–76.

Citations to a party's Rule 56.1 statement incorporate the evidentiary materials cited therein. When facts stated in a party's Rule 56.1 statement are supported by testimonial, video, or documentary evidence and not denied by the other party, or denied by a party without citation to conflicting admissible evidence, the Court finds such facts to be true. *See* S.D.N.Y. Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in statement required to be served by the opposing party."); *id.* Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible and set forth as required by Fed. R. Civ. P. 56(c).").

("Sabo Dep. Tr. II") at 151; Dkt. 75-3 ("Shirazi Dep. Tr. III") at 37. At her deposition, Shirazi denied having applied for any Citibank card. Dkt. 72-1 ("Shirazi Dep. Tr. II") at 23.

The version of the Best Buy cardholder agreement in effect at that time states that Citibank was the card's issuer. Dkt. 67-28 ("Best Buy Agreement") at 2. It states that the agreement is "binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card." *Id*. at 4. It defines "you" as the "person who applied to open the account" or "any other person responsible for complying with" the agreement. *Id*.

The arbitration section of the agreement provides, in relevant part, as follows. It states: "All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision." *Id*. at 7–8. Under the subheader, "Whose Claims are subject to arbitration?," it states: "Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy." *Id*. at 8. It states: "We and anyone to whom we assign your debt will not initiate an arbitration proceeding to collect a debt from you unless you assert a Claim against us or our assignee. We and any assignee may seek arbitration on an individual basis of any Claim asserted by you, whether in arbitration or any proceeding . . . ." *Id*.

### C. 2016–2019: Additional Overlap Between Shirazi and the Best Buy Card

In "mid 2016," Shirazi moved from the Queens address to 341 East 70th Street, Apartment 15D, New York, New York 10021 (the "Upper East Side address"). Dkt. 67-22

("Shirazi Dep. Tr. I") at 43–44. By August 2016, account statements for the Best Buy card listed Shirazi's Upper East Side address. Dkt. 67-21 ("Sabo Dep. Tr. I") at 144–45.[3] An August 2017 account statement for the Best Buy card reflects that the account by then was enrolled in automatic, recurring payments of $100 per month from a bank account ending in 9467. *See, e.g.*, Dkt. 67-36 at 35, 37. Shirazi denied having knowledge of that bank account. *See* Shirazi Dep. Tr. II at 64–65.

Shirazi worked as a flight attendant for Pakistan International Airlines. *See* Shirazi 56.1 Resp. ¶¶ 13–14. In that role, she regularly flew between New York and Pakistan, with layovers in Toronto, Canada. *See id*. Dozens of charges on the Best Buy card correspond with Shirazi's location and activities on days she traveled between those places. The following chart lists examples of such overlap between May and December 2018[4]:

| Date | Shirazi's Location | Description of Charge on Best Buy Card | Location of Charge | Amount |
|---|---|---|---|---|
| May 11, 2018 | Layover via Toronto Pearson International Airport ("YYZ"), located in Mississauga, Canada | "TORONTO DUTY FREE" | Mississauga, Canada | $57.28 |
| | Flight from YYZ to JFK International Airport ("JFK"), | "JFK TVM*JFK03-JAMAICA C NEW YORK NY" | Jamaica, New York | $20.00 |

[3] In or around July 2016, Shirazi opened and received another credit card (the "Macy's Card") at her Upper East Side address. *See* Dkt. 67-14 at 68; Shirazi Dep. Tr. II at 85–86. She testified at a deposition that she received account statements for that card at that address. *Id*. at 86, 88.

[4] The information in this chart regarding Shirazi's location is drawn from Customs and Border Protection records, produced by Shirazi in discovery. *See, e.g.*, Dkt. 67-26 ("CBP Records") at 6. The information regarding charges on the Best Buy card is drawn from that card's account statements. *See, e.g.*, Dkts. 67-23 at 6, 67-24 at 5, 67-25 at 6.

| | | | | |
|---|---|---|---|---|
| | located in Jamaica, New York | | | |
| May 12, 2018 | Layover in New York | "FEEL BEAUTY SUPPLY JAMAICA NY" | Valley Stream, New York | $15.23 |
| | | "DUNKIN #306826 035 JAMAICA NY" | Jamaica, New York | $21.15 |
| | | "APPLE STORE #R095 NEW YORK NY" | New York, New York | $1,087.66 |
| May 13, 2018 | Flight from JFK to YYZ | "AMERICAN AIR0010284889720 FORT WORTH TX" | N/A | $25.00 |
| | Layover via YYZ | "AEROPORTTAXI LIMOUSIN [sic] MISSISSAUGA CD" | Mississauga, Canada | $47.15 |
| July 22, 2018 | Layover via YYZ | "SHOPPER'S DRUG MART #1402 TORONTO CD" | Toronto, Canada | $41.02 |
| July 23, 2018 | | "FOREVER 21 #390 TORONTO CD" | Toronto, Canada | $12.82 |
| | | "SEPHORA EATON CTR 500 TORONTO CD" | Toronto, Canada | $39.64 |
| July 24, 2018 | | "DOLLARAMA # 370 TORONTO CD" | Toronto, Canada | $5.16 |
| | | "ARDEN # 371 TORONTO CD" | Toronto, Canada | $51.87 |
| | | "ARDENE #501 TORONTO CD" | Toronto, Canada | $42.89 |
| | | "SHOPPER'S DRUG MART #1402 TORONTO CD" | Toronto, Canada | $8.06 |
| August 17, 2018 | Layover via YYZ | "VICTORIA'S SECRET STORES TORONTO CD" | Toronto, Canada | $114.23 |
| | | "SHOPPERSDRUGMART 0943 TORONTO CD" | Toronto, Canada | $59.69 |

| | | | | |
|---|---|---|---|---|
| August 18, 2018 | | "DOLLARAMA # 370 TORONTO CD" | Toronto, Canada | $24.24 |
| | | "VICTORIA'S SECRET STORES TORONTO CD" | Toronto, Canada | $65.77 |
| | | "THAI ON YONGE INC. TORONTO CD" | Toronto, Canada | $11.21 |
| August 19, 2018 | Flight from YYZ to Jinnah International Airport ("KHI") in Karachi, Pakistan | "TORONTO DUTY FREE CATI MISSISSAUGA CD" | Toronto, Canada | $62.42 |
| December 24, 2018 | Layover via YYZ | "DOLLARAMA # 370 TORONTO CD" | Toronto, Canada | $44.41 |
| | | "DOLLARAMA # 370 TORONTO CD" | Toronto, Canada | $15.98 |
| | | "SHOPPER'S DRUG MART #1402 TORONTO CD" | Toronto, Canada | $107.47 |
| | | "MAC TORONTO EATON CENTRE TORONTO CD" | Toronto, Canada | $20.00 |

At Shirazi's deposition, defense counsel asked Shirazi whether she recognized certain of the above charges. She largely stated that she did not recall the transactions, while denying that she was responsible for several of them. *See, e.g.*, Shirazi Dep. Tr. III at 105 (regarding May 11, 2018 charge at JFK: "A. I don't remember. Yes, maybe or maybe not. I don't know. Q. But you were in JFK on May 11th, correct? A. Yes."); *id*. (regarding May 12, 2018 Apple Store charge: "New York, I don't remember. I didn't buy anything from Apple Store. I don't know."); *id*. at 106 (regarding May 13, 2018 airport taxi charge: "[T]he airlines give us all transport and everything. So I never used the airport taxi.").

Shirazi's Upper East Side address remained listed on account statements for the Best Buy card until approximately August 2019. *See, e.g.*, Dkt. 67-32 at 32 (account statement with August 16, 2019 due date addressed to that address). Shirazi continued to reside at that address until August 2022. Shirazi Dep. Tr. III at 47.

**D. September 2019: Change in Address Associated with the Best Buy Card**

Beginning in approximately September 2019, the account statements for the Best Buy card listed Shirazi's ostensible address as 1 Domino Way, Centereach, New York 11720 (the "Centereach address"), replacing her Upper East Side address, where she continued to live. Dkt. 67-32 at 16. Charges continued to be made on the card. *See, e.g.*, Shirazi 56.1 Resp. ¶ 20.

Shirazi testified in her deposition that she was unfamiliar with the Centereach address and never lived there. Shirazi Dep. Tr. II at 56. When asked if she knew anyone who resided there, she stated: "I don't remember." *Id*. at 57.

**E. September 2021: Shirazi's Police Report Concerning Identity Theft**

On or about September 23, 2021, Shirazi filed an identity theft complaint with the New York City Police Department ("NYPD"). *See* Dkts. 72-4, 72-5 ("NYPD Report"). The NYPD Report stated that Shirazi had alleged the following: When she attempted to open a checking account at Bank of America, she was informed that she already had an account with the bank. NYPD Report at 1. She later ran a credit report, which identified "several" credit card accounts that she had not opened or given anyone else permission to open in her name. *Id*. These accounts were with (1) JPMorgan Chase ($9,972 in debt); (2) Capital One ($22,532 in debt); (3) Citibank ($6,080 in debt); and (4) American Express ($664 in debt). *Id*. Shirazi reported the total debt to the NYPD as $68,793 (although the sum of the above four figures is $39,248). *Id*. According to Shirazi, these accounts listed the Centereach address and the email address

"shirazierum@yahoo.com." *Id.* Shirazi told the NYPD that these were not her physical or email addresses. *Id.*

Shirazi testified that she did not receive any substantive updates from the NYPD, and was not informed of any investigation or prosecution arising from her complaint. Shirazi Dep. Tr. III at 132.

### F. Late 2021: Assignment of Receivables Under the Best Buy Card to LVNV

After March 2021, no payments were made on the Best Buy card. Dkt. 67-27 ¶¶ 12–13. On or about March 17, 2021, the account defaulted, and, on or about September 22, 2021, the card was charged off—*i.e.*, its unpaid debt was written off as a loss. *Id.* ¶ 14. On November 23, 2021, Citibank "transferred, sold, assigned, conveyed, granted, bargained, set over, and delivered" the receivables under the Best Buy card to Resurgent Acquisitions LLC ("RALLC") and any of its "successors and assigns." Dkt. 67-37 at 2 (cleaned up). The same day, RALLC "transferred, sold, assigned, conveyed, granted, and delivered" all rights, title, and interests in the Best Buy card receivables to LVNV. *Id.* at 3 (cleaned up). The total debt on the card was $6,247.86, comprising $5,065.95 of principal, $912.91 in interest, and $269 in fees. *See* Dkt. 67-38 at 2.

## II. Procedural History

On April 10, 2025, Shirazi filed the Complaint, bringing claims under the FCRA. Dkt. 1 ("Compl.").

On September 10, 2025, Citibank moved to compel arbitration, Dkt. 25, and, on October 20, 2025, LVNV and Resurgent so moved, Dkts. 33–34. Shirazi opposed both motions. Dkts. 30, 41.

On March 31, 2026, the Court deferred resolution of the motions, finding the pre-discovery record insufficiently developed. *Shirazi I*, 2026 WL 880443, at *1. The Court held

New York's choice-of-law balancing test applicable to what law governs whether Shirazi agreed to arbitrate her claims. *Id*. at *5–6. Under that test, the "center of gravity" strongly favored applying New York law. And New York law, in the context of consumer credit card agreements, provides that, in the absence of a signed agreement, a consumer enters into a contract if she (1) makes transactions on a card (2) after receiving its cardholder agreement. *Id*. at *7. Applying that test, the Court found that the record then available reflected an "unresolved factual dispute" as to whether Shirazi had agreed to be bound by the Best Buy cardholder agreement, including its arbitration provisions. *Id*. at *8–9. That was because the defendants (including then-defendant Citibank) had not provided a copy of the cardholder agreement in effect at the time the account had been opened in 2015; they instead provided an "exemplar" 2022 agreement, and Citibank's representative attested that such agreements had been "amended from time to time." *Id*. (quoting Dkt. 25-2 ¶ 6). And, critically, Shirazi attested that she had never used the Best Buy card—although she stated she could not recall whether she had opened that account. *Id*. at *2. The Court thus directed the parties to conduct discovery on the issue of contract formation—which centrally entailed whether Shirazi had made transactions using the Best Buy card and thus was bound by the cardholder agreement—and thereafter to file supplemental briefing on the motions. *Id*. at *11.

On May 14, 2026, Shirazi filed a notice of settlement with Citibank. Dkt. 65. On July 21, 2026, she voluntarily dismissed her claims against Citibank pursuant to that settlement, leaving Resurgent and LVNV as defendants. Dkt. 77.

On May 26 and 28, 2026, Resurgent and LVNV renewed their motion to compel arbitration, attaching declarations and exhibits, Dkts. 67, 70, a memorandum of law, Dkt. 68 ("Mem."), and a Rule 56.1 statement, Dkt. 69. On June 19, 2026, Shirazi opposed, Dkt. 71

("Opp'n"), attaching affidavits and exhibits, Dkts. 71–72, a Rule 56.1 statement, Dkt. 73, and a response to defendants' Rule 56.1 statement, Dkt. 74 ("Shirazi 56.1 Resp."). On June 26, 2026, Resurgent and LVNV replied, Dkt. 75 ("Reply"), attaching a declaration and exhibits, *id*., and a response to Shirazi's Rule 56.1 statement, Dkt. 76 ("Defs. 56.1 Resp.").

## III. Applicable Legal Standards

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. § 2. To decide whether a dispute is arbitrable, a court assesses: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015). "Only if the court concludes an agreement to arbitrate exists does it determine . . . the scope of the agreement to arbitrate." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022).

On a motion to compel arbitration, "courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). Courts thus "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and "draw all reasonable inferences in favor of the non-moving party." *Id*. (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)).

A party moving to compel arbitration "bears an initial burden of demonstrating that an agreement to arbitrate was made." *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) (citation omitted). The moving party need not "show initially that the agreement

would be enforceable, merely that one existed." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (emphasis omitted) (summary order). Thereafter, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)).

"[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (citation omitted). Where "there is a disputed question of material fact" as to formation of an agreement to arbitrate, the court holds a trial on that threshold issue before reaching the merits of the parties' dispute. *Barrows*, 36 F.4th at 49; *see also* FAA § 4.

## IV. Discussion

The Court first recaps its choice-of-law analysis from *Shirazi I*. As before, it finds that New York law governs the question whether Shirazi agreed to be bound by the Best Buy cardholder agreement and its arbitration provisions. Based on discovery—which emphatically demonstrated that, contrary to her denials, Shirazi received and used of the Best Buy card—the Court finds that no reasonable factfinder could conclude that Shirazi did not meet the test for such under New York law. The Court then holds that LVNV and Resurgent—which, unlike Citibank, are not parties to the agreement—may nonetheless invoke its arbitration provisions.

### A. Choice of Law

"[T]he ultimate question of whether the parties agreed to arbitrate is determined by state law." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002). For the reasons stated in *Shirazi I*, New York law applies here. In brief: In their initial motion to compel arbitration,

defendants earlier argued that South Dakota law should apply, based on the choice-of-law provision in the Best Buy cardholder agreement. But applying that choice-of-law clause to resolve the issue of contract formation "would presume the applicability of a provision before its adoption by the parties has been established." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012). Instead, the choice-of-law rules of New York—the forum state—apply. *See Kulig v. Midland Funding, LLC*, No. 13 Civ. 4715, 2013 WL 6017444, at *3 (S.D.N.Y. Nov. 13, 2013) (New York choice-of-law rules applied where contract-formation issue did not implicate significant federal policy and turned on state law).

Under those rules, courts first determine whether there is an "actual conflict" between the laws of the involved jurisdictions. *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (1993). Here, New York and South Dakota law governing formation of consumer credit card agreements differs materially. Under the law of both states, without a signed card agreement, courts find mutual assent to the terms of such agreements where a consumer uses a credit card after receiving the terms of its related card agreement. *See, e.g.*, *Tsadilas v. Providian Nat. Bank*, 786 N.Y.S.2d 478, 480 (1st Dep't 2004) (applying New York law); *Dalal v. Costco Wholesale*, No. 22 Civ. 5593, 2023 WL 2662347, at *3 (D.N.J. Mar. 28, 2023) (applying South Dakota law). Unlike New York law, however, South Dakota law provides that mutual assent also occurs once more than 30 days pass after the consumer receives the agreement and does not affirmatively object to its terms—even if she does not use the card. *See Haynes v. TransUnion, LLC*, No. 19 Civ. 7157, 2021 WL 7906567, at *6 (E.D.N.Y. Sept. 30, 2021) (citing S.D. Codified Laws § 54-11-9), *adhered to on reconsideration*, 2022 WL 1228927 (Apr. 25, 2022).

Having found this conflict of laws, the Court applies New York's choice-of-law balancing to determine whether New York or South Dakota law applies. In contracts, the "center

of gravity" or "grouping of the contacts" determines which state law to apply. *Tri-State Emp. Servs., Inc. v. Mountbatten Sur. Co.*, 295 F.3d 256, 260–61 (2d Cir. 2002) (citation omitted). Relevant factors include "the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties." *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 394 (2d Cir. 2001) (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317 (1994)).

The center of gravity here strongly favors applying New York law to the question of contract formation. The disputed subject matter is centered in New York. Shirazi resided in New York City during the time period in question, and many disputed charges on the card involve New York merchants. *See, e.g.*, Shirazi Dep. Tr. I at 43–44; Dkts. 67-23 at 6, 67-24 at 5, 67-25 at 6. And the other factors are in equipoise or lightly favor New York. *See* Shirazi 56.1 Resp. ¶ 4 (Shirazi is New York resident); Compl. ¶ 15 (Citibank is headquartered in New York); *Kulig*, 2013 WL 6017444, at *4 (consumer credit card agreements unlikely to be negotiated, so location of negotiation "carries little weight" in such cases). Because both "the performance and subject matter of the contract favor New York," New York law applies. *Biggs v. Midland Credit Mgmt., Inc.*, No. 17 Civ. 340, 2018 WL 1225539, at *6 (E.D.N.Y. Mar. 9, 2018); *see also Tri-State Emp. Servs.*, 295 F.3d at 261.

**B. Whether Shirazi Assented to the Best Buy Cardholder Agreement**

Under New York law, in the absence of a signed cardholder agreement, courts find mutual assent to the terms of such agreements where the consumer uses a credit card after receiving the terms of its related card agreement. *See, e.g.*, *Weiss v. Am. Express Nat'l Bank*, No. 19 Civ. 4720, 2020 WL 6807628, at *2 (S.D.N.Y. Nov. 18, 2020); *Tsadilas*, 786 N.Y.S.2d at 480. It is undisputed that Shirazi did not sign any agreement related to the Best Buy card. *See*

Defs. 56.1 Resp. ¶¶ 13–14. The Court thus assesses whether Shirazi (1) received the 2015 Best Buy cardholder agreement and (2) then made purchases using the card.

***Receipt of the Best Buy cardholder agreement***: The now-developed record reflects that Shirazi received the 2015 Best Buy cardholder agreement. *See* Dkt. 67-28 (the "2015 Best Buy Agreement"). Under New York law, proof of a standard office mailing procedure, designed to ensure that items are properly addressed and mailed, gives rise to a rebuttable presumption that such were mailed and received. *See CIT Bank N.A. v. Schiffman*, 999 F.3d 113, 116 (2d Cir. 2021) (citation omitted); *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 816–17 (2d Cir. 1985). A recipient's denial of receipt does not overcome the presumption, unless she shows that the mailing practice was not followed or was "so careless that it would be unreasonable to assume that the notice was mailed." *Schiffman*, 999 F.3d at 116.

Here, Steven Sabo, a Citibank recovery manager and Rule 30(b)(6) witness, testified that Citibank's ordinary course of business, when a credit card account is opened, was to send the written terms and conditions to the address provided upon account opening; and that nothing in Citibank's records indicated that this process had not been followed with respect to Shirazi specifically. *See* Sabo Dep. Tr. II at 35, 58–60. Citibank's records reflected that the address provided at account opening was the Queens address. *See, e.g.*, *id*. at 151. And Shirazi testified that she lived at that address in 2015. Shirazi Dep. Tr. III at 37, 41 (testifying that only she and her cousin had access to that address's mailbox). Moreover, the August 2016 account statement for the Best Buy card lists the Upper East Side address, consistent with Shirazi's move there around that time. *See* Defs. 56.1 Resp. ¶ 26; Dkt. 67-21 at 144. And the Centereach address—of which Shirazi disclaims any knowledge—did not become associated with the account until approximately September 2019, years later. *See* Dkt. 67-32 at 24. There is thus a rebuttable

presumption that the Best Buy cardholder agreement (and account statements, at least until fall 2019) were sent to Shirazi's then-current addresses.

Shirazi has not adduced evidence sufficient to rebut that presumption. She testified that she "never" received "any credit card *statements*" at her Queens or Upper East Side addresses, but she notably did not testify that she did not receive the Best Buy cardholder *agreement* at the Queens address. Shirazi Dep. Tr. III at 41; Shirazi Dep. Tr. II at 101–02 (emphasis added). And she elsewhere contradicted her answer that she did not receive "any" account statements at her Upper East Side address, testifying that she received account statements for a separate Macy's credit card there. *See, e.g.*, Shirazi Dep. Tr. II at 85–88. Her Rule 56.1 statement also does not create any material factual dispute on this point. She there disputes receiving the agreement, but only cites her testimony denying receipt of such at the Upper East Side address—not the Queens address to which it was mailed—and an earlier declaration, which stated, inconsistently, that she could not recall receiving it, but did not deny that she had. Shirazi 56.1 Resp. ¶ 29. And Shirazi has not offered any evidence that Citibank did not follow its standard mailing practice, or that that practice was "so careless that it would be unreasonable to assume that the notice was mailed." *Schiffman*, 999 F.3d at 116. Drawing all reasonable inferences in Shirazi's favor, her testimony is insufficient to create a genuine dispute of material fact as to her receipt of the cardholder agreement at her Queens address. *See* S.D.N.Y. Local Civil Rule 56.1(c)–(d).

***Use of the Best Buy card***: The record shows, convincingly, that Shirazi charged at least a dozen transactions on the Best Buy card. Customs and Border Protection records place Shirazi in New York and Toronto on the same days as the Best Buy card was charged there, including at the airports through which Shirazi transited. *See supra* at section I(C) (chart reflecting two dozen such transactions between May 11 and December 24, 2018) (citing CBP Records at 6;

Dkts. 67-23 at 6, 67-24 at 5, 67-25 at 6). On May 11, 2018, for example—when Shirazi flew from Toronto Pearson International Airport to New York's JFK Airport—the Best Buy card was charged at the Toronto airport's duty-free store, and then at an unidentified merchant located within JFK. *Id*. The next day, during Shirazi's layover in New York, the card was charged at two stores in New York's Jamaica neighborhood (where JFK is located). *Id*. The day after that, when Shirazi flew back to Toronto from JFK, the card was charged by "American Air" and then an airport taxi service in Mississauga, Canada (where the Toronto airport is located). *Id*. And similar patterns of charges to the card—precisely tracking Shirazi's travel between New York and Toronto—recurred in July, August, and December 2018. *Id*.

When asked about these transactions, Shirazi mainly stated that she did not recall them. As to the May 11, 2018 charge at JFK, for example, she agreed that she had been in that airport on that day, but, as to whether she recognized the charge, stated: "I don't remember. Yes, maybe or maybe not. I don't know." Shirazi Dep. Tr. III at 105. As to the charges in July 2018 in Toronto, during her layover there, Shirazi likewise testified that she did not remember them. *Id*. at 108. And when asked, "Is it your testimony that you did not make these purchases?" she responded, "I don't remember because it's been a long time." *Id*. As to an August 17, 2018 charge on the card in Toronto during her layover there, Shirazi testified: "Honestly, I don't remember which card I can use, but I have only TD Bank card. I always use— to prefer the TD bank card." *Id*. at 111.

To be sure, Shirazi's testimony can be read to deny making some of the other purchases that track with her travel. *See id*. at 105 (regarding May 12, 2018 Apple Store charge: "New York, I don't remember. I didn't buy anything from Apple Store. I don't know."); Shirazi Dep. Tr. II at 106 (regarding May 13, 2018 airport taxi charge: "[T]he airlines give us all transport and

everything. So I never used the airport taxi."). But even if those few transactions were put aside, Shirazi did not deny having made more than a dozen charges on the Best Buy card during her travels between New York and Toronto. And she did not adduce any evidence that could support such a denial.

Drawing all reasonable inferences in Shirazi's favor, a reasonable factfinder could not conclude that she never used the Best Buy card. The charges listed *supra* in section I(C) precisely align with Shirazi's travel in New York and Toronto. Had only one or two of these charges overlapped with Shirazi's location, potentially a court could have found rational, if improbable, the inference that this was mere coincidence. But more than a dozen transactions that track Shirazi's travel between specific international airports do not allow such an inference. The only alternative explanation Shirazi offers, without any factual support, is that a putative identity thief could have tailed her to those cities and airports, charging the card only at merchants along her flight routes and layovers, because that information was "known, predictable, and consistent with the standard Pakistan International Airlines route structure." Shirazi 56.1 Resp. ¶ 14. That inference is manifestly unreasonable.

***Shirazi's other counterarguments***: Shirazi makes multiple other counterarguments on this point. None is persuasive.[5]

First, she argues that all "Citibank documents" cited by defendants were unauthenticated and inadmissible hearsay. Opp'n at 2. That is wrong. The documents produced by Citibank on which this decision relies were authenticated by Sabo's testimony, pursuant to Federal Rule of Evidence 901, and fall within Rule 803(6)'s hearsay exceptions as records of Citibank's

[5] Shirazi's other arguments (*e.g.*, concerning the 2015 cardholder agreement and Citibank's assignment of the account to LVNV), are addressed elsewhere in this decision.

regularly conducted activities. *See, e.g.*, *Wexler v. LVNV Funding, LLC*, No. 22 Civ. 1348 (PAE), 2023 WL 4305776 at *5–6 (S.D.N.Y. June 30, 2023).

Second, she argues that a material factual dispute exists based on her testimony that she did not make certain charges on the Best Buy card; that she did not recognize the bank account that made payments on the Best Buy account; that she generally used a separate card issued by TD Bank; and that she did not recognize the Centereach address. Opp'n at 12–16. That testimony does not give rise to a material dispute of fact concerning contract formation. Even crediting her testimony disputing that certain charges were hers—such as those at an Apple Store and an airport taxi service—the undisputed evidence shows numerous other charges aligning with her foreign travel. And her testimony concerning her use of a separate TD Bank card likewise does not assist her. She testified as follows regarding the six July 2018 charges that corresponded with a layover of hers in Toronto:

> Q. Do you recall making these purchases at the Shopper's Drug Mart, Forever 21, Sephora, Dollarama, Arden and another one to the Shopper's Drug Mart? Do you recall those?
>
> A. I don't remember.
>
> Q. Is it your testimony that you did not make these purchases?
>
> A. I don't remember because it's been a long time. But this is the taxi and this— I did not— I always have a TD Bank card. I always use my TD Bank card.

Shirazi Dep. Tr. II at 108. And, as to an August 2018 purchase that tracked another Toronto layover, she testified as follows:

> Q. Do you recall making that purchase?
>
> A. Honestly, I don't remember which card I can use, but I have only TD Bank card. I always use— to prefer the TD Bank card.

Shirazi Dep. Tr. III at 111. The testimony that Shirazi "prefer[red]" to use a TD Bank card does not undermine that she also used the Best Buy card. And, insofar as she argues that her

testimony should be construed to mean that she "always" used the TD Bank card—to the exclusion of any others—that is contradicted by the undisputed evidence that she opened and used multiple other cards. *See, e.g.*, *id*. at 86 (testifying that she opened and made purchases on Macy's credit card); Shirazi Dep. Tr. I at 111–12 (testifying that she had "two, three cards from the Victoria's Secret and Macy's and New York & Company, like that").

As to Shirazi's testimony that she did not recognize the Centereach address or have any connection to that area, that address only became associated with the Best Buy card in 2019—years after the account was opened in 2015, using Shirazi's then-current Queens address. Even assuming *arguendo* the Best Buy card was later compromised by an identity thief in or around 2019, such does not undermine the undisputed evidence that Shirazi received the cardholder agreement and used the card years earlier, binding herself to the agreement.

And, as to her testimony that she "never, ever" applied for the Best Buy card, Shirazi Dep. Tr. II at 162, that denial does not create a genuine factual dispute as to contract formation where, as here, the record does not leave any doubt that she used the card numerous times after receiving the cardholder agreement at her then-current address. *See Barrows*, 36 F.4th at 51 (where testimony of party disputing contract formation is "blatantly contradicted by the record, so that no reasonable jury could believe it," or where her testimony is "based on speculation" or "conclusory," such does not defeat motion to compel arbitration (citation omitted)); *see, e.g.*, *Baird v. Comenity Bank*, No. 26 Civ. 891, 2026 WL 1133996, at *4–6 (S.D.N.Y. Apr. 27, 2026) (granting motion to compel arbitration where customer opposing motion had received cardholder agreement and used card, and did not adduce evidence creating genuine factual dispute as to

contract formation, notwithstanding fraud claims); *Ponder v. Prosper Marketplace, Inc.*, No. 26 Civ. 1716, 2026 WL 1346292, at *4 (S.D.N.Y. May 14, 2026) (similar).[6]

Third, Shirazi argues that her 2021 police report—in which she claimed her identity had been stolen and that she had not opened certain credit cards bearing her name, including the Best Buy card—constitutes "well-supported allegations of fraud in the formation of an arbitration

[6] *Haynes v. TransUnion, LLC*, *supra*, on which Shirai relies, is inapposite. There, the party resisting arbitration denied having lived at the address where the cardholder agreement had been sent, and the opposing parties did not adduce any evidence that she had used the card. *See* 2021 WL 7906567, at *6. Here, by contrast, Shirazi admitted to living at the Queens address in 2015, where the Best Buy cardholder agreement was sent at that time, and defendants have developed compelling documentary evidence that Shirazi used the card numerous times.

*Barrows v. Brinker Restaurant Corp.*, *supra*, is also easily distinguished. The district court there had granted a motion to compel arbitration—notwithstanding plaintiff's affidavit denying that she had seen or signed the arbitration agreement—on the ground that she had not produced any additional evidence substantiating those denials. 36 F.4th at 48, 50–52. The Second Circuit vacated and remanded. *Id*. at 54. It noted that "there is nothing to suggest that nonmovants' affidavits alone cannot—as a matter of law—suffice to defend against" such a motion. *Id*. at 50. And the plaintiff had "categorically denied" ever signing the arbitration agreement; using the computer systems required to do so; or "even living in a home with[] any computer whatsoever." *Id*. at 51. Plaintiff's account, the Circuit held, with its "specific and exacting" denials, sufficiently supported that she had not entered into the arbitration agreement to avoid a grant of the motion to compel. *Id*. at 51–52. And the record allowed reasonable inferences that an agent of the *defendant* had signed the agreement without plaintiff's authorization. *Id*. at 52–53.

Here, Shirazi generally denied opening or using the Best Buy account; having knowledge of the bank account from which recurring payments were made; or making some of the transactions charged on that card. But, following discovery, she did not maintain those categorical denials when confronted with most of the charges that coincided with her documented travel—her answers as to these charges vacillated between "I don't remember" and "Yes, maybe or maybe not." Shirazi Dep. Tr. III at 105. And, critically, the documentary evidence developed in discovery refutes her denials by showing that the cardholder agreement and account statements were mailed to her then-current addresses, and that numerous charges on the card were made that track Shirazi's location, including at international airports (including charges which Shirazi ultimately did not deny making). *Barrows* recognized that "the fact that a party's declaration [or testimony] *can* defeat a motion to compel arbitration does not mean it always *will*." 36 F.4th at 51 (emphases added). Because Shirazi's denials were qualified, "conclusory," and "blatantly contradicted by the record," they do not give rise to a material factual dispute. *Id*. (citation omitted).

agreement." Opp'n at 15–16. But, as with Shirazi's deposition testimony to the same effect, these assertions, as to the Best Buy card, are contradicted by the record, which shows that Shirazi received the corresponding agreement at her Queens address, received account statements for the card at her Queens and then her Upper East Side addresses, and used the card to make purchases. *Barrows*, 36 F.4th at 51. And the police report reflects nothing more than Shirazi's statements. It does not describe other evidence or report any finding by law enforcement that could be read to support her claims. *See* NYPD Report at 1.

Fourth, Shirazi argues that, because LVNV separately brought a collection lawsuit against Shirazi in New York state court (which it later discontinued), it is "inequit[able]" for it to seek to compel arbitration here. Opp'n at 16. Shirazi does not cite any support for that assertion, which is baseless. The cardholder agreement does not require assignees such as LVNV to arbitrate collection claims against a certain cardholder to preserve their ability to compel arbitration as to other lawsuits brought by that customer. And, the Second Circuit has held, "only prior litigation of the *same legal and factual issues* as those the party now wants to arbitrate" can waive that party's right to arbitrate. *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997); *see also PEB, Inc. v. Premium Merch. Funding 26, LLC*, No. 24 Civ. 8791, 2025 WL 3170865, at *6 (S.D.N.Y. Nov. 13, 2025) ("Following *Distajo*, courts have consistently held that even when there is 'considerable factual overlap' between two claims arising under the same agreement, litigating one does not result in waiver of the right to arbitrate the other unless the legal and factual issues are effectively 'the same.'" (collecting cases)). LVNV's earlier action to collect Shirazi's unpaid debt differs, both legally and factually, from Shirazi's FCRA action here, which claims that defendants caused a putative identity thief's charges to be misattributed to her. *See, e.g.*, *Zambrana v. Pressler & Pressler, LLP*, No. 16

Civ. 2907, 2016 WL 7046820, at *6–7 (S.D.N.Y. Dec. 2, 2016) (granting motion to compel arbitration against cardholder, notwithstanding ongoing state court debt collection action against cardholder by movants).

### C. Whether the Best Buy Cardholder Agreement Requires Arbitration of This Action

Having found that Shirazi undisputedly agreed to be bound by the cardholder agreement, the Court addresses (1) whether LVNV and Resurgent, as non-signatories, may invoke the agreement's arbitration provision, and (2) whether Shirazi's claims against them fall within the scope of claims to be arbitrated under the agreement.

***Whether LVNV and Resurgent may invoke the agreement's arbitration provisions***: Under the heading "Whose Claims are subject to arbitration?," the cardholder agreement states:

> Not only ours [*i.e.*, Citibank's] and yours [*i.e.*, Shirazi's], but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, *assignee*, or trustee in bankruptcy.

2015 Best Buy Agreement at 8 (emphasis added).[7] It is undisputed that, on or about November 23, 2021, Citibank assigned the debt owed under the Best Buy account to RALLC and any of its "successors and assigns"; the same day, RALLC assigned them to LVNV. Dkt. 67-37 at 2–3 (cleaned up). LVNV, as an assignee, may thus invoke the agreement's arbitration provisions. *See, e.g.*, *Wexler*, 2023 WL 4305776, at *7–8 (same language in cardholder agreement covered assignee of credit card debt); *Lebovits v. Cavalry Portfolio Servs., LLC*, No. 20 Civ. 1116, 2021 WL 1198967, at *2, 5–6 (S.D.N.Y. Mar. 29, 2021) (same).

[7] The arbitration provisions in later versions of the agreement do not differ materially from these. *See, e.g.*, 2015 Best Buy Agreement at 8–9; Dkt. 67-32 at 6–8 (2021 agreement); Dkt. 67-33 at 7–9 (2022 agreement).

As to Resurgent, it is not an assignee of Citibank's, but instead serves as LVNV's master servicing agent and manages its assets, including those receivable under the Best Buy account. Shirazi 56.1 Resp. ¶ 3. Defendants argue that Resurgent may enforce the arbitration agreement as LVNV's agent. Shirazi does not contest that point. *See* Opp'n at 2 (Shirazi referring incorrectly to both LVNV and Resurgent as "assignees"); *id*. at 14–15 (Shirazi arguing that "defendants' assignee status makes their proof problems worse" because, according to her, there was no arbitration agreement to begin with (cleaned up)). "[S]tate law governs whether a non-signatory may enforce an arbitration clause." *Doe v. Trump Corp.*, 6 F.4th 400, 412 n.8 (2d Cir. 2021) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009)). Although New York law governed the issue of contract formation, the cardholder agreement—which the Court finds binding on Shirazi—expressly provides that South Dakota law applies to its terms. 2015 Best Buy Agreement at 9. Under South Dakota law, where a principal has a contractual right to arbitrate claims, so too does the principal's agent, insofar as the claims are based on the agent's conduct in that capacity. *See Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 815–16 (S. D. 2002) (citing *Hirschfeld Prods., Inc. v. Mirvish*, 88 N.Y.2d 1054, 1056 (1996)).[8] Because Shirazi's claims relate to Resurgent's conduct in its capacity as LVNV's agent, Resurgent may also invoke the cardholder agreement's arbitration provisions.

***Whether the agreement's arbitration provisions cover this action***: The last issue is whether Shirazi's claims fall within the cardholder agreement's scope. Defendants argue that the cardholder agreement expressly delegated resolution of this issue to the arbitrator. Defs. Mem. at 25–26. Shirazi's opposition did not address this point. Defendants are correct.

---

[8] New York law is the same. *See, e.g.*, *Revis v. Schwartz*, 192 A.D.3d 127, 142–43 (2d Dep't 2020) (citing *Hirschfeld Prods.*, 88 N.Y.2d at 1056), *aff'd*, 38 N.Y.3d 939 (2022).

"[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019); *see also Rent-A-Ctr. v. Jackson*, 561 U.S. 63, 68–69 (2010). As the Court has found, *supra*, Shirazi entered into a valid contract to arbitrate (*i.e.*, the cardholder agreement). The agreement states, under the header, "What Claims are subject to arbitration?":

> *All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision.* All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims.

2015 Best Buy Agreement at 7–8 (emphasis added).

Courts in this Circuit have found similar language to constitute "clear and unmistakable" delegation of the arbitrability issue. *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 53 (E.D.N.Y. 2017) (cleaned up) (agreement stated that arbitrator would resolve disputes "arising out of or relating to interpretation or application of this Arbitration Provision, including [its] enforceability, revocability or validity"); *Kuehn v. Citibank, N.A.*, 2012 WL 6057941, at *2, 4 (S.D.N.Y. Dec. 6, 2012) (same regarding claims "relating to . . . the application, enforceability or interpretation of . . . this arbitration provision"). The cardholder agreement here thus delegated to an arbitrator the issue whether Shirazi's claims in this action are covered by the agreement's arbitration provisions.[9]

---

[9] Even if the agreement did not so delegate, these claims plainly fall within the arbitration provisions' broad language, which encompass "all claims relating to" the Best Buy account or Shirazi's relationship with Citibank (and its assignees). 2015 Best Buy Agreement at 7–8 (cleaned up); *see, e.g.*, *Wexler*, 2023 WL 4305776, at *11.

**CONCLUSION**

For the above reasons, the Court grants LVNV and Resurgent's motion to compel arbitration. The Court accordingly stays this action in its entirety, pending resolution of the arbitration. *See Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). The Court respectfully directs the Clerk of Court to terminate all pending motions and stay this case. The parties are directed to file a joint status update every 60 days as to the status of the arbitration proceeding.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: August 26, 2026
New York, New York